EX. 1
POLICY 16-07-01, CONTROL OF CONTRABAND/BODY SEARCHES

| | **MISSISSIPPI DEPARTMENT OF CORRECTIONS** | **SOP NUMBER 16-07-01** |
|---|---|---|
| | | **INSTITUTIONS** |
| **CONTROL OF CONTRABAND/BODY SEARCHES - OFFENDERS** | | **INITIAL DATE 12-01-2006** |
| **ACA STANDARDS:  4-4192 thru 4-4194** | | **EFFECTIVE DATE 02-01-2013** |
| **STATUTES:  47-5-193** | **RESTRICTED** | **PAGE 1 of 7** |

1  **APPLICABILITY:**
2
3  This procedure applies to all employees of Mississippi Department of Corrections (MDOC) that
4  transport, supervise or otherwise come in contact with offenders.
5
6  **POLICY STATEMENT:**
7
8  It is the policy of the Mississippi Department of Corrections to control contraband.
9
10  **DEFINITIONS:**
11
12  Contraband – Any items(s) that is not authorized by MDOC.
13
14  Body/Personal/Pat/Frisk Searches – Hands on tactile search of a clothed offender (minus
15  pocket contents, shoes and outer garments) for the purpose of discovering and confiscating
16  contraband.
17
18  Strip Search – A visual search/examination of a disrobed offender by a minimum of two (2) staff
19  members in a location restricted from the visual observation of non-involved MDOC staff and/or
20  other persons.
21
22  Visual Offender Body Cavity Search with Genital Examination – A visual search/examination of
23  a disrobed offender by a minimum of two (2) staff members in a location restricted from the
24  visual observation of non-involved MDOC staff and/or other persons that requires offenders to
25  bend over, turn, raise arms, lift genitals, spread the buttocks, run hands through their hair, and
26  open mouth.
27
28  Body Cavity Search – A contraband search involving the insertion of a probe into an offender's
29  body cavity that is conducted exclusively by qualified medical personnel in private.
30
31  General Search – A group search of offenders (i.e., unit zone) which can include personal
32  property, living areas and/or persons
33
34  Reasonable Suspicion – The detection of suspect facts, circumstances and/or behavior that
35  may prompt an officer to believe that an offender may be concealing contraband in or on their
36  person and/or MDOC property.
37
38  Narcotic Canine Searches – Offender body, property and living area searches conducted by
39  narcotic detection dogs under the supervision of trained MDOC Canine (K-9) staff.
40
41  Spice/Mojo – A form of contraband which is a combination of herbs; baybean (canavalia
42  maritime), blue lotus (nymphaea carulea & nymphaea alba), lion's tail (Leonotis leonurus),
43  Indian warrior (pedicularis densiflora), dwarf scallop (scuttelaria nana), moconha brava (zornia

AG 4732

| TITLE:   CONTROL OF CONTRABAND/BODY SEARCHES - OFFENDERS | | SOP NUMBER 16-07-01 |
|---|---|---|
| EFFECTIVE DATE: 02-01-2013 | RESTRICTED | PAGE 2 of 7 |

44  latifolia), pink lotus (nelumbo nucifera), Siberian motherwort (leonurus sibircus), vanilla and
45  honey, that produces some of the same effects as marijuana.
46
47  JHW-108 Synthetic Marijuana –A man-made chemical/THC variant that produces similar affects
48  as THC except is four (4) times stronger.
49
50  Non-Intrusive Search – Search of the clothed body by technical means; manual or technical
51  search of personal possessions the person may be carrying and any possession the person
52  may be asked to remove, and swiping personal items, including purses, coats, identification
53  cards or other items in a person's possession.
54
55  Threshold level – A numerical value that is recorded and, once exceeded, may be grounds for action
56  (i.e., refusing or restricting a visit or proceeding with inmate discipline).
57
58  Positive Reading – A positive indication of trace drug or explosive substance ions on an item, beyond
59  the pre-set threshold value. This reading would indicate recent or current contact with a drug or
60  explosive substance.
61
62  Qualified Personnel – A correctional staff member who has been trained and qualified to use the
63  ion scanner.
64
65  Swiping – Rubbing an approved cotton cloth (swab) over an item.
66
67  **PROCEDURES:**
68
69  *Adult Correctional Institutions:* **Written policy, procedure, and practice provide for searches**
70  **of facilities and inmates to control contraband and provide for its disposition. These**
71  **policies are made available to staff and inmates [4-4192].**
72
73  The function of MDOC facility searches are to:
74
75  • Locate contraband
76  • Prevent escapes
77  • Maintain security and control
78  • Evaluate fire and safety hazards
79  • Protect staff and offenders
80  • Maintain sanitary and housekeeping conditions
81  • Prevent altercations
82
83  General Search Rules
84
85  When possible, an offender should be given an order outside the presence of other offenders.
86
87  Once an offender has refused to follow an order by staff, the officer should not confront the
88  offender without informed assistance.
89
90  The officer(s) asked to assist in carrying out an order should be aware the offender's earlier
91  refusal to comply.

