# Exhibit 1

Case 3:13-cv-00326-WHB-JCG   Document 146-1   Filed 07/07/14   Page 1 of 2

**Marc F. Stern, MD, MPH**
**Consultant in Correctional Health Care**

June 16, 2014

**Task**
I was asked by the National Prison Project of the American Civil Liberties Union and the Southern Poverty Law Center to opine on the adequacy of the system for delivering medical care to the prisoner population housed at the Eastern Mississippi Correctional Facility (EMCF) in Meridian, Mississippi.

**Summary of Opinions**
A minimally safe and adequate health care operation in a prison has systems in place that ensure that patients have timely and unimpeded access to health care services and that the health care services they access are clinically appropriate. To be clinically appropriate, a number of conditions must be met, including, but not limited to: care must be delivered by appropriately licensed professionals operating within the limits of their licensure, training, and ability, who use sound judgment in making clinical decisions; appropriate care resulting from those decisions must be executed as ordered and followed up as needed; and all care delivered must be memorialized in a permanent medical record such that subsequent care takers have full knowledge of previous care that was planned and delivered.

I found that these components of a minimally safe and adequate health care system are missing at EMCF. The health care system at EMCF is simply incapable of meeting the serious medical needs of the inmate population, and it thereby puts the entire inmate population at EMCF at constant substantial risk of serious injury.

The dysfunction in the medical care delivery system at EMCF permeates every essential aspect of the system; health care operations are broken at every level, and there is massive evidence of deliberate indifference on the part of medical and security staff at the facility as well as their supervisors.

Furthermore, it is apparent that this extreme level of dysfunction within EMCF can exist only if the statewide oversight system is also broken. It is the responsibility of central management at the statewide-level to detect and repair systemic problems of this magnitude, which put the lives and health of prisoners in State custody at such risk. However, such oversight is practically non-existent at EMCF, since MDOC chose to enter into a health-services contract that practically guarantees there will be no meaningful oversight. First, the contract limits MDOC's monitoring of the vendor's health care delivery to eight standards. In my extensive experience monitoring correctional health care systems, it is impossible to effectively monitor a complex system with only eight standards. Further, of these eight, some are wrong (that is, compliance