# EXHIBIT 44

HEALTH ASSURANCE, LLC
EAST MISSISSIPPI CORRECTIONAL FACILITY

Mortality/Death Review

## Part I: To be completed by reviewing physician

| Name/Pin | Age:41 DOB | Race: __ W _X_ B Other: | Gender: MALE | Location: EAST MS CORR HU 5A103 |
|---|---|---|---|---|

**History of illness prior to death, pertinent physical, lab, x-ray and consultation data, and diagnosis or differential diagnosis:** CARDIOMYOPATHY, CONGESTIVE HEART FAILURE, STUTTERING, SCHIZOPHRENIA, UNDIFFERENTIATED TYPE, NICOTINE DEPENDENCE, POLYSUBSTANCE DEPENDENCE, Hx of TB SKIN TEST-Positive, OBESITY, ASTHMA, HYPERTENSION

Inmate Arrived from MSP after being transferred back to EMCF. Arrived and was admitted to Medical unit on 7-26-2013 due to Mental Health decompensation and Medication non-compliance. Remained admitted in medcal until 11-21 2013. 8-7-2013 Sent to Rush ER and admitted due to HTN. On 8-9-2013 inmate was discharged back to EMCF for lack of cooperation and disruptive behavior, stable. 8-15-2013 L Heart Cath performed. EF of 20-25%. Returned to facility same day with no complications. 9-13-2013 sent to Jackson Heart Clinic for specialty evaluation, confirmed studies found at Rush, only ordered additional laxative. 11-20-2013 Sent to Rush ER by Dr. Edwards for HTN 210/140 and diaphoresis. Assessed and returned same day, hypertensive episode. 11-21-2013, discharged from medical and returned to Housing Unit 5.

**Description of events surrounding terminal event; subjective information, physical exam, lab, x-ray, interventions/treatment or other data:** On date of death [redacted], Inmate had been seen and assessed by AM Nursing staff and observed taking medications by LPN Gamble. VS- 146/92, P 102, R 22,Lungs CTA, NAD noted. Inmate was later same day seen by MHC Clara Thomas and reported no issues at the time to her. On 12-17 at approx 1910, Inmate was seen by Medical Staff after setting a fire at his cell. VS 140/98, P 88, R 18, NAD noted. Inmate was seen regularly on MH rounds. Inmate was seen twice daily by nursing staff passing medications. Time of death was 2237, pronounced at Anderson's Hospital.

| Medications before/at onset of acute event: | Medication used to manage the acute event: |
|---|---|
| HYDROXYZINE PAMOATE 100 by mouth every pm<br>* LISINOPRIL TABS 5 MG by mouth BID<br>KLOR-CON M20 20 MEQ by mouth twice daily<br>CETAPHIL ANTIBACTERIAL 0.3 % BAR (TRICLOSAN) 2 bars<br>COLACE 100 MG CAPS 2 tablets by mouth twice a day<br>SELENIUM SULFIDE 2.5 % LOTN Wash scalp weekly<br>ALBUTEROL SULFATE (2.5 MG/3ML) 0.083% NEB as needed only for acute wheezing<br>VENTOLIN HFA use as needed ud<br>IMDUR 30 MG XR24H-TAB bid<br>CLONIDINE HCL 0.1 MG TABS hs qd<br>* COREG 25MG TAKE ONE by mouth BID<br>FIBER LAXATIVE 0.52 GM twice daily<br>HYDROXYZINE HCL 100 mg IM every 8 hrs as needed anxiety<br>FLUPHENAZINE DECANOATE 25 MG IM EVERY 14 DAYS<br>CHLORPROMAZINE HCL TABS 100 MG qhs<br>ASPIRIN CHEW 81 MG po daily | None |

**Autopsy results. If not available, results will be attached to the report when available:**
Pending

**Case Summary including probable cause of death:**
Preliminary Autopsy Findings: Death due to natural causes related to known heart disease processes

**Were there any prior data that could possibly have lead to other management considerations:**
No

**Are there any recommendations for modification in protocol or approach to patient management:**
No

Reviewing Physician: _Dennis Q. Edwards, MD_    Date: _12-23-13_

**Part II.** To be completed by participants of the Morbidity and Mortality Review Meeting

| Criteria | Evaluation | Comments |
|---|---|---|
| **Timely Recognition of Symptoms Prior to Death** | Check One:<br><br>__X__ Within standard of care<br>____ Marginal deviation from Standard of care.<br>____ Significant deviation from Standard of care | Inmate was held in medical and treated for psychiatric and medical treatment compliance. Inmate had a heart cath at Rush and was sent to Jackson Heart Center for specialty eval. Inmate was sent for emergency evaluation of HTN episodes twice since return to EMCF in July. |
| **Timely Diagnosis** | Check One:<br><br>__X__ Within standard of care<br>____ Marginal deviation from Standard of care.<br>____ Significant deviation from Standard of care | Medical diagnosis was determined and confirmed through evaluation from multiple sources both inside and outside the facility. |
| **Timely Intervention** | Check One:<br>__X__ Within standard of care<br><br>____ Marginal deviation from Standard of care.<br><br>____ Significant deviation from Standard of care | Medical staff, with security support, obtained access to inmate cell when inmate would not respond to pill call request. Nursing staff began CPR and a code blue was called. Additional staff arrived and the ambulance was called for by security staff. CPR and AED use was begun and continued until inmate left facility grounds via Metro Ambulance service. ER Physician pronounced death at the hospital after a failed attempt to resuscitate. |
| **Appropriate Intervention** | Check One:<br>__X__ Within standard of care<br>____ Marginal deviation from Standard of care.<br>____ Significant deviation from Standard of care | CPR was initiated immediately and continued until Emergency Medical personnel arrived at the scene and the inmate was transported to Anderson's ER. |

