IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JERMAINE DOCKERY, et al.                                    PLAINTIFFS

VS.                                    CIVIL ACTION NO. 3:13-CV-00326-WHB-JCG

RICHARD D. MCCARTY[1], et al.                               DEFENDANTS

### AFFIDAVIT OF EVELYN DUNN

STATE OF MISSISSIPPI
COUNTY OF HINDS

**PERSONALLY APPEARED BEFORE ME**, the undersigned authority in and for the State and County aforesaid EVELYN DUNN who, having been by me first duly sworn, states on oath the following:

1.  My name is EVELYN DUNN. I am an adult resident citizen of the State of Mississippi, located at 1254 Fort Stephens Road, Bailey, Mississippi. I have personal knowledge of the facts and information contained in this affidavit because I know these inmates, I provide psychiatric nursing care to them, and I am familiar with their medical and mental health records and information.

2.  I am a Board Certified Adult Psychiatric and Mental Health Nurse Practitioner. I have provided psychiatric nursing care to patients with mental illnesses, behavioral disorders, and substance abuse issues since approximately 1997. I obtained an Associate Degree in

---

[1] Pursuant to F.R.C.P. 25(d), Richard D. McCarty, Interim Commissioner, is substituted for Christopher Epps, who resigned as Commissioner on November 5, 2014.

1

**EXHIBIT "41"**

Nursing at Meridian Community College in 1997, a Bachelor of Science in Nursing from the University of Southern Mississippi in 1999, a Master of Science in Nursing Service Administration from the University of Southern Mississippi in 2003, and completed Post-Graduate Psychiatric/Mental Health Nursing work and study at the University of Southern Mississippi in 2005.

3.  I have been involved in psychiatric nursing care at the East Mississippi Correctional Facility ("EMCF") since approximately 2004. I am currently employed by Health Assurance, which has a contract with the Mississippi Department of Corrections to provide mental and physical medical care to inmates at EMCF.

4.  I reviewed the medical records of a number of inmates who were purportedly interviewed and/or whose records were purportedly reviewed by expert witnesses identified by the plaintiffs in this case. I personally know each of these inmates, interact with them on a regular basis, and have provided medical care to each of them. The medical records of these inmates and my personal observations of and interactions with them show the following:

███████, Robert #███████

Past History: According to the medical records, this offender had an extensive history of severely disruptive behavior at EMCF prior to July 2012, when Health Assurance began providing medical care at EMCF. His disruptive behaviors included self-inflicted injuries, assaulting EMCF staff by trying to spit on them, knowing that he is HIV positive. These behaviors were frequent prior to the transition in July 2012.

Current Status. He left EMCF in October 2014. Before he left and while he was under the medical care of Health Assurance, his disruptive behaviors had significantly decreased in intensity and in frequency. According to his medical records, there were isolated incidents of disruptive behavior. His medical records clearly show that his disruptive behaviors and his mental health status had not worsened since July 2012.

███, Bilethon #███

Past History: According to his medical records, this offender had an extensive history of severe mental illness prior to being committed to prison, and he had a history of noncompliance with psychiatric medications. He is in prison for the murder of his fifty year old brother, whom he shot in the bathroom of their home. He has an extensive history of noncompliance with medications, which led to increasingly paranoid and psychotic behavior and thoughts that led to the murder of his brother in 2009. His history of noncompliance with oral psychiatric medications continued while in prison prior to July 2012 and shortly after July 2012. His noncompliance with taking medications led to violent physical attacks on peers on two occasions. He decompensated mentally due to noncompliance with oral psychiatric medications. These violent acts resulted in him being placed on long-term segregation, the maximum security 23 hour lockdown unit, in early 2013, for the safety of others. This decision was made by the Mississippi Department of Corrections. Health Assurance does not make classification and housing placement decisions. Due to medication noncompliance and a history of violent psychotic attacks on others, he was placed on long-acting Haldol Decanoate medication with the goal of trying to stabilize this offender with the ultimate goal of preventing harm to him and others.

Current Status: According to his medical records, this offender has stabilized well with the use of long-acting Haldol Decanoate. Because he had an extensive history of noncompliance with oral psychiatric medications, he was placed on long-acting decanoate medication. This helped stabilize this offender, as evidenced by the fact that he was released from long-term segregation in June 2014. He was released from long-term segregation in June 2014 because he had no further violent behaviors and his psychosis stabilized with the recommended medications. According to his records, he continues to have stable mood/thoughts. At his most recent interview, on October 21, 2014, he reported that "he is doing good…" He will continue to be monitored at mental health rounds, at follow-up appointments, and through referrals. As in the case of any person with a severe mental illness, whether the patient is in prison or in the community, monitoring of behavior is critical to the early identification of any symptoms that could lead to relapsing. For this offender, the prognosis is good as long as the recommended medications are continued.

