IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**JERMAINE DOCKERY, ET AL.**                                                          **PLAINTIFFS**

**VS.**                                                                    **NO.: 3:13-CV-0326-WHB-JCG**

**PELICIA HALL, ET AL.**                                                          **DEFENDANTS**

**MDOC's RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL PRODUCTION OF HEPATITIS C RECORDS**

Defendants Pelicia Hall, et al. (collectively "MDOC") file this response in opposition to Plaintiffs' Motion Compel Responses to Plaintiffs' Fifth Set of Interrogatories (Docs. 480 & 481).

## INTRODUCTION

In their Fifth Set of Interrogatories (served just two months before the close of discovery), Plaintiffs seek to open an entirely new fishing expedition into EMCF's treatment of a specific disease: Hepatitis C.  Before now, Plaintiffs have never targeted any specific disease for discovery in this suit, which challenges general medical policies and practices that could apply across a prison-wide class.  Plaintiffs' newfound interest in Hepatitis C is no coincidence; the ACLU has recently filed suits across the country challenging corrections agencies' practices for diagnosing and treating Hepatitis C.

This is not such a suit.  And whatever the merits of those other suits, Plaintiffs' counsel should not be permitted to use discovery in this general class action to fish for information that, while irrelevant to this suit, would be used to support different claims in a separate suit.  Plaintiffs' Motion to Compel should be denied.

1

## BACKGROUND

### I. Plaintiffs' Complaint and the Court's Class Certification Order do not mention Hepatitis C.

The Plaintiffs filed this suit in May 2013, seeking certification of a class action to challenge certain prison-wide conditions of confinement at EMCF that they claim violate the Eighth Amendment of the United States Constitution. Doc. 1. While the complaint makes numerous allegations related to the delivery of healthcare at EMCF, the complaint *does not mention* Hepatitis C, allege that Hepatitis C treatment is inadequate, or identify a class representative that could pursue claims related to the treatment of Hepatitis C. *See id.*

In September 2015, on the Plaintiffs' motion, this Court certified for class treatment a prison-wide class and three subclasses to pursue seven claims alleged in the complaint. Among those claims is an inadequate healthcare claim: "Claim One— The policies and practices at EMCF subject members of the EMCF Class to a substantial risk of serious harm and injury from inadequate medical care, including dental care, optical care, and other health-related services." *Dockery v. Fisher*, 2015 WL 5737608, **3-4 (S.D. Miss. Sept. 29, 2015). None of the claims to be pursued relate to EMCF's policies and practices for treating Hepatitis C. *See id.* In fact, like the complaint, the Court's class-certification order makes no mention of "hepatitis" at all. EMCF's practices for diagnosing and treating the disease simply have not been a factor in this case.

**II.     In January 2017, a Pennsylvania district court issued a Hepatitis C ruling that has been touted by the ACLU.**

In 2016, after this suit was filed, the ACLU began pursuing Hepatitis C-specific suits in other states, including Tennessee[1] and Missouri.[2] A federal district court in Tennessee recently certified a class action lawsuit challenging the Tennessee Department of Corrections' Hepatitis C treatment protocols and diagnosing practices. *See Graham v. Parker*, 2017 WL 1737871 (M.D. Tenn. May 4, 2017). That decision has been appealed to the Sixth Circuit.

In January 2017, in a single-plaintiff suit challenging the Hepatitis C treatment provided to inmates by the Pennsylvania Department of Corrections Pennsylvania ("PDOC"), a federal district court issued a preliminary injunction requiring the PDOC to treat the plaintiff with certain "direct-acting antiviral drugs" (which came on the market in December 2013 and October 2014) that might possibly cure his condition. *Abu-Jamal v. Wetzel*, 2017 WL 34700 (M.D. Pa. Jan. 3, 2017). That decision is now on appeal to the Third Circuit. The Fifth Circuit appears to have reached the opposite conclusion, holding that an inmate's allegation that prison medical staff "failed to provide him with medications that could cure his Hepatitis C" amounted to a "disagreement with the treatment provided" and did not rise to the

---

[1] *See* ACLU, "News," *Lawsuit Challenges Tennessee Department of Corrections Hepatitis C Protocol* (July 26, 2016), available at https://www.aclu.org/news/lawsuit-challenges-tennessee-department-corrections-hepatitis-c-protocol.

[2] *See* ALCU of Missouri, "News & Views," *Lawsuit Challenges Missouri Department of Corrections' Lack of Hepatitis C Treatment* (Dec. 15, 2016), available at https://www.aclu-mo.org/newsviews/2016/12/15/lawsuit-challenges-missouri-department-corrections-lack-hepa.

level of an Eighth Amendment violation. *Hendrix v. Lloyd Aschberger, P.A.*, 2017 WL 1826096 (5th Cir. May 3, 2017).