16-07-01 (g)
Forms

| TITLE: CONTROL OF CONTRABAND/BODY SEARCHES - OFFENDERS | | SOP NUMBER 16-07-01 |
|---|---|---|
| EFFECTIVE DATE: 02-01-2013 | RESTRICTED | PAGE 3 of 7 |

92  Whenever possible, an offender should be isolated from a group of offenders before attempting
93  to enforce an order.
94
95  For example, an offender should be called into the hallway to turn over contraband rather than
96  confronted in the housing unit with other offenders.
97
98  Additionally, orders should be given to the offender when carrying out the process of retrieving
99  the contraband.
100
101  If an officer knows contraband will be retrieved, do not give the offender time to plan his/her
102  response/attack unnecessarily by giving the offender a warning that you are going to come and
103  take the contraband.
104
105  General search rules include:
106
107  •  All searches will be reasonable and related to the legitimate security needs and/or
108      obligations of the institution
109
110  •  Unannounced and unscheduled searches will be conducted of MDOC offenders, to include
111      their persons, property, living and work areas.
112
113  •  All staff conducting searches will be trained in effective search techniques that provide
114      protection from bodily harm for both staff and offenders.
115
116  •  All vacant cells and living areas will be searched prior to offender occupancy.
117
118  •  All staff involved in the conduct of searches will avoid whenever possible the use of
119      unnecessary force, and the provocation of undue offender embarrassment and/or indignity.
120      Whenever feasible, staff will use non-intensive sensors or alternate techniques.
121
122  •  MDOC staff will respect offender's personal property during searches of offender personal
123      effects.
124
125  •  Staff use of approved mechanical devices will occur only when necessitated by security and
126      safety considerations.
127
128  •  Property, pat/frisk and general searches may be conducted at any time.
129
130  General Area Searches
131
132  •  Searches will be coordinated through the Shift Supervisor of higher authority.
133
134  •  Searches will target housing units, work areas, classrooms, storage warehouse areas and
135      all other MDOC property.
136
137  •  When possible, the supervisor of an area being searched will be present during the search.
138
139  •  Search areas will be left in an orderly manner.

| TITLE:   CONTROL OF CONTRABAND/BODY SEARCHES - OFFENDERS | | SOP NUMBER<br>16-07-01 |
|---|---|---|
| EFFECTIVE DATE: 02-01-2013 | RESTRICTED | PAGE 4 of 7 |

140   • Reports will be generated that include all pertinent information specific to detected
141   contraband and/or search circumstances.
142

143   *Adult Correctional Institutions:* Written policy, procedure, and practice provide that, except
144   in emergency situations, visual inspections of inmate body cavities are conducted by
145   officers of the same sex, in private, and based on reasonable belief that the inmate is
146   carrying contraband or other prohibited material.  Reasonable belief is not required when
147   inmates return from contact with the general public or from outside the institution.  In all
148   cases, this inspection is conducted by trained personnel [4-4194].
149

150   **Visual Body Cavity Search With Genital Examination Searches** as defined will be conducted
151   routinely as offenders are entering or leaving their housing units and/or institution/facility for or
152   after appointments, appearances, emergency transfers, and physical contacts with visitors or
153   attorney's and/or for probable cause.
154

155   *Adult Correctional Institutions:* Written policy, procedure, and practice provide that manual
156   or instrument inspection of body cavities is conducted only when there is reason to do
157   so and when authorized by the warden/superintendent or designee.  The inspection is
158   conducted in private by health care personnel or correctional personnel trained by health
159   care personnel [4-4193].
160

161   **Body Cavity Searches** as defined will be conducted when there is reasonable suspicion or
162   evidence that an offender is concealing contraband within a body cavity.  Offenders will be
163   searched in a sanitary manner and in a sanitized and approved location exclusively by offsite
164   medical personnel.
165