**Independent of the cause of death, is there any way to improve patient care on review of this case?**
**No other actions could be determined at this time. Medical Staff felt comfortable releasing inmate to housing after assessment by Nursing Staff, Dr. Edwards who has a specialty in cardiologist, and Cardiologists at Rush Hospital in Meridian MS and at Jackson Heart Center.**

Committee Attendees:
1. _C. ___, HSA    2. _Anna PMHNP-BC_    3. _Derick Smith, Security_
4. _____ DW HTC    5. _Molo RN_    6. _____
7. _D.G. Mugg  Ph.D._    8. _William, LdJ._    9. _____
10. _Menge_    11. _____    12. _____

Reviewing Physician: _Daniel Q. Edwards, MD_    Date: _12 - 24 - 13_

Corporate Medical Director: _____    Date: _12/23/13_

Death2

# East Mississippi Correctional Facility

# Mortality Review Committee Meeting Minutes

Meeting was called to order at 1605 on December 23, 2014 by Dr. Mike Reddix, Health Assurance Corporate Medical Director. Attendees signed in on attached Mortality Review forms and meeting was turned over to Ollie Little, HSA at East Mississippi Correctional Facility. The meeting began with an overview of the Mortality Review form which was presented by HSA Little. The following concerns were addressed:

1. Dr. Reddix questioned why the inmate had been in the Medical Infirmary for approximately 4 months. HSA Little and Nurse Dunn, Psychiatric Nurse Practitioner, explained that the inmate was known to them from a previous incarceration at EMCF and had an extensive history of Medication non-compliance which led to both Medical and Mental Health decompesation. The inmate's Mental Health and Medical conditions were linked as the anxiety his mental condition caused him directly affected his physical health in the form of hypertensive episodes, and vice versa.

2. Dr. Dennis Huggins, PhD and MTC Mental Health Director at EMCF, asked about Inmate ▮▮▮ medication regimen. It was reviewed by HSA Little and NP Dunn and Dr. Reddix and was decided that the medication regimen was proper for this inmate and that, when compliant, was effective based on documentation in the Inmate's medical file. The medication had been previously reviewed by Facility Medical Director Derrick Edwards, MD.

3. Dr. Reddix had questions as to whether an implantable device may have been appropriate for this inmate. HSA Little answered stating that the criteria of a low ejection fraction had only recently been diagnosed and that the information had been reviewed by cardiologists at Rush Hospital in Meridian, MS and also at Jackson Heart Clinic in Jackson, MS, who had also seen the inmate on a specialty consultation. It was also noted the tending physician, Dr. Edwards, had a specialty in cardiology. It was asked what symptoms the inmate had displayed and to our knowledge the only symptoms presented were occasional nausea, vomiting, and hypertension. Specifically, no cases of syncope were noted by attendees of the committee.

4. Dr. Reddix questioned whether there were any lapses in security procedures which could have prevented this event. Major Derrick Smith, EMCF Chief of Security, answered stating that to his knowledge, 30 minute security rounds had been done. He also noted that due to the position the inmate was found in (sitting up with his feet on the floor as if sitting in bed) that it would have been unlikely that security staff would have been alerted as it would have he was perhaps only napping as opposed to if he had been on the floor for example. It was agreed that until specifically addressed the inmate could have easily drawn little attention. It was reported by HSA Little and Major Smith that the inmate had also been seen several times that day by medical staff, Mental Health staff, and by Security staff prior to the event.

5. Dr. Reddix asked about the conditions of the inmate's release from Medical to housing. It was stated by HSA Little that Dr. Edwards had discussed this with himself and the RN on duty and

agreed that, having been seen by multiple specialists and MH staff as well that the inmate was safe to release to housing as his anxiety due to being in the medical department for such an extended stay was increasing his anxiety, thereby affecting his medical condition. It was pointed out by HSA Little that, on all encounters since being released to Housing Unit 5, the inmate's vitals had been stable and controlled, including earlier the day of the terminal event.

6.  HSA Little reviewed Page 2 of the report and it was agreed by all in attendance that all proper measures were taken by medical and security staff in the reaction to the terminal event. Medical staff immediately began CPR and continued until Emergency Response staff arrived and the inmate left the grounds per ambulance. Security staff assisted appropriately by assisting in contacting Metro for ambulance transportation and assisting in exiting the facility with the inmate. This was agreed on by HSA Little, Major Smith, and Deputy Warden Ray Rice.

7.  It was agreed by all in attendance that there was nothing additional that could have been done to change the outcome in this event, and that the inmate's treatment medically, psychiatrically, and by security appears to have been appropriate.

The meeting was called to an end at approximately 1715.

These minutes were noted during the meeting by Tina Naylor, MH Supervisor for Health Assurance at EMCF and typed and prepared by HSA Little. Both are in agreement that they accurately reflect the discussion of the committee and, along with the report, accurately represent the overview of the terminal event of Inmate ███████ MDOC# ████.

Signature _____, HSA                    Date  12-24-13

Signature _Mrs. ███ Miller, Ed. S._               Date  12|24|13

Death4