███, Corey #███

Past History: According to his medical records, at the time of the transition to Health Assurance in July 2012, he was overall stable, but he did experience episodes of stressing/frustration due to environmental stressors.

Current Status. At the time of the transition in July 2012, he was in the general prison population. He is now back on long-term segregation, where he has been for approximately nine months, due to security issue; however, according to medical records, his mental status has not worsened since July 2014. He continues at his baseline mental health status.

**Barrett, John #27578**

Past History: According to the medical records, at the time Health Assurance took over medical care for this inmate in July 2012, he was stable on medications.

Current Status: Since July 2012, according to his medical records, he has remained fairly stable mentally. He has required occasional medication adjustments due to minor mood fluctuations. His mental status has remained consistently stable since the transition to Health Assurance. He has episodes of anger/irritability due to environmental stressors/housing issues/housing placements. Housing matters are controlled by the MDOC classification department. Since July 2012, his overall mental status has been consistently stable. At his most recent psychiatric evaluation, his only issues were related to his housing assignment and no reports of medications/psychiatric issues. He remains stable on current medication regimen. According to medical records, his mental health status has not worsened since 2012.

**███████, Jeffery #███████**

Past History: According to this inmate's medical records, prior to and at the time Health Assurance took over medical care for this inmate in July 2012, he had episodes of increased stress from environmental stressors. There were, however, no signs or symptoms of severe mental illness.

Current Status: Since July 2012, he has had similar episodes of increased stress caused by environmental circumstances. However, there has been no worsening of these episodes and these episodes have not contributed to any significant mood/thought disturbances. According to his medical records, the stressors are situational and environmental that are typical of the stressors that occur in the lives of those incarcerated and are stressors that one may face in everyday situations, not just in correctional settings. These episodes have not interfered with daily functions and have not required any admissions to medical. During these episodes of increased stress and poor coping strategies, the mental health staff have been available to counsel with the offender. These episodes have not worsened. There have not been any significant mood/thought disturbances with this offender since the transition. His overall status has remained fairly consistent with stability of mood/thoughts. According to medical records, he is currently stable on medications.

**███████, Jermaine #███████**

Past History: According to his medical records, this inmate was stable mentally when Health Assurance took over medical care for this inmate in July 2012. For security reasons, in January 2013, he was placed on long-term segregation. He was placed there for rule violations and because he assaulted a member of the security staff. His placement in long-term segregation was for behavior reasons and not because of mental health instability. He had a history of violence

and prior to being placed on long-term segregation, he had an extensive history of rule violations. These behaviors predate July 2012, when Health Assurance began providing medical care at EMCF. He was placed on long-term segregation for approximately nine months.

Current Status: According to his medical records, he has made significant progress toward behavior improvement and is no longer on long-term segregation. He was released from long-term segregation in October 2013. Because of his ongoing good behavior, his custody level has been increased to medium custody. At his last psychiatric interview, he reported that he was "doing well" and was compliant with his medications. He is currently stable on medications.

████, Tavares #████

Past History: According to his medical records, he has an extensive history of severe self-injury behaviors, primarily swallowing objects and repeatedly swallowing objects due to an extensive history of impulse control issues. He had been at EMCF prior to the July 2012 transition with a history of repeatedly engaging in self-injury behavior by swallowing objects, but left EMCF. He was transferred back to EMCF a few months after the transition in July 2012. He has required repeated admissions to medical for suicide observation, off-site transports to local hospitals, and numerous surgeries for swallowing objects.

Current Status: According to his medical records, he is doing well and has had no recent episodes of swallowing objects. He has not exhibited any such behavior for almost two years, which represents a significant improvement for this offender. Overall, he is doing well on current medications and has stabilized significantly. His current good status is evidenced by his statement at a recent interview "this is the best I have felt in years….the right medications…no urges/impulses to harm myself…"

████, Philip #████

Past History: According to his medical records, at the time of the transition to Health Assurance in July 2012, he had episodes of noncompliance with medications and he made requests to discontinue his medications. He asked to resume his medications because he claimed he heard voices and because he had mood disturbances. At the time of the transition to Health Assurance in July 2012, he was on long-term segregation, 23 hours a day lockdown status. He came to EMCF a month or so prior to the transition in July 2012. He was on long-term segregation status when he arrived at EMCF.

Current Status: His behavior has been stable. His good behavior led to his release from the 23 hours day/long-term segregation status a year after being transferred to EMCF (a year after the transition to Health Assurance). He has continued to do well and has not returned to long-term segregation since being released from it a year ago. He continues to ask to be taken off his mental health medications and then requests to be put back on them. He has good insight into

his illness, being able to recognize the return of symptoms and to request that his medications be restarted. There have not been any significant mood/thought disturbances since the transition in July 2002 and he has remained consistently stable since that time. He is currently stable on medications.