Similar litigation challenging Hepatitis C treatment for prisoners has been pursued around the country. The ACLU, however, has touted the January 2017 *Abu-Jamal* decision as "the first time a federal court has ordered prison officials to provide an incarcerated patient with the new [hepatitis C] medications that came on the market in 2013." *See* Matt Stroud, *Abu-Jamal Hep C treatment victory will benefit 7,000 PA state prison inmates*, Speaking Freely—Official Blog of the American Civil Liberties Union of Pennsylvania (Jan. 6, 2017).[3]

### III. In April 2017, Plaintiffs seek Hepatitis C specific information for first time in this four-year-running lawsuit.

In April 2017, shortly after the *Abu-Jamal* decision was issued, the Plaintiffs *for the first time* in this four-year litigation singled out in their discovery requests the treatment course for a specific disease: Hepatitis C. Their new interrogatories seek the following disease-specific details:

1. the identity of all prisoners housed at EMCF who have been diagnosed with Hepatitis C;

2. a discussion of whether "fibrosis staging" has occurred for each of the inmates diagnosed with Hepatitis C;

3. each inmate's "fibrosis stage" and "APRI score," which are Hepatitis C indicators;

4. the identity of all prisoners housed at EMCF who have been treated for Hepatitis C;

---

[3] The ACLU announcement is available at https://blog.aclupa.org/2017/01/06/abu-jamal-hep-c-treatment-victory-will-benefit-7000-pa-state-prison-inmates/.

4

5. a list of medications used to treat each inmate's Hepatitis C infection; and

6. the period of time that each medication used to treat Hepatitis C was administered to each inmate.

*See* Doc. 481 at 11-12 (discussing Plaintiffs' interrogatories). These are the types of disease-specific discovery requests that parties would expect in a targeted Hepatitis C suit being pursued by adequate class representatives, not in conditions-of-confinement case that, by Plaintiffs' own admission, raises only "general allegations about inadequate medical care at EMCF . . . ." Doc. 481 at 5.

In fact, Plaintiffs can identify only one prior instance in the four-year course of this litigation in which a discovery request even mentioned Hepatitis C, and that was a generic request for the identity of chronic care patients. In September 2013, at the outset of this suit—during the pre-certification stage and before the antiviral drugs discussed in *Abu-Jamal* were even approved by the FDA—Plaintiffs served a broad interrogatory request for the "identity of all EMCF prisoners" suffering from myriad chronic diseases, including such conditions as Hepatitis C, HIV/AIDS, diabetes, hypertension, and asthma among others. *See* Doc. 481 at 3 (Motion to Compel discussing prior interrogatory request). This generalized interrogatory did not single out any particular chronic disease, and it requested only the "identity" of inmates receiving chronic care—not detailed information regarding testing of or drugs prescribed to each inmate identified.

Furthermore, in the combined 400 pages of reports and 80 case studies submitted by Plaintiffs' health care experts, Stern and LaMarre, there were only a handful of mentions of Hepatitis C. Notwithstanding their lack of focus on any

5

particular chronic condition or any targeted discovery related to Hepatitis C, Plaintiffs' experts offered general opinions on medical treatment at EMCF.

Now, at this late stage of the litigation, Plaintiffs seek the Court's blessing to embark on an entirely new discovery venture into MDOC's practices for diagnosing and treating Hepatitis C specifically. This new discovery venture is aimed ostensibly at uncovering evidence to support Plaintiffs' "general allegations" of inadequate medical care. Plaintiffs offer no explanation for targeting Hepatitis C as opposed to any of the other chronic diseases suffered by inmates at EMCF and chronic care treatment regimens provided to those inmates by MDOC.

The Court can be sure, though, that Plaintiffs did not pull their Hepatitis C requests randomly from a hat of chronic diseases. *See Abu-Jamal*, 2017 WL 34700.

## LEGAL STANDARDS

Under the Federal Rules, a party may seek to discover information in the possession of other parties so long as the information is "relevant to any parties' claim or defense" and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In assessing proportionality, the factors courts consider are "the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Plaintiffs bear the burden to show that their requests are relevant and proportional to the case. *See Labaty v. UWT, Inc.*, 2015 WL 1393641 (W.D. Tex. Mar.

6

24, 2015). Further, recent amendments to Rule 26 indicate that it is the "collective responsibility" of the parties and the Court to "consider the proportionality of [the] discovery" sought. Fed. R. Civ. P. 26, advisory committee notes, 2015 Amendment.

In addition to the proportionality factors set forth in Rule 26(b)(1), a court also "must limit the frequency or extent of discovery otherwise allowed by [the Federal Rules] . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive [or] (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action . . . ." Fed. R. Civ. P. 26(b)(2)(C)(i)-(ii).

## ARGUMENT

Plaintiffs' motion to compel should be denied, as the information sought by Interrogatories Nos. 1 and 2 is irrelevant to the claims made in this action, disproportional to the needs of this case, and appears to be an improper fishing expedition for information that would be used to file a separate Hepatitis C lawsuit. To be clear, MDOC does not believe that such a suit would be warranted. Plaintiffs may speculate otherwise, but they cannot use discovery—or abuse discovery, more aptly—in this general class action to confirm or deny their speculation.