166   **Reasonable Suspicion Searches** will be initiated at the discretion of employees who supervise
167   or otherwise come in contact with offenders.  When there is reasonable suspicion that an
168   offender has contraband, is planning an escape, and is involved in an illegal activity or assault
169   and/or any other rules violation, MDOC employees will conduct or request the appropriate
170   search.
171

172   **Narcotic Canine Searches** will be implemented during general searches whenever information,
173   evidence or suspicion indicates the probability of contraband drugs/paraphernalia.  All requests
174   for narcotic detection dogs will be approved by the Warden or official acting in capacity of the
175   Warden and the Administrator of the K-9 Unit.  The staff requestor will be responsible for
176   processing reports and all other search documentation.
177

178   Strip Search
179

180   • A Lieutenant or higher authority or designee will approve all strip searches for contraband
181   detection/confiscation.
182

183   • Staff will exercise a proper attitude and follow professional search techniques when
184   conducting body/personal searches.
185

186   • Offenders will be informed of body/personal searches.

16-07-01 (g)
Forms

AG 4735

| TITLE:   CONTROL OF CONTRABAND/BODY SEARCHES - OFFENDERS | | SOP NUMBER 16-07-01 |
|---|---|---|
| EFFECTIVE DATE: 02-01-2013 | RESTRICTED | PAGE 5 of 7 |

187 • Offenders will be subjected to the least amount of touching as possible without jeopardizing
188   security considerations.
189
190 • Offenders will be strip-searched during the out-processing for transfer to another
191   correctional facility and during intake upon arrival at another correctional facility.
192
193 • Offenders may be strip-searched when there is reasonable suspicion, return from visitation,
194   reclassification from administrative detention, escapee return or after participation in a
195   disturbance. A Correctional Supervisor or Commander, of the like gender of the offender,
196   will be required to observe strip searches following offender visitation.
197
198 • Incident Reports will document circumstances and search results.
199
200 Frisk/Pat Search Usage
201
202 A frisk/pat search consists of:
203
204 • the removal of outer protective clothing
205 • the emptying of pockets
206 • the physical search of an offender
207 • screening by any device that does not require disrobing
208 • the inspection of papers, bags, books, or other items being carried
209
210 Frisk/Pat searches of male offenders may be conducted by staff of either sex; female offenders
211 will only be frisk/pat searched by female staff. These searches may be utilized in the following
212 instances:
213
214 • Whenever staff feels they are warranted
215 • When offenders enter or exit their unit for any reason
216 • After visitation
217 • When offenders are being transported from one location to another
218 • For probable cause
219
220 Ion Spectrometry Analyzer (Ion Scanner) Procedures for Offenders
221
222 The ion scanner may be used to:
223
224 • Scan the clothing or possessions of inmates at a correctional facility;
225 • Scan inmate property within a correctional facility;
226 • Scan the possessions, correspondence or the person of an inmate in a correctional facility; and/or
227 • Analyze a substance or samples taken from an article or surface obtained by a
228   correctional officer in the performance of his or her duties.
229
230 Samples for ion spectrometry are obtained through non-invasive search techniques.
231
232 The Warden will ensure staff is trained to operate the equipment according to the manufacturer's
233 specifications.

16-07-01 (g)
Forms

AG 4736

| TITLE: CONTROL OF CONTRABAND/BODY SEARCHES - OFFENDERS | | SOP NUMBER 16-07-01 |
|---|---|---|
| EFFECTIVE DATE: 02-01-2013 | RESTRICTED | PAGE 6 of 7 |

234 The staff will ensure that the equipment for the ion scanner is operated and maintained per
235 safety guidelines and the manufacturer's guidelines. The manufacturer provides warm-up and
236 verification procedures to ensure that the device functions accurately.
237
238 Response to Positive Readings
239
240 A positive reading on the ion scanner is evidence of contraband drugs or explosive substance,
241 or contact with contraband drugs or explosive substance.
242
243 It may be used to support proceedings under MDOC policy regarding any decision to
244 restriction/suspend an inmate's visiting privileges.
245
246 Confiscation Transfer and Disposition of Evidence
247
248 The Corrections Investigation Division (CID) will accept evidence Monday through Friday from
249 8:00 a.m. to 5:00 p.m. (normal working hours).
250
251 An on-call CID Investigator will be contacted to receive or recommend disposition of all potential
252 criminal evidence and/or contraband seized after normal working hours.
253
254 All evidence and/or contraband seized after normal working hours that may be used in offender
255 disciplinary proceedings will be:
256
257 • Stored in a secure location
258 • Documented with a Rule Violation Report (RVR)
259 • Relinquished to the Disciplinary Department on the next working day
260
261 All contraband items not specifically remanded to CID custody and control will be surrendered
262 with appropriate RVR documentation to the Area Disciplinary Department.
263
264 All contraband obtained during search and seizures not resulting in Rule Violation Reports will
265 be tagged properly and surrendered to the Unit Administrator for disposition.
266
267 Contraband Items
268
269 The following contraband items will be remanded to the Institutional CID staff upon confiscation:
270
271 • Narcotics (illegal and prescription)
272
273 • Alcohol (bonded or homemade)
274
275 • Weapons and munitions (homemade shanks or free-world) to include any unassembled
276 parts and any weapon used in an assault
277
278 • U.S. Currency or any negotiable instrument (i.e., checks, money orders, credit cards and or
279 other related paraphernalia)
280
281 • Unauthorized electronic or electrical devices to include cell phones or any of its components