### ▉, Derrick #▉

Past History: According to his medical records, at the time of transition to Health Assurance in July 2012, he was on long-term segregation/23 hour lockdown status because he exhibited frequent episodes of disruptive behaviors, he refused to obey the rules of the unit, and he refused to obey security staff instructions. These behaviors were occurring before the transition in July 2012 and required frequent use of force incidents to obtain behavior compliance. His behavior problems before and at the time of the transition were due to antisocial personality behaviors and he did not exhibit symptoms that suggested severe mental illness. He has an extensive history of violence/aggression and antisocial personality behavior problems.

Current Status: According to his medical records, he continues to have frequent episodes of disruptive behaviors and remains on long-term segregation status. His severely disruptive antisocial personality behaviors continue to require frequently use of force incidents by the security staff to obtain compliance with rules. His behavior problems are attributable to personality issues and not severe mental illness. Medications have been recommended and prescribed for this offender to help deal with these behaviors, but he has a history of noncompliance with medications. His lab work has shown no medication detected in his system. His behaviors currently are consistent with his behaviors prior to the transition in July 2002. His behaviors have not worsened. He continues to have frequent episodes of disruptive behavior and refuses to comply with the instructions of the security staff.

### ▉, Gregory #▉

Past History: According to his medical records, this offender was fairly stable at the time of the transition in July 2012. He has a history of a severe mental illness and is intellectually challenged. His intellectual impairment causes behaviors that require, at times, redirection. Prior to the transition, there were not any significant episodes of severely disruptive behavior, but there were episodes of behavior that required redirection from staff as well as use of medications. His behavior episodes were manageable with the use of the multidisciplinary approach of medication usage and mental health crisis intervention.

Current Status: He is stable on medications. His behavior episodes have not worsened since the transition in July 2012. When isolated episodes of mood/thought disturbances or agitation occur, he has been managed with the use of medication and mental health crisis intervention.

███, Otey #███

Past History: According to his medical records, at the time of the transition in July 2012, he was doing fairly well and was fairly stable. He has an extensive history of severe mental illness with a history of decompensation episodes.

Current Status: He is doing well at this time and remains in general population on the mental health unit. He was recently released from medical from psychiatric observation after an episode of severe relapse of psychosis, which resulted in an extensive stay in medical on psychiatric observation. This severe episode required an extensive admission in medical for close monitoring of mood/behaviors and to adjust his medications. He has been somewhat difficult to stabilize due to severe psychosis. He is doing well now on his current medication regimen. Although he required an extensive stay in medical due to his episode of severe psychosis, the primary goal was to prevent harm to himself and others. This goal was met, and he has been released back to general population and is performing his activities of daily living and is compliant with his medication regimen. He will be continually monitored during mental health rounds and through referrals due to a recent episode of a severe psychotic exacerbation.

███, Marcus #███

Past History: According to his medical records, this offender had an extensive history of severe mental illness prior to prison and prior to the July 2012 transition to Health Assurance. I have known him for 10 years, since 2004. He was at EMCF in the past and returned to EMCF in October 2013. He was released from prison at some point prior to his return to EMCF in October 2013. He had a history of being placed on long-term segregation, the 23 hour maximum security unit prior to his return to EMCF in October 2013. He was on long-term segregation when I first met this offender at EMCF in 2004. He has a history of noncompliance with oral psychiatric medications that has led to relapses and exacerbations of mood/thought disturbances. He reported that he was noncompliant with medications when he was released from prison, which led to impulsive acts that resulted in him returning to prison.

Current Status: This offender remains on long-term segregation status at this time. He is on long-acting Haldol Decanoate medication to assist with stabilization. He has repeatedly refused the recommended oral mood stabilizer medications that would further promote assistance with stabilization. He continues with episodes of mood/thought disturbance relapses. During these episodes, he is admitted to medical to allow for closer monitoring of mood/behaviors. This offender has a severe mental illness that requires monitoring of medication compliance as well as monitoring of moods/behaviors through follow-up appointments and through referrals, the type of monitoring that is required for any person with a severe mental illness, in or out of the correctional system. During these episodes, he is monitored more closely. According to his medical records, there has been no worsening of the symptoms from his baseline ten years ago. He had episodes of severe mania and severe psychosis ten years ago that resulted in disruptive type behavior such as smearing feces, and he continues to have episodes of these behaviosr at

times of relapses of severe mania and severe psychosis. According to his medical records, his episodes have not progressively worsened since his return to EMCF in October 2013 and since I have known him for ten years.

**■■■■, Alvin #■■■■**

Past History: According to his medical records, at the time of the transition in July 2012, he was stable on medications. He has an extensive history of being on long-term segregation. However, he was released one year prior to the transition in July 2012 and he has remained off long-term segregation status for three years.