**I. Plaintiffs' last minute request for irrelevant Hepatitis C materials is not proportional to the issues at stake in Plaintiffs' generalized challenge to medical treatment.**

For the reasons explained in MDOC's responses in opposition to Plaintiffs' Motion to Compel Production of Documents [466] and Motion to Compel

Supplemental Production of Documents [485], which reasons are incorporated (but not repeated) here, the proportionality factors weigh heavily against requiring Defendant to produce the requested information related to Hepatitis C. Most importantly, the information requested will not assist the Court in determining whether Defendants have violated the Eighth Amendment.

The information sought from this discovery is not important to the issues at stake as this class action was not intended to address Hepatitis C treatment specifically: Plaintiffs do not allege any specific claims about Hepatitis C treatment in their Complaint; there is no mention of Hepatitis C treatment or inmates diagnosed with Hepatitis C in the class certification order; there is no "Hepatitis C" class representative; nor is there a subclass of inmates for any specific chronic illness, such as Hepatitis C. [257]  Plaintiffs' complete lack of interest in information related specifically to Hepatitis C treatment in the four years since this suit was filed in May 2013, until only weeks before the close of discovery, further highlights how far out of bounds this last minute request is when compared to the issues actually at stake in this class action. For example, Plaintiffs have propounded no Hepatitis C-specific discovery in four years prior to this request. In addition, Plaintiffs did not designate a Hepatitis C expert witness; nor did their designated experts focus on Hepatitis C. The Plaintiffs own approach to this litigation demonstrates that Hepatitis C specific information is not important to the issues at stake.

In addition, Plaintiffs and their experts have had ample opportunity to review inmates' medical records, discuss medical conditions and care with inmates, and have

received over 180,000 pages of health care records for more than 130 inmates, including chronic care treatment information. This extensive amount of access to inmate medical information is sufficiently probative to address the claims made in this suit, which do not include specific allegations related to the care and treatment of inmates diagnosed with Hepatitis C.

## II. Plaintiffs' request for Hepatitis C information is an attempt to fish for potential plaintiffs and evidence to support a separate action.

Plaintiffs' last-minute demand for Hepatitis C discovery would be objectionable even without the backdrop of the ACLU's Hepatitis C litigation in other states. The information, even if produced, cannot factor into the opinions offered by Plaintiffs' experts, who filed reports months ago and who do not focus on Hepatitis C in any event. Moreover, as noted above, the information could not be used to support Plaintiffs' claims for class-wide relief, as there is no contention that all inmates at EMCF suffer from Hepatitis C and no "Hepatitis C" subclass has been requested by Plaintiffs or certified by the Court.

When viewed the context of the recent *Abu-Jamal* decision and the ACLU's other suits, Plaintiffs' discovery request is a plainly improper fishing expedition. The aim of Plaintiffs' Hepatitis C discovery requests is not to support the generalized claims in this suit; the aim is to use this suit as a vehicle to explore the possibility of filing an entirely separate suit targeting EMCF's treatment of inmates with Hepatitis C. "[D]istrict courts are tasked with guarding against abusive discovery, including an unwieldy, burdensome, and speculative fishing expedition." *Montoya v. State Farm Lloyds*, 2015 WL 12940020, *2 (S.D. Tex. Jan. 27, 2015) (citing *Crosby v. La.

9

*Health Serv. & Indem. Co.*, 647 F.3d 258 (5th Cir. 2011).  A court is not "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." *McGee v. Hayes*, 43 Fed. Appx. 214, 217 (10th Cir. 2002).

If the Court were to grant Plaintiffs' request, it would open up an entirely new disease-specific front in what has always been a generalized challenge to the delivery of medical care at EMCF.  Significant additional discovery—including a new round of inmate questionnaires—may be required; trial strategies would need to be revisited in light of a potential disease-specific focus; and additional persons (inmates and staff) with relevant Hepatitis-C-specific knowledge and, perhaps new trial witnesses, would need to be identified.  The Court need look no further than the *Abu-Jamal* Court's exhaustive fact-findings on the single issue of Hepatitis C treatment to understand the significance of opening this new front.  Casting this line in the water could fling open the discovery floodgates just when they are set to shut.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests this Court to deny Plaintiffs' Motion to Compel Responses to Fifth Set of Interrogatories.

Respectfully submitted, this the 24th day of May, 2017.


BY:   *s/ Michael J. Bentley*

        Michael J. Bentley, Bar No. 102631
        Molly M. Walker, Bar No. 100689
        Erin D. Saltaformaggio, Bar. No. 103999
        Bradley Arant Boult Cummings, LLP
        188 East Capitol Street
        Post Office Box 1789

                                        Jackson, Mississippi 39215-1789
                                        Phone:  (601) 948-8000
                                        Fax:     (601) 948-3000
                                          mbentley@bradley.com
                                          mmwalker@bradley.com
                                          esaltaformaggio@bradley.com

**ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

  I, Michael J. Bentley, do hereby certify that on May 24, 2017, I electronically filed the above and foregoing motion with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

            */s/ Michael J. Bentley*
            An Attorney for Defendants