16-07-01 (g)
Forms

| TITLE: CONTROL OF CONTRABAND/BODY SEARCHES - OFFENDERS | | SOP NUMBER 16-07-01 |
|---|---|---|
| EFFECTIVE DATE: 02-01-2013 | RESTRICTED | PAGE 7 of 7 |

282    or accessories, recorders, televisions, tattoo guns (assembled or in part)
283
284  • Tools (manufactured or homemade)
285
286  • Documentary evidence to include gang paraphernalia, escape plans, and items denoting
287    fraternization (i.e., letters, greeting cards, free-world items not available through canteen)
288
289  • Keys
290
291  • Spice/Mojo/JHW-108 synthetic marijuana
292
293  • Any items not stated above that warrant a CID investigation to determine its origin, use, and
294    source.
295
296  The confiscation of personal offender property will be documented on a Non-Allowable Items
297  Receipt in conjunction with the offender's required signature. This form will accompany the
298  contraband to storage and/or disposition.
299
300  Contraband will never be taken home by any employee for personal utilization. Employees who
301  utilize contraband for personal reasons will be subject to disciplinary action and/or criminal
302  prosecution.
303
304  **DOCUMENTS REQUIRED:**
305
306  Incident Report
307  Rule Violation Report
308  Non-Allowable Items Receipt
309  Chain-of-Custody
310  As required by this procedure and through the chain of command.

| ENFORCEMENT AUTHORITY | |
|---|---|
| **Reviewed and Approved for Issuance** | 1/30/13 |
| | Deputy Commissioner of Institutions          Date |

16-07-01 (g)
Forms

AG 4738

# CHAPTER VIII

## ADMINISTRATIVE REMEDY PROGRAM

**I.    GENERAL**

MDOC has installed in all of its institutions/facilities a formal administrative remedy mechanism for use by all inmates committed to the custody of MDOC. Inmates will be required to use this program before they proceed with a lawsuit. Procedures to access the program will be posted at each institution/facility.

**II.    DEFINITION OF ADMINISTRATIVE REMEDY**

A written complaint by an inmate on the inmate's own behalf regarding the following:

- A policy within an institution/facility;
- An action involving an inmate or employee of an institution/facility;
- An incident occurring within an institution/facility; and or
- A condition in an institution/facility.

**III.    PURPOSE**

MDOC has established the Administrative Remedy Program through which an inmate may seek formal review of a complaint relating to any aspect of their incarceration. Through this procedure, inmates shall receive reasonable responses and, where appropriate meaningful remedies. This procedure applies to all inmates confined in, or committed to MDOC.