Current Status: He remains stable on medications. He remains off long-term segregation and complies with unit rules and the instructions of security. Regarding his mental health, he was stable at the time of transition and remains stable on medications. At his most recent psychiatric interview, he reported doing well on current medications.

**■■■■, Rico #■■■■**

Past History: According to his medical records, this offender has an extensive history of severe mental illness, an extensive history of polysubstance dependence, and a history of being released from prison and re-entering the prison system shortly after being released due to noncompliance with mental health regimen and substance abuse. At the time of the transition in July 2012, he exhibited episodes of mood/thought disturbances. According to his records, there has been no worsening of these symptoms/behaviors from his baseline prior to the transition.

Current Status: He has episodes of self-injury behaviors that require mental health interventions and use of medications. There has not been any worsening of these behaviors or symptoms. His current status is not significantly different from his baseline status. As in the case of so many individuals with a severe mental illness, ongoing treatment is required to manage symptoms and relapse episodes. During times of these relapses with this offender, mental health crisis intervention and use of medications are offered.

**■■■■, James #■■■■**

Past History: According to his medical records, he was transferred to EMCF a few months after the transition in July 2012. He has an extensive history of disruptive behavior and refusing to comply with orders of the security staff, which necessitated use of force incidents by the security staff. Use of force is used by security staff to gain compliance when the offender is not cooperating or is exhibiting disruptive behavior. He was transferred to EMCF in November 2012 and was placed on long-term segregation a few months later due to reports that he stabbed a peer.

Current Status: He remains on long-term segregation. He continues to have isolated episodes of acting out behaviors and refusing to obey the orders of the security staff. He remains at his baseline status. There have been no significant changes to his mental health. His behavior problems are consistent with an antisocial personality and not the result or manifestation of severe mental illness.

██████, Joseph #██████

Past History: According to his medical records, at the time of the transition in July 2012, he was stable on medications.

Current Status: He remains stable on medications. He has required occasionally minor medication adjustments to his medications. Overall, he has been consistently stable on medications. There have not been any significant mood/thought disturbances since the transition. He has not required any psychiatric admissions to medical. At his most recent psychiatrist interview, he reported doing well on current medications.

██████, Johnny #██████

Past History: According to his medical records, he was transferred to EMCF approximately seven months after the transition in July 2012. He has a history of violent/disruptive behavior prior to his transfer to EMCF, and a history of severe mental illness, schizophrenia, and a history of noncompliance with medications. He was placed on long-term segregation upon his transfer to EMCF.

Current Status: The behaviors that were reported prior to his transfer to EMCF have not been exhibited since coming to EMCF. His behavior has improved significantly, resulting in his release from long-term segregation a year ago. He has progressed from close custody status to medium custody status because he has displayed appropriate behavior with no reports of disruptive behavior. Although he has been doing well with no severe disruptive behavior, he was recently placed on ad-segregation due to a security problem. He remains in medium custody status and remains off long-term segregation. He has been encouraged to restart medications to ensure ongoing stability, but he declined and does not meet criteria for involuntary medication administration at this time. Overall, he presents with significant improvements in his mental health status and behavior.

██████, Willie #██████

Past History: According to his medical records, at the time of the transition in July 2012, he was on long-term segregation due to violent behavior toward a former roommate in February 2012. In February 2012, he reportedly tied his roommate to the bed and raped him repeatedly. He has

9

an extensive history of violence and anger. He reported at a previous interview that he stabbed his teacher at the age of thirteen.

Current Status: Although he continues to have episodes of mild anger, overall, he is doing well. As a result of ongoing good behavior, he was moved to the "honor" pod unit 5D a year ago, which is the upgraded pod on long-term segregation that allows offenders to have more movement on their pod and be free from the 23 hour lockdown status of long-term segregation. Although he remains on long-term segregation, he is on the final transition pod. The next step will be placement back in the general inmate population. At his last visit, he is controlling his anger and his anger is not leading to any violent outbursts. There have been no reports of physical assault.

█████, James #█████

Past History: According to his medical records, at the time of the transition in July 2012, he was stable on medications.

Current Status: He remains stable on medications. A few months ago, he reported mild depression due to the death of mother. He reported that he was doing well prior to death of mother and was doing well after learning of the death of his mother. No significant mood disturbances during this time of death of mother. He has remained consistently stable throughout the transition. According to his medical records, there is no worsening of his mental health since July 2012.

FURTHER AFFIANT SAITH NOT.

_____
EVELYN DUNN

SWORN TO AND SUBSCRIBED BEFORE ME, this the 15th day of December 2014.

_____
NOTARY PUBLIC

My commission expires:

MAY 28, 2015

[Notary Seal: STATE OF MISSISSIPPI, NOTARY PUBLIC, ID # 69972, JOSEPH W. SCOTT, Commission Expires May 28, 2015, LAUDERDALE COUNTY]

10