**IV.    PROCEDURES**

- **A.** Inmates are encouraged to continue to seek solutions to their concerns through informal means. However, to ensure their right to use the formal procedure they must make their request to the Legal Claims Adjudicator in writing within a 30 day period after an incident has occurred. If, after filing in the formal procedure, an inmate receives satisfactory response through informal means, the inmate shall request in writing that the Legal Claims Adjudicator cancel his formal request for administrative remedy.
- **B.** Inmates may request information or assistance in using the program from their Case Manager or from any staff member in their housing unit.
- **C.** The printed forms used in the process contain precise instructions for inmate participants. All instructions should be read and followed carefully by the inmate.
- **D.** The original letters of request to the Legal Claims Adjudicator should be as brief as possible. The letter should clearly indicate the terminology "this is a request for administrative remedy." The inmate should present as many facts as possible to answer all the questions who, what, when, where, and how concerning the incident.
- **E.** The initial complaint of an ARP and ARP appeals must be submitted through the ILAP office by completing an ILAP request form indicating ARP/ARP appeal pickup and the deadline date.
- **F.** The First Step Response Form ARP-2 is to be used by the inmate to continue additional steps in the process, there is no need to try to rewrite the original letter or request in this limited space. The original letter of request is available to all reviewers at each step of the process. The inmate must merely give a reason for their dissatisfaction with the previous response.
- **G.** A final decision will be made by the Superintendent, Warden or Community Corrections Director and the offender will be notified within 45 days of receipt.
- **H.** If the inmate needs additional space for citing reasons for continuing in the process, they may use another page of paper. The inmate should send the original to the Legal Claims Adjudicator and make a copy for his/her file.
- **I.** Once an inmate's request for remedy is accepted into the procedure, they must use the manila envelope that is furnished with his/her Step One response to continue the procedure. The requested information on the envelope should be filled in before forms are inserted since the forms are self-carbon. The flaps on the envelope may be tucked into the envelope for mailing, or the inmate may choose to tape or staple the envelope closed. Do not glue the envelope.
- **J.** If an offender is not satisfied with the Second Step response, he may file suit in State or Federal Court. The offender must provide the administrative remedy procedure number on the court forms.

**V.    SCREENING**

The Legal Claims Adjudicator will screen all requests prior to assignment to the First Step. If a request is rejected, it must be done for one of the following reasons, which shall be noted on Form ARP-1.

- **A.** The relief sought is beyond the power of MDOC to grant.
- **B.** The complaint concerns an action not yet taken or a decision not yet made.
- **C.** There has been a time lapse of more than 30 days between the event and the initial request.

    **D.** The inmate has requested a remedy for more than one incident (a multiple complaint).

    **E.** The request does not contain the phrase "this is a request for administrative remedy".

**VI.**   **ACCEPTANCE OR REJECTION**

Notice of the request's acceptance or rejection will be given via Form ARP-1. If a request is rejected for technical reasons or matters of form, the inmate shall have five days from the date of rejection to file his/her corrected grievance.

**VII.**  **ABUSE OF THE PROCEDURE**

    **A.** If an inmate submits additional requests during the period of Step One review of his request, the first request will be accepted and handled. The others will be logged and set aside for handling at the Adjudicator's discretion. A maximum of 10 requests will be logged. Requests above that number will be returned to the inmate and not filed.

    **B.** If a request is unclear or the volume of attached material is too great, it may be returned to the inmate with a request for clarity or summarization on one additional page. The inmate shall have five days to file his corrected grievance after notification is received.

    **C.** If an inmate refuses to cooperate with the inquiry into his allegation, the request may be cancelled by noting the lack of cooperation on the Form ARP-1 and returning it to the inmate.

**VIII.** **REPRISALS**

Nothing in this procedure should serve to prevent or discourage an inmate from communications with a Division Head, or anyone else in the department. No action shall be taken against anyone for the good faith use of or good faith participation in the program. The prohibition against reprisals should not be construed to prohibit discipline of inmates who do not use the system in good faith, or who file requests that are frivolous or deliberately malicious.

**IX.**   **DEADLINE AND TIME LIMITS**

    **A.** Unless an extension has been granted, no more than 90 days shall elapse from beginning the process to ending the process. Absent such an extension, expiration of response time limits without receipt of a written response shall entitle the inmate to move on to the next step in the process.

    **B.** An inmate may request an extension in writing of up to five days in which to file at any stage of the process. This request shall be up to the Legal Claims Adjudicator for Steps One and Two. The inmate must have valid reasons for the delay and must accompany their request for an extension.

    **C.** Valid reasons for delay shall be addressed at each step. The inmate must be notified in writing of such an extension. In no case may cumulative extensions exceed 25 days.

**X.**    **SENSITIVE ISSUES**

    **A.** If the inmate believes that the complaint is sensitive and that they would be adversely affected if the complaint became known at the institution or facility, they may file the complaint directly to the Deputy Commissioner, and the inmate must explain, in writing, the reason for not filing the complaint at the institution/facility.

    **B.** If the Deputy Commissioner believes that the complaint is sensitive, he shall accept and respond to the complaint. If the Deputy Commissioner does not agree that the complaint is sensitive, he shall advise the inmate in writing and return the complaint. When this occurs, the Deputy Commissioner shall also send a copy of this memo to the Legal Claims Adjudicator. The inmate shall then have five days from the date the rejection memo is received to submit their request through regular channels, beginning with the first step.