# <u>Composite Exhibit</u>

### <u>MDOC Policy Nos</u>.: 16-11, 16-12, 16-13, 16-15, 16-23

### <u>MDOC Procedure Nos</u>.: 16-11-01, 16-12-01, 16-13-01, 16-13-02,

### 16-15.-01, 16-23-01



**EXHIBIT**

**B**

| MISSISSIPPI DEPARTMENT OF CORRECTIONS | POLICY NUMBER 16-11 |
| --- | --- |
| | AGENCY WIDE |
| SECURITY EQUIPMENT | INITIAL DATE 12-15-1997 |
| ACA STANDARDS: 2- CO-3A-01, 4-4199 thru 4-4202 | EFFECTIVE DATE 08-01-2011 |
| STATUTES: | RESTRICTED | PAGE 1 of 2 |

1 **POLICY:**
2
3 It is the policy of the Mississippi Department of Corrections (MDOC) to govern the availability,
4 control and use of security equipment.
5
6 **DEFINITIONS:**
7
8 None.
9
10 **PRECEPTS:**
11
12 *Administration of Correctional Agencies* (Central Office): **There are written agency policies**
13 **that cover, at a minimum, the following:**
14
15 • **security**
16 • **correctional officer assignments**
17 • **patrol and inspection**
18 • **use of restraints**
19 • **security equipment**
20 • **control center operation**
21 • **permanent log maintenance**
22 • **count procedures**
23 • **contraband control [2-CO-3A-01].**

24 *Adult Correctional Institutions:* Written policy and procedure govern the availability,
25 control and use of chemical agents, electrical disablers, and related security devices
26 and specify the level of authority required for their access and use. Chemical agents and
27 electrical disablers are used only with the authorization of the warden/superintendent or
28 designee [4-4199].
29
30 *Adult Correctional Institutions:* Written policy, procedure, and practice govern the inventory,
31 issuance and accountability of routine and emergency distributions of security
32 equipment [4-4200].
33
34 *Adult Correctional Institutions:* Firearms, chemical agents, and related security equipment
35 are inventoried at least monthly to determine their condition and expiration dates [4-
36 4201].

AG 3297

| TITLE:  SECURITY EQUIPMENT | | POLICY NUMBER 16-11 |
|---|---|---|
| EFFECTIVE DATE: 08-01-2011 | RESTRICTED | PAGE 2 of 2 |

37  *Adult Correctional Institutions:*  Written policy, procedure, and practice provide that written
38  reports are submitted to the warden/superintendent or designee no later than the
39  conclusion of the tour of duty when any of the following occur:
40
41  • discharge of a firearm or other weapon
42  • use of chemical agents to control inmates
43  • use of force to control inmates
44  • inmate(s) remain in restraints at the end of the shift [4-4202].
45
46  The Commissioner or designee(s) will ensure procedures:
47
48  • Make security equipment available to applicable staff
49  • Mandate authorization for the use of security equipment
50  • Specify designation of satellite armories
51  • Mandate compliance with MDOC Use of Force Policy/Procedures (16-13, 16-13-01)
52  • Create inventory and accountability controls for security equipment
53  • Specify duty responsibilities of facility Ordinance Officer and/or ERT Officer
54  • Establish protocols for Armory operations
55  • Establish protocols for satellite armories
56  • Establish protocols for security equipment purchases and acquisition
57  • Establish protocols for reporting the use of security of equipment/weaponry and/or "use of
58    force/restraint(s)" no later than at the conclusion of the tour of duty
59
60  **DOCUMENTS REQUIRED:**
61
62  As required by this policy and through the chain of command.

---

| ENFORCEMENT AUTHORITY |
|---|

All standard operating procedures (SOPs) and/or other directive documents related to the
implementation and enforcement of this policy will bear the signature of and be issued under the
authority of the Commissioner of Corrections.

| **Reviewed and Approved for Issuance** | General Counsel | 7/19/2011 Date |
|---|---|---|
| | Commissioner | 07/21/11 Date |

| | MISSISSIPPI DEPARTMENT OF CORRECTIONS | POLICY NUMBER 16-13 |
|---|---|---|
| | | AGENCY WIDE |
| | USE OF FORCE | INITIAL DATE 12-01-1987 |
| ACA STANDARDS:   4-4202, 4-4203, 4-4206, 4-ACRS-2B-01, 4-ACRS-2B-02, 4-ACRS-2B-03, 4-APPFS-3G-01, 4-APPFS-3G-02 | | EFFECTIVE DATE 03-01-2014 |
| STATUTES: | RESTRICTED | PAGE 1 of 5 |

**POLICY:**

It is the policy of the Mississippi Department of Corrections (MDOC) to restrict the use of physical force to instances of justifiable self-defense, protection of others, protection of property, prevention of escapes, and to maintain or regain control, and then only as a last resort and in accordance with appropriate statutory authority.

**DEFINITIONS:**

Force – The exertion or application of physical compulsion or constraint.

Officer Presence – Identification of authority and a show of force.

Verbal Intervention – Commands of direction to gain control or compliance of the offender.

Soft Empty Hand Control – Pressure points, joint locks that have minimal probability of injury.

Hard Empty Hand Control – Strikes, kicks that have a high probability of injury.

Soft Intermediate Weapon Control – May include Oleoresin Capsicum aerosol spray or chemical control, impact weapon joint locks.

Hard Intermediate Weapon Control – Impact weapon strikes.

Weapons – Firearms, batons, and chemical agents which are approved and issued by the agency.

Deadly Force – Any force that carries a substantial risk that will likely result in the death of any person.  Examples of deadly force include but are not limited to, the following:

- Discharging a firearm in the immediate vicinity of or directed toward another person
- Striking another person on the head with an hard impact weapon
- Applying force or weight to the throat or neck of another

Less-Than-Deadly Force – Any force which could not reasonably be expected to result in the death of the person against whom it is directed.

Excessive Force – An application of force which, either by the type of force employed, or the extent to which such force is employed, exceeds that force which reasonably appears to be necessary under all the circumstances surrounding the incident.

16-13 (e)
Forms

| TITLE:   USE OF FORCE | | POLICY NUMBER 16-13 |
|---|---|---|
| EFFECTIVE DATE:  03-01-2014 | RESTRICTED | PAGE 2 of 5 |

Minimum Amount of Force – The least amount of force necessary to overcome the resistance offered.

Spontaneous Use of Force – A use of force employed as an immediate response to a specific act.

Planned Use of Force – Any use of force where staff can prepare for the use of force.

Enforcement Necessity – To gain compliance with order and/or regulations when enforcement is immediately necessary to preserve safety and security of institution.

**PRECEPTS:**

All MDOC personnel will be provided with a departmental policy that establishes guidelines and limitations on the use of force.

Additionally, officers will be trained in the appropriate and proficient use of force, control and management of firearms, chemical agents, and other non-lethal weapons.

Employees may use force in the lawful performance of their duties when an offender or situation dictates that a use of force is necessary.

*Adult Correctional Institutions:*  **(MANDATORY)  Written policy, procedure, and practice restrict the use of physical force to instances of justifiable self-defense, protection of others, protection of property, prevention of escapes, and to maintain or regain control, and then only as a last resort and in accordance with appropriate statutory authority.  In no event is physical force justifiable as punishment.  A written report is prepared following all uses of force and is submitted to administrative staff for review [4-4206].**

*Adult Probation and Parole Field Services*:  **Physical force is used only in instances of justifiable self-defense, protection of others, and in accordance with appropriate statutory authority.  Only reasonable and necessary force is employed [4-APPFS-3G-01].**

The Commissioner or designee will develop procedures to restrict the use of force to such instances as stated in accordance with appropriate statutory authority and good corrections practices.

Force may be authorized, but not limited to the following instances:

- To protect staff, the public and offenders
- To prevent escape
- To prevent the destruction of state property
- To gain compliance from an offender
- In instances of justifiable self-defense
- To prevent the commission of a felony or misdemeanor
- To enforce regulations and orders
- To prevent or quell a riot

| TITLE:  USE OF FORCE | | POLICY NUMBER 16-13 |
|---|---|---|
| EFFECTIVE DATE: 03-01-2014 | RESTRICTED | PAGE 3 of 5 |

88  If time permits, a supervisor's permission must be obtained prior to the use of force.

90  Staff will use the least amount of force necessary to control the person or situation.

92  In all incidents, the safety of the public, staff and offenders will be considered in determining the
93  necessary force to gain control of the individual or the situation.  In no event will physical force
94  be used as punishment.

96  Deadly force may be used when there is an immediate threat of death or serious bodily harm to
97  the public, officer, staff, or offenders, and a lesser use of force level would not eliminate the
98  threat or prevent the escape.

100 Acknowledgement

102 All employees of the agency are required to sign this policy and procedure.  By signing, they
103 acknowledge they have read and understand MDOC policy and procedure, Use of Force.

105 They acknowledge that they understand the training required for use of force, approval and
106 issuance of weapons and chemical agents, necessary medical treatment, and proper
107 notification when force is used.

109 Notification

111 *Adult Correctional Institutions:*  **Written policy, procedure, and practice provide that written
112 reports are submitted to the warden/superintendent or designee no later than the
113 conclusion of the tour of duty when any of the following occur:**

115 • **discharge of a firearm or other weapon**
116 • **use of chemical agents to control inmates**
117 • **use of force to control inmates**
118 • **inmate(s) remain in restraints at the end of the shift [4-4202].**

120 *Adult Community Residential Services:*   **(MANDATORY) A written report is prepared
121 following all uses of force and is submitted to the facility administrator. The report
122 details all circumstances, lists those involved, including witnesses, and describes
123 medical services provided [4-ACRS-2B-01].**

125 *Adult Probation and Parole Field Services:*  **All incidents involving use of physical force are
126 reported fully, promptly, and in writing to administrative staff for their information and
127 review.  All injuries are treated promptly and reported in writing. [4-APPFS-3G-02].**

129 The Commissioner and the Deputy Commissioners or designees will develop procedures to
130 ensure that subordinate units promptly report in writing to the chain of command of the extent to
131 which force has been used, any injuries that may have occurred, and the treatment provided to
132 any person injured.
133 *Adult Community Residential Services:*  **Use of force incidents are investigated; findings are
134 aggregated and analyzed [4-ACRS-2B-03].**

16-13 (e)
Forms

| TITLE:  USE OF FORCE | | POLICY NUMBER 16-13 |
|---|---|---|
| EFFECTIVE DATE: 03-01-2014 | RESTRICTED | PAGE 4 of 5 |

135  Medical Treatment
136
137  *Adult Correctional Institutions:*   **(MANDATORY) Written policy, procedure, and practice**
138  **provide that all persons injured in an incident receive immediate medical examination**
139  **and treatment [4-4203].**
140
141  *Adult Community Residential Services:*  **Persons injured in an incident immediately receive**
142  **a medical examination and treatment [4-ACRS-2B-02].**
143
144  The Commissioner or designee will develop procedures to ensure all persons involved in all use
145  of force incident(s) will immediately receive a medical examination and treatment even when the
146  person does not appear to be injured.  The person will be evaluated by a qualified medical
147  professional.
148
149   In case of serious injury or death from the use of force, appropriate medical personnel will be
150  notified immediately.
151
152  Officers on the scene will ensure the injured person receives appropriate medical attention.
153
154  A written report from medical personnel treating any person injured in a use of force incident will
155  be sent through the chain of command to the Commissioner or designee.
156
157  Approval of Weapons, Chemical Agents and Restraints
158
159  The Commissioner or designee will develop a list of approved weapons, ammunition, chemical
160  agents, non-lethal weapons and restraints that may be used by agency personnel.
161
162  MDOC employees may only use those weapons approved and issued by the agency in the
163  performance of their duties.
164
165  Duty to Intervene
166
167  In the event any employee observes an excessive use of force by another employee, it will be
168  that person's responsibility to intervene in a reasonable manner and attempt to de-escalate or
169  control the amount of force used.
170
171  The employee will report the incident to his supervisor and the appropriate Superintendent,
172  Warden, or Community Corrections Director.
173
174  The Commissioner or designee will investigate all allegations of improper use of force.  In cases
175  where possible criminal acts are involved, the appropriate law enforcement agency will be
176  notified.
177
178  To safeguard against unwarranted allegations of excessive use of force, a video record (video
179  camera with audio recording capabilities) will be made of any planned use of force incident.
180  Where appropriate, a photographic record should be made after any type of use of force
181  incident to protect the rights of all involved in the incident.

| TITLE:  USE OF FORCE | | POLICY NUMBER 16-13 |
|---|---|---|
| EFFECTIVE DATE: 03-01-2014 | RESTRICTED | PAGE 5 of 5 |

182  **DOCUMENTS REQUIRED:**
183
184  As required by this procedure and through the chain of command.

<table>
<tr><td colspan="2" align="center"><strong>ENFORCEMENT AUTHORITY</strong></td></tr>
<tr><td colspan="2">All standard operating procedures (SOPs) and/or other directive documents related to the implementation and enforcement of this policy will bear the signature of and be issued under the authority of the Commissioner of Corrections.</td></tr>
<tr><td rowspan="2"><strong>Reviewed and Approved for Issuance</strong></td><td>General Counsel        2/21/2014   Date</td></tr>
<tr><td>Commissioner      02/28/14   Date</td></tr>
</table>

16-13 (e)
Forms

| MISSISSIPPI DEPARTMENT OF CORRECTIONS | POLICY NUMBER 16-15 |
|---|---|
| | AGENCY WIDE |
| USE OF RESTRAINTS | INITIAL DATE 06-13-1983 |
| ACA STANDARDS:  2-CO-3A-01, 4-4190, 4-4190-1, 4-4191 | EFFECTIVE DATE 08-01-2011 |
| STATUTES: | RESTRICTED | PAGE 1 of 2 |

**POLICY:**

It is the policy of the Mississippi Department of Corrections to ensure restraints are never applied as punishment and are only used as a precaution against escape during transfer, for medical reasons, to prevent self-injury, to prevent injury to others or to prevent property damage.

**DEFINITIONS:**

Restraints - A device used to physically limit the movement of the wearer.

**PRECEPTS:**

*Administration of Correctional Agencies* (Central Office): **There are written agency policies that cover, at a minimum, the following:**

- **security**
- **correctional officer assignments**
- **patrol and inspection**
- **use of restraints**
- **security equipment**
- **control center operation**
- **permanent log maintenance**
- **count procedures**
- **contraband control [2-CO-3A-01]**

*Adult Correctional Institutions:*  Written policy, procedure, and practice provide that instruments of restraint, such as handcuffs, irons, and straight jackets, are never applied as punishment and are applied only with the approval of the warden/superintendent or designee [4-4190].

*Adult Correctional Institutions:* Written policy, procedure and practice, in general, prohibit the use of restraints on female offenders during active labor and the delivery of a child. Any deviation from the prohibition requires approval by, and guidance on, methodology from the medical authority and is based on documented serious security risks.  The medical authority provides guidance on the use of restraints on pregnant offenders prior to active labor and delivery [4-4190-1].

16-15 (d)

AG 3304

| TITLE: USE OF RESTRAINTS | | POLICY NUMBER 16-15 |
|---|---|---|
| EFFECTIVE DATE: 08-01-2011 | RESTRICTED | PAGE 2 of 2 |

38  *Adult Correctional Institutions:* (MANDATORY) Written policy, procedure, and practice
39  provide that when an offender is placed in a four/five-point restraint (arms, head, and
40  legs secured), advance approval must be obtained from the warden/superintendent or
41  designee. Subsequently, the health authority or designee must be notified to assess the
42  inmate's medical and mental health condition, and to advise whether, on the basis of
43  serious danger to self or others, the inmate should be placed in a medical/mental health
44  unit for emergency involuntary treatment with sedation and/or other medical
45  management, as appropriate. If the offender is not transferred to a medical/mental health
46  unit and is restrained in a four/five point position, the following minimum procedures will
47  be followed:
48
49  1. Direct visual observation by staff must be continuous prior to obtaining approval
50     from the health authority or designee;
51  2. Subsequent visual observation must be made at least every fifteen minutes; and,
52  3. Restraint procedures are in accordance with guidelines endorsed by the designated
53     health authority [4-4191].
54
55  The Deputy Commissioner of Institutions and the Deputy Commissioner of Community
56  Corrections or designees will develop procedures for the use of restraints. Procedures will
57  include the following:
58
59  • Type of restraints
60  • Reason for use of restraints
61  • Approval for use of restraints
62  • Notification of Institutional Medical Director
63  • Restraint logging and reporting procedures
64
65  **DOCUMENTS REQUIRED:**
66
67  As required by this policy and through the chain of command.

| ENFORCEMENT AUTHORITY | | |
|---|---|---|
| All standard operating procedures (SOPs) and/or other directive documents related to the implementation and enforcement of this policy will bear the signature of and be issued under the authority of the Deputy Commissioner of Institutions and the Deputy Commissioner of Community Corrections. | | |
| **Reviewed and Approved for Issuance** | General Counsel          7/19/20 11 Date | |
| | Commissioner          07/21/11 Date | |

| MISSISSIPPI DEPARTMENT OF CORRECTIONS | POLICY NUMBER 16-23 |
|---|---|
| | AGENCY WIDE |
| USE OF OLEORESIN CAPSICUM SPRAY OR CHEMICAL AGENTS | INITIAL DATE 03-01-2001 |
| ACA STANDARDS: 4-4092 | EFFECTIVE DATE 12-01-2009 |
| STATUTES:            RESTRICTED | Page 1 of 2 |

1   **POLICY:**
2
3   It is the policy of the Mississippi Department of Corrections (MDOC) to certify staff to carry and
4   use agency approved chemical agents or Oleoresin Capsicum Spray.
5
6   **DEFINITIONS:**
7
8   Oleoresin Capsicum Spray (OC) - A spray or foam derived from Capsicum peppers and mixed
9   with essential oils, waxes and materials (commonly known as pepper spray or OC spray).
10
11  Chemical Agents - All types of tear gases that are currently approved and used.
12
13  Contamination - Making impure by contact with an OC product or chemical agent.
14
15  Decontamination - The process that is initiated after a person has been contaminated by OC
16  spray or a chemical agent.
17
18  Certification Course - A basic course of instruction that teaches the proper methods of
19  contamination and decontamination of OC spray or chemical agents.
20
21  **PRECEPTS:**
22
23  *American Correctional Institutions:*   (MANDATORY) All personnel authorized to use
24  chemical agents receive thorough training in their use and in the treatment of individuals
25  exposed to a chemical agent [4-4092].
26
27  The Deputy Commissioner of Institutions and the Deputy Commissioner of Community
28  Corrections or designees will develop procedures to certify staff in the proper use of OC and
29  chemical agents to include:
30
31  • Training and certification
32  • Employment of OC spray or chemical agents
33  • Prohibited use of OC spray and chemical agents
34  • Medical attention/treatment
35  • Notification of accidental discharge
36
37  Procedures will be developed by the appropriate Deputy Commissioner or their designee for
38  decontamination procedures and medical treatment as required or requested.

| USE OF OLEORESIN CAPSICUM SPRAY OR CHEMICAL AGENTS | | POLICY NUMBER 16-23 |
|---|---|---|
| EFFECTIVE DATE: 12-01-2009 | RESTRICTED | Page 2 of 2 |

39    **DOCUMENTS REQUIRED:**
40
41    As required by this policy and through the chain of command.

| ENFORCEMENT AUTHORITY |
|---|
| All standard operating procedures (SOPs) and/or other directive documents related to the implementation and enforcement of this policy will bear the signature of and be issued under the authority of the Deputy Commissioner of Institutions and the Deputy Commissioner of Community Corrections. |

| **Reviewed and Approved for Issuance** | | 11-16-2009 |
|---|---|---|
| | General Counsel | Date |
| | | 11/17/09 |
| | Commissioner | Date |

16-23-01 (b)
Forms

AG 3332

| | MISSISSIPPI DEPARTMENT OF CORRECTIONS | POLICY NUMBER 16-23 |
|---|---|---|
| | | AGENCY WIDE |
| USE OF OLEORESIN CAPSICUM SPRAY OR CHEMICAL AGENTS | | INITIAL DATE 03-01-2001 |
| ACA STANDARDS:  4-4092 | | EFFECTIVE DATE 11-01-2012 |
| STATUTES: | RESTRICTED | PAGE 1 of 2 |

1  **POLICY:**
2
3  It is the policy of the Mississippi Department of Corrections (MDOC) to certify staff to carry and
4  use agency approved chemical agents or Oleoresin Capsicum Spray.
5
6  **DEFINITIONS:**
7
8  Oleoresin Capsicum Spray (OC) – A spray or foam derived from Capsicum peppers and mixed
9  with essential oils, waxes and materials (commonly known as pepper spray or OC spray).
10
11  Chemical Agents – All types of tear gases that are currently approved and used.
12
13  Contamination – Making impure by contact with an OC product or chemical agent.
14
15  Decontamination – The process that is initiated after a person has been contaminated by OC
16  spray or a chemical agent.
17
18  Certification Course – A basic course of instruction that teaches the proper methods of
19  contamination and decontamination of OC spray or chemical agents.
20
21  Contraindications – To state something to be inadvisable while taking particular medication
22  because of a likely adverse reaction, or a factor that serves as a reason to withhold a certain
23  medical treatment.
24
25  Material Safety Data Sheets (MSDS) – An important component of product stewardship and
26  workplace safety. It is intended to provide workers and emergency personnel with procedures
27  for handling or working with that substance in a safe manner, and includes information such as
28  physical data (melting point, boiling point, flash point, etc.), toxicity, health effects, first aid,
29  reactivity, storage, disposal, protective equipment, and spill-handling procedures. MSDS
30  formats can vary from source to source within a country depending on national requirements.
31
32  **PRECEPTS:**
33
34  *Adult Correctional Institutions:*  (MANDATORY) All personnel authorized to use chemical
35  agents receive thorough training in their use and in the treatment of individuals exposed
36  to a chemical agent [4-4092].
37
38  The Deputy Commissioner of Institutions and the Deputy Commissioner of Community
39  Corrections or designees will develop procedures to certify staff in the proper use of OC and
40  chemical agents to include:

16-23 (c)

AG 3333

| TITLE:  USE OF OLEORESIN CAPSICUM SPRAY OR CHEMICAL AGENTS | | POLICY NUMBER 16-23 |
|---|---|---|
| EFFECTIVE DATE:  11-01-2012 | RESTRICTED | PAGE 2 of 2 |

41   • Training and certification
42   • Employment of OC spray or chemical agents
43   • Prohibited use of OC spray and chemical agents
44   • Medical attention/treatment
45   • Notification of accidental discharge
46
47   Procedures will be developed by the appropriate Deputy Commissioner or their designee for
48   decontamination procedures and medical treatment as required or requested.
49
50   **DOCUMENTS REQUIRED:**
51
52   As required by this policy and through the chain of command.

---

**ENFORCEMENT AUTHORITY**

All standard operating procedures (SOPs) and/or other directive documents related to the implementation and enforcement of this policy will bear the signature of and be issued under the authority of the Deputy Commissioner of Institutions and the Deputy Commissioner of Community Corrections.

| **Reviewed and Approved for Issuance** | _signature_ | 10/23/2012 |
|---|---|---|
| | General Counsel | Date |
| | _signature_ | 10/24/12 |
| | Commissioner | Date |

16-23 (c)

AG 3334

| ![MDOC Seal] MISSISSIPPI DEPARTMENT OF CORRECTIONS | SOP NUMBER 16-11-01 |
|---|---|
| | AGENCY WIDE |
| SECURITY EQUIPMENT | INITIAL DATE 12-01-2001 |
| ACA STANDARDS: 4-CO-3A-01, 4-4173, 4-4199 thru 4-4202 | EFFECTIVE DATE 08-01-2011 |
| STATUTES:          RESTRICTED | PAGE 1 of 5 |

1   **APPLICABILITY:**
2
3   This procedure applies to all employees of the Mississippi Department of Corrections (MDOC)
4   who use security equipment.
5
6   **POLICY STATEMENT:**
7
8   It is the policy of the Mississippi Department of Corrections to govern the accountability,
9   availability, control and use of security equipment.
10
11  **DEFINITIONS:**
12
13  MDOC Security Equipment – Any control-related equipment approved by the Commissioner for
14  use by MDOC staff to ensure the safety of the public, staff and offenders.
15
16  Emergency Response Team (ERT) – A team of specially trained MDOC employees capable of
17  handling situations that threaten security or the safety of staff, offenders, or the public.
18
19  Armory/ERT Supply Room – A vault-type room or building used to store firearms and other
20  security equipment that must be isolated from the offender population and protected from
21  pilferage.
22
23  Corrections Investigation Division Supply Room – A vault-type room or building used to store
24  firearms, security equipment and confiscated evidence.
25
26  Satellite Armories – Those facility posts apart from the main armory that are authorized by the
27  Facility's Controlling Authority to store and use security equipment.
28
29  Ordinance Officer – An employee assigned the responsibility for operating and controlling the
30  armories.
31
32  ERT Supply Officer – An employee assigned the responsibility for operating and controlling
33  Armory/ ERT Supply Rooms.
34
35  **PROCEDURES:**
36
37  *Administration of Correctional Agencies* (Central Office): **There are written agency policies**
38  **that cover, at a minimum, the following:**
39
40  • **security**
41  • **correctional officer assignments**
42  • **patrol and inspection**
43  • **use of restraints**

| TITLE: SECURITY EQUIPMENT | | SOP NUMBER 16-11-01 |
|---|---|---|
| EFFECTIVE DATE: 08-01-2011 | RESTRICTED | PAGE 2 of 5 |

44   • security equipment
45   • control center operation
46   • permanent log maintenance
47   • count procedures
48   • contraband control [2-CO-3A-01].
49
50   *Adult Correctional Institutions:* Written policy and procedure govern the availability,
51   control, and use of chemical agents, electrical disablers, and related security devices
52   and specify the level of authority required for their access and use. Chemical agents and
53   electrical disablers are used only with the authorization of the warden/superintendent or
54   designee [4-4199].
55
56   *Adult Correctional Institutions:* Firearms, chemical agents, and related security items are
57   stored in a secure but readily accessible depository outside of inmate housing and
58   activity areas [4-4173].
59
60   The Facility's Controlling Authority or designee will ensure:
61
62   • That firearms, chemical agents and related security devices are readily available to staff
63
64   • That the use of these devices will be authorized by the Facility's Controlling Authority or
65     designee and will be monitored
66
67   • That "satellite armories" are designated
68
69   • That security equipment will be used in accordance with MDOC policy and procedure, Use
70     of Force (16-13, 16-13-01)
71
72   The Ordinance Officer/ERT Supply Officer:
73
74   • Issue firearms, chemical agents and other related security equipment only to trained and
75     qualified personnel
76
77   • Inspect all equipment for suitability and serviceability
78
79   • Inventory all security equipment at least monthly to determine their condition and/or
80     expiration dates
81
82   • Forward a copy of all inventories to the Facility's Controlling Authority or designee at
83     facilities where offenders are located.
84
85   *Adult Correctional Institutions:* Written policy, procedure, and practice govern the
86   inventory, issuance and accountability of routine and emergency distributions of
87   security equipment [4-4200].

16-11-01 (e)
Forms

AG 4833

| TITLE: SECURITY EQUIPMENT | | SOP NUMBER 16-11-01 |
|---|---|---|
| EFFECTIVE DATE: 08-01-2011 | RESTRICTED | PAGE 3 of 5 |

88   The written record includes the following:
89
90   • Date
91   • Time
92   • Equipment issued
93   • Officer's name
94   • Date of return
95   • Time of return
96   • Issuer's name
97
98   All emergency distributions of security equipment will be reported in writing and forwarded to the
99   Facility's Controlling Authority or designees at facilities where offenders are located.
100
101  All emergency distributions of security equipment at Central Office will be reported in writing by
102  the CID Director and forwarded to the Commissioner.
103
104  Armory
105
106  *Adult Correctional Institutions:* Firearms, chemical agents, and related security equipment
107  are inventoried at least monthly to determine their condition and expiration dates [4-
108  4201].
109
110  The Facility's Ordinance Officer will be the site controlling authority of the facility's armory and
111  will be accountable for:
112
113  • Building security
114  • Ingress and egress (Facility's Controlling Authority personnel list)
115  • Inventory control
116  • Facility wide monthly inventory report to Superintendent or designee
117  • Inventory maintenance, repairs and modifications (factory specifications)
118  • Origination of security equipment requisitions
119  • Issuance procedures applicable to officers' security equipment
120  • Emergency issuance procedures (an institution's internal administrative protocol)
121  • Issuance of security equipment to Superintendent's "satellite armories"
122  • Monthly inventory of "satellite armories" forwarded to Superintendent or designee
123
124  Corrections Investigation Division (Central Office)
125
126  The Director of Corrections Investigation Division or designee will be the on-site controlling
127  authority of the Corrections Investigation Division's supply room and will be accountable for:
128
129  • Security of the Corrections Investigation Division Supply Room
130  • Ingress and egress in and out of Corrections Investigation Division Supply Room
131  • Inventory control
132  • Monthly inventory report to Commissioner or designee
133  • Inventory maintenance, repairs and modifications (factory specifications)

16-11-01 (e)
Forms

AG  4834

| TITLE:  SECURITY EQUIPMENT | | SOP NUMBER 16-11-01 |
|---|---|---|
| EFFECTIVE DATE:  08-01-2011 | RESTRICTED | PAGE 4 of 5 |

134 • Origination of security equipment requisitions
135 • Issuance procedures applicable to officers' security equipment
136 • Emergency issuance procedures as they relate to the use and control of weapons and
137   ammunition
138
139 Accountability for Satellite Armories
140
141 Inventory and security control of security equipment assigned to each satellite armory will be the
142 concurrent responsibility of that Area's Warden and Deputy Warden.
143
144 Each respective Warden and Deputy Warden will develop written internal management
145 procedures and controls specific to the unique circumstances that are applicable to that post.
146
147 A copy of these internal procedures will be forwarded to the facility's Ordinance Officer and
148 copied to the Facility's Controlling Authority or designee.
149
150 The Ordinance Officer will create a facility file consisting of all satellite armory procedures.
151
152 Acquisition Guidelines
153
154 In order to prevent unnecessary duplication specific to purchases, the Ordinance Officer will
155 originate all requisitions for firearms and security response/control equipment and supplies.
156
157 Department Heads seeking to purchase equipment will submit to the Ordinance Officer written
158 documentation justifying their request.
159
160 The Ordinance Officer will research all requests and will ascertain the necessity and the
161 advisability of the purchase based upon their knowledge and training.
162
163 When purchases are deemed necessary and approved, the Ordinance Officer will requisition the
164 equipment.
165
166 Requisitions will be submitted to the Facility's Controlling Authority for signature.
167
168 Upon receipt, security equipment will be placed on the Armory's inventory and issued in
169 accordance with this procedure and purchasing guidelines.
170
171 Firearms Discharge
172
173 Adult Correctional Institutions:  Written policy, procedure, and practice provide that written
174 reports are submitted to the warden/superintendent or designee no later than the
175 conclusion of the tour of duty when any of the following occur:
176
177 • discharge of a firearm or other weapon
178 • use of chemical agents to control inmates
179 • use of force to control inmates
180 • Inmate(s) remain in restraints at the end of the shift [4-4202].

16-11-01 (e)
Forms

AG 4835

| TITLE: SECURITY EQUIPMENT | | SOP NUMBER<br>16-11-01 |
|---|---|---|
| EFFECTIVE DATE: 08-01-2011 | RESTRICTED | PAGE 5 of 5 |

181 In accordance with MDOC Policy and applicable procedures, when a firearm is discharged, a
182 written report will be submitted through the chain of command no later than at the conclusion of
183 the tour of duty. This will include:
184
185 • Shots fired in the line of duty
186 • Accidental discharges
187 • Unauthorized discharge of a firearm
188 • Any other incident of a weapon being fired
189
190 Other pertinent documents (i.e., Rule Violation Report, Use of Force Report, Detention Notice,
191 and MDOC Extraordinary Occurrence Report) will accompany the report.
192
193 <u>Weaponry Usage (Other)</u>
194
195 Anytime chemical agents or any other forms of weaponry/restraints are used to control an
196 offender(s), all applicable reports specified within this procedure will be submitted to the
197 Facility's Controlling Authority or designee no later than at the conclusion of the tour of duty.
198
199 <u>**DOCUMENTS REQUIRED:**</u>
200
201 As required by this procedure and through the chain of command.

| ENFORCEMENT AUTHORITY | | |
|---|---|---|
| **Reviewed and Approved for Issuance** | Commissioner of Corrections | Date |

| | | |
|---|---|---|
| **MISSISSIPPI DEPARTMENT OF CORRECTIONS** | **SOP NUMBER** 16-12-01 | |
| | **AGENCY WIDE INSTITUTIONS** | |
| **USE OF FIREARMS** | **INITIAL DATE** 08-15-1998 | |
| **ACA STANDARDS: 4-4091, 4-4201, 4-4202, 4-4204, 4-4205** | **EFFECTIVE DATE** 08-01-2013 | |
| **STATUTES: 47-5-54, 47-7-9** | **RESTRICTED** | **PAGE 1 of 8** |

1 **APPLICABILITY:**
2
3 This procedure applies to all Mississippi Department of Corrections (MDOC) Institutional
4 employees, Regional and Private Prison employees.
5
6 **POLICY STATEMENT:**
7
8 It is the policy of the Mississippi Department of Corrections to appoint qualified staff to carry and
9 use authorized firearms as may be required in the performance of their official duties, and to
10 provide guidelines for the care and use of firearms.
11
12 **DEFINITIONS:**
13
14 Interview – The process of questions asked by law enforcement to a person arrested or
15 suspected to seek answers to a crime, or policy violation that could result in disciplinary action.
16
17 <u>Authorized Firearms</u> – Any weapon owned, issued or approved by the MDOC.
18
19 <u>Authorized Ammunition</u> – Any ammunition issued or approved for use by the MDOC
20 Commissioner.
21
22 <u>Firearm Qualified Staff</u> – An MDOC or contract employee who has successfully completed an
23 approved or MDOC prescribed training and meets the qualification requirements for a particular
24 authorized firearm.
25
26 <u>Firearms Trainer</u> – An MDOC or other qualified trainer who has successfully completed a
27 specialized firearms training for trainers course for certification.
28
29 <u>Rangemaster</u> – A certified firearms trainer who manages a weapons range complex in addition
30 to coordinating weapon related training events.
31
32 <u>Holster</u> – All holsters must be approved by MDOC and at a minimum consist of a level two
33 retention device.
34
35 **PROCEDURES:**
36
37 *Adult Correctional Institutions:* **(MANDATORY)** Written policy and procedure govern the use
38 **of firearms, including the following:**
39
40 • **Weapons are subject to stringent safety regulations and inspections.**

| TITLE: USE OF FIREARMS | | SOP NUMBER 16-12-01 |
|---|---|---|
| EFFECTIVE DATE: 08-01-2013 | RESTRICTED | PAGE 2 of 8 |

41  • **Except in emergency situations, employees carrying firearms are assigned only to**
42  **watchtowers, gunwalks, mobile patrols, or other positions that are inaccessible to**
43  **inmates.**
44  • **Employees supervising inmates outside the institution's perimeter follow specific**
45  **procedures for ensuring the security of weapons.**
46  • **Employees are instructed to use deadly force only after other actions have been tried**
47  **and found ineffective, unless the employee believes that a person's life is**
48  **immediately threatened [4-4204].**
49
50  Firearms Selection
51
52  The Commissioner will approve the selection of authorized firearms and ammunition.
53
54  Authorization will be based in part on information provided by a Firearm Advisory Committee.
55  The committee will consist minimally of the following persons:
56
57  • Deputy Commissioner of Institutions or designee
58  • Firearms Instructor – Institutions
59  • Firearms Instructor – Community Corrections
60  • Purchasing Employee
61  • MDOC Compliance Officer
62  • Regional and/or Private Facility Warden as appointed by the Commissioner
63
64  The committee will meet semi-annually or as needed to:
65
66  • Review weapons and ammunition purchase requests.
67
68  • Review research and current trends as well as technical advancements in weapons and
69  ammunition.
70
71  • Survey the types of weapons and calibers used by other state agencies and keep MDOC
72  compatible with other state agencies.
73
74  No weapons or ammunition will be purchased or acquired by any MDOC or contract facility
75  without the approval of the Firearm Advisory Committee, the Deputy Commissioner of
76  Institutions and the Commissioner.
77
78  Any exception, addition or deletion to the agency approved weapons and ammunition list
79  requires completion of the request form and approval form from the chain of command.
80
81  Modification of MDOC Issued or Approved Firearms
82
83  MDOC issued or approved firearms will not be modified or altered in any material way without
84  the prior approval of the Deputy Commissioner of Institutions or Commissioner.
85
86  A modification takes place when any addition or deletion of any part of the firearm is made to or
87  upon the firearm that changes it from the manufacturer's stock specifications or from
88  specifications present at the time of issue.

16-12-01 (e)
Forms

AG 4846

| TITLE: USE OF FIREARMS | | SOP NUMBER 16-12-01 |
|---|---|---|
| EFFECTIVE DATE: 08-01-2013 | RESTRICTED | PAGE 3 of 8 |

89   Firearms Qualification/Re-Qualification
90
91   *Adult Correctional Institutions:* **(MANDATORY) Written policy, procedure, and practice**
92   **provide that all personnel authorized to use firearms receive appropriate training before**
93   **being assigned to a post involving the possible use of such weapons. Firearms training**
94   **covers the use, safety, and care of firearms and the constraints on their use. All**
95   **personnel authorized to use firearms must demonstrate competency in their use at least**
96   **annually [4-4091].**
97
98   The Facility's Controlling Authority or designee will ensure an adequate number of staff in each
99   area and on each shift, is qualified with lethal and less than lethal weapons.
100
101   All Correctional Commanders and Correctional Supervisors who exert control or custody over
102   offenders will acquire and maintain weapons qualification.
103
104   Successful completion of the firearms course is a condition of employment for being hired or
105   promoted to the position of Correctional Commander or Correctional Supervisor.
106
107   Only those persons meeting the minimum standards for marksmanship and safety will be
108   certified as qualified for those positions and/or issued weapons.
109
110   At a minimum, anyone qualified to carry firearms must be certified annually on that particular
111   weapon. Staff who do not re-qualify within the calendar year are immediately prohibited from
112   carrying a firearm.
113
114   Staff who cannot participate in firearm re-qualification because of a temporary physical condition
115   will not carry a firearm until the disability is removed and re-qualification is completed.
116
117   A staff member unable to re-qualify during one of the allotted times for re-qualification must
118   attend a Firearms Training Course approved by the Deputy Commissioner of Institutions before
119   attempting re-qualification again.
120
121   The Deputy Commissioner of Institutions has discretion in specifying the type of training
122   conducted based on the staff member's past training and firearm performance during range
123   exercises.
124
125   *Adult Correctional Institutions:* **Firearms, chemical agents, and related security equipment**
126   **are inventoried at least monthly to determine their condition and expiration dates [4-**
127   **4201].**
128
129   Weapons will be inspected monthly by supervisors for general maintenance, cleanliness, and
130   safety.
131
132   Each weapon will be inspected for safety and function by the Institutional or Certified Armorer at
133   least once a year or as needed.

| TITLE: USE OF FIREARMS | | SOP NUMBER 16-12-01 |
|---|---|---|
| EFFECTIVE DATE: 08-01-2013 | RESTRICTED | PAGE 4 of 8 |

134 <u>Privately Owned Weapons</u>

136 No privately owned weapon will be utilized in the course of official MDOC duties.

138 <u>Training Standards</u>

140 <u>Handgun</u>

142 Anyone authorized to carry a handgun must first complete an approved training course and
143 meet minimum standards or provide proof of qualification on a NRA approved range within the
144 last twelve (12) months. The course of instruction will consist of:

146 • Use of Force
147 • Firearms Safety on the Job
148 • Firearms Safety Off Duty
149 • Basic Marksmanship Skills
150 • Handgun Retention
151 • General Maintenance
152 • Security of the Weapon

154 <u>Mini-14 Rifle</u>

156 All uniformed staff must pass the minimum qualification for rifle as a condition for employment.
157 The course of instruction will consist of:

159 • Use of Force
160 • Firearms Safety
161 • Basic Marksmanship
162 • Security of the Weapon

164 <u>12 Gauge Shotgun</u>

166 Persons assigned to a post requiring the use of a 12 gauge shotgun must first pass the
167 minimum standards for that weapon. The course of instruction will consist of:

169 • Use of Force
170 • Firearms Safety
171 • Basic Marksmanship
172 • Security of the Weapon

174 <u>Less Than Lethal Weapons</u>

176 Persons authorized to use Less than Lethal Weapons must demonstrate proficiency with the
177 weapon and munitions. The course of instruction will consist of:

179 • Use of Force
180 • Firearms Safety

| TITLE: USE OF FIREARMS | | SOP NUMBER<br>16-12-01 |
|---|---|---|
| EFFECTIVE DATE: 08-01-2013 | RESTRICTED | PAGE 5 of 8 |

181    •   Basic Marksmanship
182    •   Security of the Weapon
183
184   All firearms instruction will emphasize that deadly force is used only as a last resort after other
185   actions have failed or when a person's life is immediately threatened.
186
187   Following successful completion of a firearms course, each employee will be issued a weapons
188   qualification card by the appropriate training authority.
189
190   Staff will carry the qualification card at all times while on duty, and may not have a firearm in
191   their possession without the qualification card.
192
193   Utilization of Weapons
194
195   Firearms, under this procedure, are authorized to be carried in the performance of the official
196   duties of authorized staff.
197
198   Except in an emergency situation, institutional staff carrying firearms are assigned only to
199   watchtowers, gun walks, mobile patrols, or other positions that are inaccessible to offenders.
200
201   In all instances, only the amount of force necessary to maintain or gain control of a situation will
202   be used.  When practical, alternate methods of control will always be used in lieu of the use of
203   firearms.  Deadly force is justified to prevent an escape, when there is an immediate threat of
204   death or serious bodily harm to the public, officer, staff, or offenders, and a lesser use of force
205   level would not eliminate the threat or prevent escape.
206
207   Employees are instructed to use deadly force only after other actions have been tried and found
208   ineffective, unless the employee believes that a person's life is immediately threatened.
209
210   Institutional armed personnel will maintain a constant state of awareness and take every
211   precaution to prevent being disarmed by an offender.
212
213   **When interviews are conducted in a secure location, MDOC Issued Weapons will not be**
214   **worn nor located in the room where the interview is being conducted.  Weapons will be**
215   **secured in a designated location.**
216
217   Carrying of Firearms
218
219   When carrying handguns, recognized conventional holsters will be used that afford protection to
220   the weapon's hammer and trigger guard and have a retention strap or tension grasp that
221   prevents accidental dislodging.
222
223   Firearms will not be left unattended in vehicles or offices while on Department of Corrections
224   business or on institutional grounds.
225
226   If an MDOC issued weapon must be stored in a vehicle, the weapon will be stored in the trunk, if
227   available; however, if the trunk is not available the weapon will be stored out of plain view

16-12-01 (e)
Forms

| TITLE:  USE OF FIREARMS | | SOP NUMBER 16-12-01 |
|---|---|---|
| EFFECTIVE DATE:  08-01-2013 | RESTRICTED | PAGE  6 of 8 |

228  Firearms will not be carried inside offender housing or activity areas unless authorized by the
229  Commissioner, Deputy Commissioner of Institutions, or Superintendent.
230
231  Control of Firearms at Institutional Armed Posts
232
233  Firearms and ammunition will be stored only in posts that are manned at all times.  When an
234  armed post is not manned, the firearms and ammunition will be removed by the last officer on
235  duty and taken to the Institutional Armory or post which is manned.
236
237  A daily weapon control log will be maintained on all armed posts. Every officer assuming duty at
238  that post will inventory and inspect the firearms and ammunition.
239
240  Personnel on an armed post will take every precaution to prevent offender takeover of the post
241  or offender access to the firearms and ammunition.
242
243  Firearms in armed posts will have their magazines fully loaded, but their chambers empty.
244
245  Control of Firearms Outside the Institutional Perimeter
246
247  If it is necessary to place offenders on an outside work assignment where an armed escort is
248  required, the offenders will be located no closer than 25 feet to the armed officer.  Distance from
249  the officer will not exceed 50 yards.
250
251  Transportation of Firearms and Ammunition on Institutional Grounds
252
253  When firearms are transported on institutional grounds and are not in actual use, they will be
254  unloaded as a precaution against discharge and in the case of seizure by offenders.
255
256  When firearms and ammunition must be transported inside an offender housing or activity area,
257  each will be transported separately.
258
259  Loading and Reloading of Firearms
260
261  *Adult Correctional Institutions:*  **(MANDATORY) Written policy, procedure, and practice**
262  **provide for the safe unloading and reloading of firearms [4-4205].**
263
264  All weapons will be unloaded in a designated area prior to being secured.
265
266  Weapons can not be stored while loaded.
267
268  Revolvers will be unloaded by opening the cylinder and pointing the muzzle in the air.  Shells
269  should be emptied in the opposite hand.  Weapons should be stored with the cylinder open
270  unless it is locked in the armory.
271
272  Semi-automatic weapons will be pointed toward soft ground at a 45 degree angle, the magazine
273  released and removed, and the slide locked open.  Weapons should be stored with the
274  magazine out and the slide locked back.

AG  4850

| TITLE:  USE OF FIREARMS | | SOP NUMBER<br>16-12-01 |
|---|---|---|
| EFFECTIVE DATE:  08-01-2013 | RESTRICTED | PAGE  7 of 8 |

275  Rifles, shotguns and other long barreled weapons will be unloaded while pointed toward soft
276  ground at a 45 degree angle or into an unloading chamber.  The magazine will be reloaded and
277  removed and the operating rod handle or bolt handle operated several times and then locked
278  open.
279
280  Pump shotguns will be cycled until empty and left with the action open.
281
282  Weapons will be loaded upon removal from storage.  Loading will be done in a designated safe
283  area.
284  Handguns will be loaded to capacity.   Double action semi-automatics will have one round
285  chambered.
286
287  Revolvers will be loaded to capacity.
288
289  Shotguns, rifles, and semi-automatic rifles will not have a round loaded in the chamber and are
290  to be carried with the barrel empty.
291
292  Discharge of a Weapon
293
294  *Adult Correctional Institutions:*  **Written policy, procedure, and practice provide that written**
295  **reports are submitted to the warden/superintendent or designee no later than the**
296  **conclusion of the tour of duty when any of the following occur:**
297
298  • **Discharge of a firearm**
299  • **Use of chemical agents to control inmates**
300  • **Use of force to control inmates**
301  • **Inmate(s) remain in restraints at the end of the shift [4-4202].**
302
303  Whenever a staff member discharges his firearm, either accidentally or officially (except when
304  on an approved range undergoing firing exercise/training), that person will expeditiously notify
305  the immediate supervisor of the incident via the fastest means possible and follow such
306  notification with a detailed written report.
307
308  The supervisor will immediately notify his supervisor who will, following the chain of command,
309  ensure that the Deputy Commissioner of Institutions is notified.
310
311  A copy of this notification will also be forwarded to the MDOC Director of Corrections
312  Investigation Division.  The Deputy Commissioner of Institutions will, if practical, inform the
313  Commissioner with respect to the seriousness of the incident.
314
315  Injury or Death Resulting from Discharge of a Weapon
316
317  In the event of injury or death resulting from such discharge, the staff member will immediately
318  notify his immediate supervisor, who in turn will notify the local law enforcement agency having
319  area jurisdiction.
320
321  The supervisor, following the chain of command, will notify the Deputy Commissioner of
322  Institutions.

16-12-01 (e)
Forms

| TITLE: USE OF FIREARMS | | SOP NUMBER<br>16-12-01 |
|---|---|---|
| EFFECTIVE DATE: 08-01-2013 | RESTRICTED | PAGE 8 of 8 |

323 The Deputy Commissioner of Institutions will immediately notify the Commissioner of
324 Corrections, who will in turn cause other pertinent staff members to be notified as deemed
325 necessary.
326
327 The Commissioner will initiate an impartial investigation of the incident via personal
328 administrative investigatory staff.
329
330 **DOCUMENTS REQUIRED:**
331
332 Agency Approved Weapons, Ammunition and Chemical Agents List
333 Daily Weapon Control Log
334 Exception Form
335 Addition/Deletion Request Form
336 As required by this procedure and through the chain of command.

| | ENFORCEMENT AUTHORITY | | |
|---|---|---|---|
| **Reviewed and Approved for Issuance** | _(signature)_ | Deputy Commissioner of Institutions | 7/17/13<br>Date |
| | _(signature)_ | Commissioner | 07/19/13<br>Date |

16-12-01 (e)
Forms

AG 4852

| | MISSISSIPPI DEPARTMENT OF CORRECTIONS | SOP NUMBER 16-13-01 |
|---|---|---|
| | | AGENCY WIDE |
| | USE OF FORCE | INITIAL DATE 12-01-1987 |
| ACA STANDARDS:  4-4202, 4-4203, 4-4206, 4-ACRS-2B-01, 4-ACRS-2B-02, 4-ACRS-2B-03, 4-APPFS-3G-01, 4-APPFS-3G-02 | | EFFECTIVE DATE 08-01-2013 |
| STATUTES: | RESTRICTED | PAGE 1 of 11 |

1  **APPLICABILITY:**
2
3  This procedure applies to all employees of the Mississippi Department of Corrections, and to
4  independent contractors providing a service to the Department, who work inside a correctional
5  institution and interact with offenders.
6
7  **POLICY STATEMENT:**
8
9  It is the policy of the Mississippi Department of Corrections (MDOC) to restrict the use of
10  physical force to instances of justifiable self-defense, protection of others, protection of property,
11  prevention of escapes, and to maintain or regain control, and then only as a last resort and in
12  accordance with appropriate statutory authority.
13
14  **DEFINITIONS:**
15
16  Force – The exertion or application of physical compulsion or constraint.
17
18  Officer Presence – Identification of authority and a show of force.
19
20  Verbal Intervention – Commands of direction to gain control or compliance of the offender.
21
22  Soft Empty Hand Control – Pressure points, joint locks that have minimal probability of injury.
23
24  Hard Empty Hand Control – Strikes, kicks that have a high probability of injury.
25
26  Soft Intermediate Weapon Control – May include Oleoresin Capsicum aerosol spray or chemical
27  control, impact weapon joint locks.
28
29  Hard Intermediate Weapon Control – Impact weapon strikes.
30
31  Weapons – Firearms, batons, and chemical agents which are approved and issued by the
32  agency.
33
34  Deadly Force – Any force that carries a substantial risk that will likely result in the death of any
35  person.  Examples of deadly force include but are not limited to, the following:
36
37  • Discharging a firearm in the immediate vicinity of or directed toward another person
38  • Striking another person on the head with an hard impact weapon
39  • Applying force or weight to the throat or neck of another
40
41  Less-Than-Deadly Force – Any force which could not reasonably be expected to result in the
42  death of the person against whom it is directed.

16-13-01 (g)
Forms

AG 4856

| TITLE:  USE OF FORCE | | SOP NUMBER 16-13-01 |
|---|---|---|
| EFFECTIVE DATE:  08-01-2013 | RESTRICTED | PAGE 2 of 11 |

43  Excessive Force – An application of force which, either by the type of force employed, or the
44  extent to which such force is employed, exceeds that force which reasonably appears to be
45  necessary under all the circumstances surrounding the incident.

47  Minimum Amount of Force – The least amount of force necessary to overcome the resistance
48  offered.

50  Spontaneous Use of Force – A use of force employed as an immediate response to a specific
51  act.

53  Planned Use of Force – Any use of force where staff can prepare for the use of force.

55  Enforcement Necessity – To gain compliance with order and/or regulations when enforcement is
56  immediately necessary to preserve safety and security of institution.

58  **PROCEDURES:**

60  **GENERAL**

62  Use of Force Training

64  All persons who may be expected to use force in the course of their duties will be properly
65  trained in the use of force (Reference 04-03-01, Use of Force Training).  Training will be
66  mandatory and offered in the:

68  • Training Academy
69  • Quarterly In-Service
70  • Annual Refresher.

72  The Mississippi Department of Corrections Training Department will be responsible for the Use
73  of Force Training Curriculum.

75  *Adult Correctional Institutions:*  **(MANDATORY)  Written policy, procedure, and practice
76  restrict the use of physical force to instances of justifiable self-defense, protection of
77  others, protection of property, prevention of escapes, and to maintain or regain control,
78  and then only as a last resort and in accordance with appropriate statutory authority.  In
79  no event is physical force justifiable as punishment.  A written report is prepared
80  following all uses of force and is submitted to administrative staff for review [4-4206].**

82  *Adult Probation and Parole Field Services*:  **Physical force is used only in instances of
83  justifiable self-defense, protection of others, and in accordance with appropriate
84  statutory authority.  Only reasonable and necessary force is employed [4-APPFS-3G-01].**

86  Force may be authorized, but not limited to, the following instances:

88  • To protect staff, the public and offenders
89  • To prevent escape
90  • To prevent the destruction of state property

| TITLE: USE OF FORCE | | SOP NUMBER 16-13-01 |
|---|---|---|
| EFFECTIVE DATE: 08-01-2013 | RESTRICTED | PAGE 3 of 11 |

91  • In instances of justifiable self-defense
92  • To prevent the commission of a felony or misdemeanor
93  • To prevent or quell a riot
94  • Enforcement necessity
95
96  However, each employee is responsible for using only the minimum amount of force necessary
97  to control the situation. It must be recognized that situations requiring the use of force can
98  develop quickly and thus change the level of response that is appropriate. Circumstances
99  presented by the offender involved in the use of force situation must be considered. Other
100 factors should also be taken into account before deciding how much and what kind of force, if
101 any, is to be used in any specific situation. Some of these factors include, but are not limited to:
102
103 1. **Surroundings** – An awareness of your surroundings when using force which may endanger
104    others, such as chemical agents or firearms, to minimize the threat to other people.
105
106 2. **Bystanders** – Any person in the immediate vicinity that would or could be adversely
107    affected by the amount and type of force used.
108
109 3. **Safety & effectiveness** – As employees of the department, we have a duty to protect
110    offenders, staff and third persons, but there is no requirement to needlessly sacrifice one's
111    own personal safety in doing so.
112
113    a. Whenever possible, an employee will summon assistance before becoming involved in a
114       use of force. If an employee cannot effectively intervene in a situation, the employee is
115       expected to continue to be observant of as many circumstances of the situation as
116       possible to be reported later.
117
118    b. An employee must balance his or her ability to be effective versus the risk to personal
119       safety. However, employees are <u>always</u> expected to respond in the event of an attack
120       on another person who needs assistance.
121
122 4. **Communications, warnings and the opportunity to avoid planned force** – Whenever it
123    is possible and safe to do so, staff will:
124
125    a. Attempt to communicate and verbally intervene in an effort to avoid using force;
126    b. Warn the offender that planned force may be utilized to resolve the situation, and
127    c. Allow the offender a final opportunity to comply with the order prior to the
128       commencement of planned force.
129
130 5. **The risk of harm presented by the offender** – The employee must evaluate the
131    circumstances and surroundings, and determine the level of threat to self, others and the
132    security of the institution. The employee should weigh the following factors when
133    determining the appropriate response:
134    a. The threat posed must indicate imminent harm if force is not used.
135    b. The offender must have the opportunity and ability to carry out the threat.
136    c. The staff member must perceive himself or another to be in jeopardy.
137    d. The employee must evaluate what level of force is necessary to effectively control the
138       situation and the availability of alternatives. A greater potential of harm justifies a
139       greater level of force.

16-13-01 (g)
Forms

AG 4858

| TITLE: USE OF FORCE | | SOP NUMBER 16-13-01 |
|---|---|---|
| EFFECTIVE DATE: 08-01-2013 | RESTRICTED | PAGE 4 of 11 |

    e. The use of force is necessary to control an offender who refuses to obey institutional rules, regulations or orders.

6. **Staff Availability** – Whenever it is necessary to use force, it is ideal to have enough staff to safely control the situation. The staff person who is confronted with a situation must consider the availability and nearness of other staff, and whether the situation can wait for other staff before responding. The ability to utilize planned force should always be considered when assessing the need to use force. Planned force is a preferred tactic unless the necessary delay in responding will jeopardize the security of the institution or the safety of any person.

**Force will only be utilized when and to the degree necessary to subdue an individual offender or restore order to a disruptive group of offenders. Force should only be employed as a last resort and in no event is physical force justifiable as punishment.**

**Rule Violation Reports will be issued to offenders who are involved in a spontaneous or planned use of force.**

<u>Levels of Force</u>

Force should be employed only to the degree necessary to control the offender to a level that will be effective, with a minimum of harm to both staff and the offender. Staff may escalate to the appropriate level of force depending on the situation. Excessive force will not be tolerated and is not authorized.

**Level One – Show of Force/Verbal Intervention**

All Department personnel should use the appropriate dialogue for talking an individual into compliance with a lawful request to avoid a physical confrontation. In situations where all lesser avenues of persuasion have been applied and failed, then a show of force by the necessary staff may be exercised. This shows the offender that sufficient numbers of staff and resources are available to control the disruptive offender and staff is committed to using force.

**Level Two – Empty-Handed Control Techniques**

If a show of force/verbal intervention fails, empty-handed control techniques, to include escort techniques and pain compliance techniques may be used. Only staff trained in the use of empty-handed control techniques are authorized to use such force. If this level of force is unavailable to the officer, the officer may proceed to the next higher level of force.

Application of restraint holds will be employed with necessary force to control the offender. After the offender has been restrained, the application of appropriate restraint gear will be made. (Reference 16-15-01, Use of Restraints) The offender, after being restrained, may be removed from the area where restraint was used to a location that allows for better control.

**Level Three – Use of Chemical Agents**

Chemical agents may be used on an individual offender to prevent serious injury to the offender or others, to prevent substantial property damage, to prevent loss of life or to prevent escape.

16-13-01 (g)
Forms

AG 4859

| TITLE: USE OF FORCE | | SOP NUMBER 16-13-01 |
|---|---|---|
| EFFECTIVE DATE: 08-01-2013 | RESTRICTED | PAGE 5 of 11 |

189  Only staff trained/certified in the use of and treatment of individuals exposed to chemical agents
190  are authorized to use such chemical agents. Appropriate decontamination and medical
191  treatment by certified personnel will be provided to all individuals exposed to chemical agents.
192
193  When possible, the highest ranking official on duty at the facility will authorize the use of
194  chemical agents.
195
196  In cases where an immediate decision must be exercised, the properly trained staff may use
197  chemical agents to control the offender (Reference 16-23-01, Use of Oleoresin Capsicum or
198  Chemical Agents).
199
200  **Level Four – Hard Intermediate Weapon Control**
201
202  Any MDOC approved impact weapon may be used to control or contain any situation deemed
203  appropriate and necessary to maintain control, prevent harm to persons, prevent substantial
204  damage to state property, or prevent escape.  An approved impact weapon may be used to
205  separate brawling offenders or to quell violence.
206
207  More potentially harmful weapons may be used only after all lesser degrees of force have been
208  tried and/or given due deliberate consideration.
209
210  The highest ranking official on duty at the facility will authorize the use of impact weapons.
211
212  In all situations involving the use of a specific weapon, only properly trained staff is authorized to
213  use such a weapon.
214
215  **Level Five – Use of Deadly Force**
216
217  Officers are authorized to use only such force necessary, including deadly force, whenever
218  circumstances exist where the use of force is the only reasonable alternative as in the following
219  instances:
220
221  • Protect the officer or others from what is reasonably believed to be an immediate threat of
222    death or serious bodily harm.
223
224  • Prevent the escape from an institution, of a fleeing inmate whom the officer has probable
225    cause to believe will pose a significant threat to human life should escape occur (Reference
226    16-13-02, Use of Force to Prevent Escape - Institutions).
227
228  • When attempting to recapture a suspect who has escaped, the officer has probable cause to
229    believe that if the apprehension were delayed, there would be an immediate threat of death
230    or serious bodily harm to the public.
231
232  Deadly force may not be used against a suspect simply because of the crime the suspect
233  committed; rather, deadly force is justified to prevent escape when there is an immediate threat
234  of death or serious bodily harm to the public, officer, staff, or offenders, and a lesser use of force
235  level would not eliminate the threat to prevent the escape.

| TITLE:  USE OF FORCE | | SOP NUMBER 16-13-01 |
|---|---|---|
| EFFECTIVE DATE:  08-01-2013 | RESTRICTED | PAGE 6 of 11 |

236  Suspicion and/or flight alone is an insufficient basis for shooting a suspect; therefore, when
237  there is a doubt, the value of human life outweighs the importance of immediate apprehension.
238
239  <u>Planned Use of Force</u>
240
241  To gain the offender's voluntary cooperation, verbal intervention will be used in an attempt to
242  bring the offender into compliance.
243
244  If the offender does not comply and the circumstances permit, staff involved in the incident will
245  notify the Shift Supervisor/Commander of the incident.
246
247  A show of force/verbal intervention will be used prior to any planned use of force.  A show of
248  force is the demonstration to the offender that sufficient numbers of staff and resources are
249  available to subdue the disruptive offender.
250
251  A show of force will not be made without sufficient staff or equipment to control the situation and
252  a commitment to use that force.
253
254  Upon notification of the incident, the Shift Supervisor/Commander will notify the Facility's
255  Controlling Authority that the offender is disruptive and not complying with staff's lawful orders.
256
257  The Shift Supervisor/Commander will advise the Facility's Controlling Authority that it is
258  probable that force will be needed to bring the offender into compliance.
259
260  The Shift Supervisor/Commander will intervene and verbally notify the offender that force will be
261  used to bring him to an acceptable level of compliance.
262
263  If the offender does not comply after the show of force/verbal intervention, the minimum amount
264  of force will be used to control the offender.
265
266  A planned use of force will be authorized by the highest ranking correctional staff on duty.
267
268  <u>Use of Force of Offenders with Severe Mental Health Illness</u>
269
270  Upon notification of the incident, the Shift Supervisor/Commander will notify the Facility's
271  Controlling Authority and Mental Health Staff that the offender is disruptive and not complying
272  with staff's lawful orders.
273
274  The Shift Supervisor/Commander will advise the Facility's Controlling Authority and Mental
275  Health staff that it is probable that force will be needed to bring the offender into compliance.
276
277  If a spontaneous use of force occurred, the Shift Supervisor/Commander will notify the Facility's
278  Controlling Authority and Mental Health staff immediately after the incident.
279
280  If appropriate, a planned use of force will not occur until mental health staff has had an
281  opportunity to determine if there are unique mental health problems which must be taken into
282  consideration when making the decision to use force.

| TITLE:  USE OF FORCE | | SOP NUMBER 16-13-01 |
|---|---|---|
| EFFECTIVE DATE:  08-01-2013 | RESTRICTED | PAGE 7 of 11 |

283  The Mental Health staff and security staff will be utilized to employ verbal intervention strategies
284  to gain voluntary compliance from the disruptive offender.
285
286  The offender will be verbally notified that force will be used to bring him to an acceptable level of
287  compliance.
288
289  If the offender does not comply after the show of force/verbal intervention, the minimum amount
290  of force will be used to control the offender.
291
292  A planned use of force will be authorized by the highest ranking correctional staff on duty.
293
294  Recording and Photographing the Use of Force
295
296  A video record will be made of any planned use of force incident.  Where appropriate, a
297  photographic record should be made after any type of use of force incident.
298
299  An adequate number of staff members will be trained on the use of video and photographic
300  equipment that will be used to record force incidents.  The Facility's Controlling Authority will
301  ensure that the Shift Supervisor/Commander is made aware of who have been trained to use
302  the equipment.
303
304  The Facility's Controlling Authority will designate a staff member the responsibility of regularly
305  inspecting the equipment to ensure that it is always available, working properly, and that
306  batteries are charged to the maximum.
307
308  Staff involved in planned uses of force should identify themselves on the video record.
309
310  During the course of the incident, it is important to keep in mind the visual field being recorded.
311  It is recognized that force incidents are dynamic events that never occur in ideal locations or in
312  an ideal fashion for electronic record to be able to capture exactly what everyone is doing at all
313  times with an unwavering picture.  However, great attention needs to be paid by the respective
314  video camera operator to place him or herself in the best location possible to visually record the
315  incident, without interfering with the force incident itself.
316
317  A questionable video record of force incident may often raise more questions than it answers.
318  Examples are, but not limited to:
319
320  • The camera appears to swerve for no apparent reason away from the actual force being
321    applied.
322  • The camera is apparently unduly wavering on the visual field being captured.
323  • A narrow focus is unnecessarily used to only record a small part of the incident.
324  • The video record contains significant amounts of time when the camera is not focused on
325    anything involving the force incident.
326  • There appear to be gaps in the chronological events of the incident when the camera was
327    turned off, or placed in the "paused" mode.
328
329  The Shift Supervisor/Commander will ensure a video, photographic, or other visual record is
330  immediately made of any staff member(s) or offender(s) as a result of the use of force incident.

16-13-01 (g)
Forms

AG 4862

| TITLE:  USE OF FORCE | | SOP NUMBER 16-13-01 |
| --- | --- | --- |
| EFFECTIVE DATE:  08-01-2013 | RESTRICTED | PAGE 8 of 11 |

331 This should be done even if the force incident was not planned and the video recording device
332 and camera were not already being used.
333
334 Use of Force Follow-up
335
336 Medical Attention
337
338 *Adult Correctional Institutions:*   **(MANDATORY) Written policy, procedure, and practice**
339 **provide that all persons injured in an incident receive immediate medical examination**
340 **and treatment [4-4203].**
341
342 *Adult Community Residential Services:* **Persons injured in an incident immediately receive**
343 **a medical examination and treatment [4-ACRS-2B-02].**
344
345 Persons involved in all use of force incident(s) will immediately receive a medical examination
346 and treatment even when the person does not appear to be injured.   The person will be
347 evaluated by a qualified medical professional.   A written report of all medical examinations and
348 treatment received by any person injured will be forwarded through the chain of command.
349
350 Notification and Reporting
351
352 *Adult Correctional Institutions:* **Written policy, procedure, and practice provide that written**
353 **reports are submitted to the warden/superintendent or designee no later than the**
354 **conclusion of the tour of duty when any of the following occur:**
355
356 • **discharge of a firearm or other weapons**
357 • **use of chemical agents to control inmates**
358 • **use of force to control inmates**
359 • **inmate(s) remain in restraints at the end of the shift [4-4202].**
360
361 *Adult Community Residential Services:*   **(MANDATORY) A written report is prepared**
362 **following all uses of force and submitted to the facility administrator. The report details**
363 **all circumstances, list those involved, including witnesses, and describe all injuries and**
364 **medical services provided [4-ACRS-2B-01].**
365
366 *Adult Probation and Parole Field Services:* **All incidents involving use of physical force are**
367 **reported fully, promptly, and in writing to administrative staff for their information and**
368 **review. All injuries are treated promptly and reported in writing. [4-APPFS-3G-02].**
369
370 Each employee who is involved in or witness a use of force incident is required to complete a
371 written report following all uses of force and submit it to the facility administrator before the end
372 of their shift or work day.
373
374 Each employee involved in the incident will complete an Incident Report. The Use of Force
375 Report will be initiated by the Reporting Staff.  Each incident report prepared will include at a
376 minimum:
377
378 • The actions or outburst(s) by the offender that appeared threatening
379 • The observed reaction of the offender at the time of the use of force

16-13-01 (g)
Forms

| TITLE: USE OF FORCE | | SOP NUMBER 16-13-01 |
|---|---|---|
| EFFECTIVE DATE: 08-01-2013 | RESTRICTED | PAGE 9 of 11 |

380 • A description of any observable marks or injuries to the offender
381 • Factors considered in deciding whether or not to make a visual record of injuries
382 • Any complaints from the offender
383 • All circumstances surrounding the use of force incident
384
385 Staff in state, private, and regional facilities will generate all Use of Force Reports on
386 Offendertrak and forward through the chain of command. All Use of Force incident report
387 numbers will be entered in Offendertrak using the following format:
388
389 <u>Spontaneous Use of Force</u>
390
391 • Facility Acronym – SUOF –Year – number
392 • Example: MSP –SUOF- 08 – 0001
393
394 <u>Planned Use of Force</u>
395
396 • Facility Acronym – PUOF –Year – number
397 • Example: MSP –PUOF- 08 – 0001
398
399 The Use of Force report can be electronically generated on Offendertrak by typing in the
400 offender's DOC number and going to **Reports >>> Person Documents >>> Documents >>>**
401 **Use of Force Report**.
402
403 Field officers involved in use of force incidents will submit a report to their immediate supervisor.
404 The report will detail all circumstances, list those involved, including witnesses and describe all
405 injuries and medical services provided. All reports will be forwarded through the chain of
406 command.
407
408 All uses of force as referenced in this policy or restraints, other than the routine use of restraints,
409 will be fully documented immediately after the end of the incident (Reference 16-15-01, Use of
410 Restraints).
411
412 However, in the use of force levels 2, 3, 4, and 5, a Use of Force Report will be completed no
413 later than the conclusion of that shift.
414
415 Whenever an officer uses force levels 2, 3, 4, and 5, including an accidental weapon discharge,
416 he will expeditiously notify his immediate supervisor of the incident via the fastest means
417 possible.
418
419 The chain of command will be utilized to ensure that the Deputy Commissioner of Institutions
420 and the Deputy Commissioner of Community Corrections are notified. The Deputy
421 Commissioners will notify the Commissioner and the Director of Corrections Investigation
422 Division if deemed appropriate.
423
424 In the event an injury or death results from such use of force, local medical personnel will be
425 notified immediately followed by appropriate local law enforcement personnel. Officers on the
426 scene will ensure that the injured person receives appropriate medical attention.

| TITLE:  USE OF FORCE | | SOP NUMBER 16-13-01 |
|---|---|---|
| EFFECTIVE DATE:  08-01-2013 | RESTRICTED | PAGE 10 of 11 |

427  All staff will maintain the integrity of the scene to ensure possible evidence is preserved
428  (Reference 20-06-01, Searches & Preservation of Evidence).  All evidence found at the scene
429  will be collected and secured by staff, appropriate law enforcement personnel or Corrections
430  Investigation Division.
431
432  The officer involved in the incident will be taken to a location determined by Corrections
433  Investigation Division and appropriate debriefing will take place as determined by Corrections
434  Investigation Division and local law enforcement personnel.
435
436  After completion of debriefing, the officer may be taken to a facility as directed by the supervisor
437  and may be required to submit to a urine sample.
438
439  The officer then completes an Incident Report containing all events of the incident.  He may be
440  placed on administrative leave with pay pending the completion of the agency's investigation.
441
442  *Adult Community Residential Services:*  **Use of force incidents are investigated; findings are**
443  **aggregated and analyzed [4-ACRS-2B-03].**
444
445  <u>Administrative Review and Investigations</u>
446
447  1. Supervisor's Review -- The Use of Force Packet will be reviewed by the reporting staff
448     member's supervisor.  The supervisor will decide, after any necessary interviews, whether or
449     not a packet contains necessary information to evaluate the use of force incident.  Once the
450     information has been gathered and evaluated, the supervisor will send the packet to the
451     CCD/Warden/Superintendent for review.
452
453  2. CCD/Warden/Superintendent Review – The Use of Force Packet will be reviewed by the
454     CCD/Warden/Superintendent.  The CCD/Warden/Superintendent are required to refer the
455     Use of Force for investigation to CID if any of the following apply:
456
457     • It is apparent that MDOC policy and procedures were not followed;
458
459     • The factual circumstances are not described sufficiently to enable an evaluation of the
460       amount of force utilized;
461
462     • The incident involved serious physical injury to any person;
463
464     • The incident constituted a significant disruption to the normal operation of the
465       institution;
466
467     • Whenever the involved offender(s) claim abuse or excessive force and the medical
468       exam report reflects injuries consistent with the claim.
469
470  3. Compliance Officer Review – At private and regional facilities, the Use of Force Packet will
471     be reviewed by the assigned compliance officer.  The compliance officer will review all
472     pertinent information surrounding the Use of Force incident to include but not limited to
473     interviews and whether or not a packet contains necessary information to evaluate the use
474     of force incident.  Once the information has been gathered, reviewed and evaluated, the

| | SOP NUMBER |
|---|---|
| **TITLE: USE OF FORCE** | **16-13-01** |
| **EFFECTIVE DATE: 08-01-2013** | **RESTRICTED** | **PAGE 11 of 11** |

475  compliance officer will comment and forward the packet to the Deputy Commissioner of
476  Institutions.
477
478  4. Deputy Commissioner's Review -- The Use of Force Packet will be reviewed by the Deputy
479  Commissioner. The Deputy Commissioner will comment and forward the packet to the
480  Commissioner if deemed appropriate.
481
482  **DOCUMENTS REQUIRED:**
483
484  Extraordinary Occurrence Report
485  Use of Force Report
486  Rule Violation Report
487  Incident Reports from all staff involved or witnessing the Use of Force Incident
488  Medical Exams and treatment of all staff and offender(s) involved in the Use of Force
489  Applicable video records, photographs, diagrams or information use to describe the incident
490  As required by this procedure and through the chain of command.

| ENFORCEMENT AUTHORITY | | |
|---|---|---|
| **Reviewed and Approved for Issuance** | *[signature]* Christopher B. Epps | 07/19/13 |
| | Commissioner | Date |

| | MISSISSIPPI DEPARTMENT OF CORRECTIONS | SOP NUMBER 16-13-02 |
|---|---|---|
| | | AGENCY WIDE |
| USE OF FORCE TO PREVENT ESCAPES FROM INSTITUTIONS | | INITIAL DATE 11-01-2002 |
| ACA STANDARDS:   4-4202, 4-4203, 4-4206 | | EFFECTIVE DATE 02-07-2012 |
| STATUTES: | RESTRICTED | PAGE 1 of 5 |

**APPLICABILITY:**

This procedure applies to all employees of the Mississippi Department of Corrections.

**POLICY STATEMENT:**

It is the policy of the Mississippi Department of Corrections to restrict the use of physical force to instances of justifiable self-defense, protection of others, protection of property, prevention of escapes, and to maintain or regain control, and then only as a last resort and in accordance with appropriate statutory authority.

**DEFINITIONS:**

Deadly Force – Any use of force that will likely result in death or serious bodily injury.

Institutions – Mississippi State Penitentiary, Central Mississippi Correctional Facility, South Mississippi Correctional Institution, Private Prisons and County Regional Facilities.

**PROCEDURES:**

*Adult Correctional Institutions:*   **(MANDATORY)**   Written policy, procedure, and practice restrict the use of physical force to instances of justifiable self-defense, protection of others, protection of property, prevention of escapes, and to maintain or regain control, and then only as a last resort and in accordance with appropriate statutory authority. In no event is physical force justifiable as punishment. A written report is prepared following all uses of force and is submitted to administrative staff for review [4-4206].

When using force to prevent escape from an institution, security personnel will employ only the degree necessary to control the offender to a level that will be effective, with a minimum of harm to both staff and the offender.

When deadly force cannot be avoided, the force used must be the least injurious appropriate for the situation. Deadly force may be used to stop a lethal threat to staff or public.

Escape Attempts Inside Security Perimeter

Where time permits, an audible warning and/or warning shot should be given. Deadly force is justified to prevent escape when there is an immediate threat of death or serious bodily harm to the public, officer, staff, or offenders, and a lesser use of force level would not eliminate the threat or prevent the escape.

| TITLE:  USE OF FORCE TO PREVENT ESCAPES FROM INSTITUTIONS | POLICY NUMBER 16-13-02 |
|---|---|
| EFFECTIVE DATE:  02-07-2012 | RESTRICTED | PAGE 2 of 5 |

41  Escape Attempts Outside Security Perimeter
42
43  Whenever an inmate outside the security perimeter such as those on a work crew,
44  transportation run or medical trip, attempts to run from custody, he will be given an audible
45  warning. Once the officer believes that an escape cannot be prevented other than firing at the
46  inmate, he may do so after concluding that no member of the public is in the line of fire.
47
48  Escape Attempts Involving An Outside Intruder
49
50  Firepower will not be used to stop an intruder from the outside, unless the intruder fires or
51  attempts to fire a weapon, or otherwise threatens the loss of life or serious injury, and in the
52  officer's judgment, other types of force or persuasion are not deemed appropriate.
53
54  Escape Attempts Using Vehicle/Aircraft
55
56  When an outsider approaches the perimeter fence in a vehicle and attempts to crash through, or
57  an aircraft enters the security perimeter, the officer observing this will notify his supervisor or
58  other security personnel in a position to respond to the area, if time allows.
59
60  If the inmate continues to approach the vehicle/aircraft and the officer is reasonably convinced
61  the inmate is attempting to escape, the inmate will be fired upon until he surrenders, is disabled,
62  or enters the vehicle/aircraft.  The vehicle/aircraft will not be fired upon.
63
64  Deadly force is justified to prevent an escape, when there is an immediate threat of death or
65  serious bodily harm to the public, officer, staff, or offenders, and a lesser use of force level
66  would not eliminate the threat or prevent the escape.
67
68  If, however, occupants of the vehicle/aircraft fire or attempt to fire a weapon or otherwise use or
69  attempt to use deadly force of any kind, an officer is authorized to fire on the vehicle/aircraft or
70  its occupants for protection of self and others.
71
72  Securing the Scene
73
74  All staff will maintain the integrity of the scene to ensure possible evidence is preserved.
75  (Reference 20-06-01, Searches & Preservation of Evidence).  All evidence found at the scene
76  will be collected and secured by staff, appropriate law enforcement personnel or Corrections
77  Investigation Division (CID).
78
79  Medical Attention
80
81  *Adult Correctional Institutions:*  **(MANDATORY)** Written policy, procedure, and practice
82  provide that all persons injured in an incident receive immediate medical examination
83  and treatment [4-4203].
84
85  Persons involved in all use of force incident(s) will immediately receive a medical examination
86  and treatment even when the person does not appear to be injured.  The person will be
87  evaluated by a qualified medical professional.  A written report of all medical examinations and
88  treatment received by any person injured will be forwarded through the chain of command.

16-13-02 (d)
Forms

AG 4897

| TITLE:   USE OF FORCE TO PREVENT ESCAPES FROM INSTITUTIONS | | POLICY NUMBER 16-13-02 |
|---|---|---|
| EFFECTIVE DATE: 02-07-2012 | RESTRICTED | PAGE 3 of 5 |

89   Reporting/Notification
90
91   *Adult Correctional Institutions:*  Written policy, procedure, and practice provide that written
92   reports are submitted to the warden/superintendent or designee no later than the
93   conclusion of the tour of duty when any of the following occur:
94
95   • discharge of a firearm or other weapons
96   • use of chemical agents to control inmates
97   • use of force to control inmates
98   • inmate(s) remain in restraints at the end of the shift [4-4202]
99
100  Each employee who is involved in or witness a use of force incident is required to complete a
101  written report following all uses of force and submit it to the facility administrator before the end
102  of their shift or work day.
103
104  Each employee involved in the incident will complete an Incident Report. The Use of Force
105  Report will be initiated by the Reporting Staff.
106
107  Each incident report prepared will include at a minimum:
108
109  • The actions or outburst(s) by the offender that appeared threatening
110  • The observed reaction of the offender at the time of the use of force
111  • A description of any observable marks or injuries to the offender
112  • Factors considered in deciding whether or not to make a visual record of injuries
113  • Any complaints from the offender
114  • All circumstances surrounding the use of force incident
115
116  Staff in state, private, and regional facilities will generate all Use of Force Reports on Offender
117  Trak and forward through the chain of command.  All Use of Force incident report numbers will
118  be entered in Offendertrak using the following format:
119
120  Spontaneous Use of Force
121
122  • Facility Acronym – SUOF –Year – number
123  • Example: MSP –SUOF- 08 – 0001
124
125  Planned Use of Force
126
127  • Facility Acronym – PUOF –Year – number
128  • Example: MSP –PUOF- 08 – 0001
129
130  The Use of Force report can be electronically generated on Offendertrak by typing in the
131  offender's DOC number and going to **Reports >>> Person Documents >>> Documents >>>**
132  **Use of Force Report**.
133
134  Field officers involved in use of force incidents will submit a report to their immediate supervisor.
135  The report will detail all circumstances, list those involved, including witnesses and describe all

| TITLE:   USE OF FORCE TO PREVENT ESCAPES FROM INSTITUTIONS | POLICY NUMBER 16-13-02 |
|---|---|
| EFFECTIVE DATE: 02-07-2012 | RESTRICTED | PAGE 4 of 5 |

136  injuries and medical services provided.  All reports will be forwarded through the chain of
137  command.

139  All uses of force as referenced in this policy, or restraints, other than the routine use of
140  restraints, will be fully documented immediately after the end of the incident. (Reference 16-15-
141  01, Use of Restraints)

143  However, in the use of force levels 2, 3, 4, and 5, a Use of Force Report will be completed no
144  later than the conclusion of that shift.

146  Whenever an officer uses force levels 2, 3, 4, and 5, including an accidental weapon discharge,
147  he will expeditiously notify his immediate supervisor of the incident via the fastest means
148  possible.

150  The chain of command will be utilized to ensure that the Deputy Commissioner of Institutions
151  and the Deputy Commissioner of Community Corrections are notified. The Deputy
152  Commissioners will notify the Commissioner and the Director of Corrections Investigation
153  Division if deemed appropriate.

155  In the event an injury or death results from such use of force, local medical personnel will be
156  notified immediately followed by appropriate local law enforcement personnel. Officers on the
157  scene will ensure that the injured person receives appropriate medical attention.

159  All staff will maintain the integrity of the scene to ensure possible evidence is preserved
160  (Reference 20-06-01, Searches & Preservation of Evidence).  All evidence found at the scene
161  will be collected and secured by staff, appropriate law enforcement personnel or Corrections
162  Investigation Division.

164  The officer involved in the incident will be taken to a location determined by Corrections
165  Investigation Division and appropriate debriefing will take place as determined by Corrections
166  Investigation Division and local law enforcement personnel.

168  After completion of debriefing, the officer may be taken to a facility as directed by the supervisor
169  and may be required to submit to a urine sample.

171  The officer then completes an Incident Report containing all events of the incident.  He may be
172  placed on administrative leave with pay pending the completion of the agency's investigation.

174  Administrative Review and Investigations

176  1. Supervisor's Review – The Use of Force Packet will be reviewed by the reporting staff
177     member's supervisor.  The supervisor will decide, after any necessary interviews, whether or
178     not a packet contains necessary information to evaluate the use of force incident.  Once the
179     information has been gathered and evaluated the supervisor will send the packet to the
180     Community Corrections Director (CCD)/Warden/Superintendent for review.

| TITLE:  USE OF FORCE TO PREVENT ESCAPES FROM INSTITUTIONS | POLICY NUMBER 16-13-02 |
|---|---|
| EFFECTIVE DATE:  02-07-2012 | RESTRICTED | PAGE 5 of 5 |

181   2. CCD/Warden/Superintendent Review – The Use of Force Packet will be reviewed by the
182      CCD/Warden/Superintendent.  The CCD/Warden/Superintendent are required to refer the
183      Use of Force for investigation to CID if any of the following apply:
184
185      • The factual circumstances are not described sufficiently to enable an evaluation of the
186        amount of force utilized;
187
188      • The incident involved serious physical injury to any person;
189
190      • The incident constituted a significant disruption to the normal operation of the
191        institution;
192
193      • Whenever the involved offender(s) claim abuse or excessive force and the medical
194        exam report reflects injuries consistent with the claim.
195
196   3. Compliance Officer Review – At private and regional facilities, the Use of Force Packet will
197      be reviewed by the assigned compliance officer.  The compliance officer will review all
198      pertinent information surrounding the Use of Force incident to include but not limited to;
199      interviews and whether or not a packet contains necessary information to evaluate the use
200      of force incident.  Once the information has been gathered, reviewed and evaluated, the
201      compliance officer will comment and forward the packet to the Deputy Commissioner of
202      Institutions.
203
204   4. Deputy Commissioner's Review – The Use of Force Packet will be reviewed by the Deputy
205      Commissioner.  The Deputy Commissioner will comment and forward the packet to the
206      Commissioner if deemed appropriate.
207
208   **DOCUMENTS REQUIRED:**
209
210   As required by this procedure and through the chain of command.

| ENFORCEMENT AUTHORITY | | |
|---|---|---|
| **Reviewed and Approved for Issuance** | _Christopher B. Epps_ <br> Commissioner | 02/03/12 <br> Date |

16-13-02 (d)
Forms

AG 4900

| | | SOP NUMBER<br>16-15-01 |
|---|---|---|
| **MISSISSIPPI DEPARTMENT**<br>**OF**<br>**CORRECTIONS** | | **AGENCY WIDE** |
| **USE OF RESTRAINTS** | | **INITIAL DATE**<br>**06-13-1983** |
| **ACA STANDARDS: 4-4190, 4-4190-1, 4-4191** | | **EFFECTIVE DATE**<br>**06-01-2013** |
| **STATUTES:** | **RESTRICTED** | **PAGE 1 of 9** |

1  <u>**APPLICABILITY:**</u>
2
3  This procedure applies to all Mississippi Department of Corrections (MDOC) employees whose
4  duties require the utilization of physical restraints to maintain control and security of offenders.
5
6  <u>**POLICY STATEMENT:**</u>
7
8  It is the policy of the Mississippi Department of Corrections to ensure restraints are never
9  applied as punishment and are only used as a precaution against escape during transfer, for
10 medical reasons, to prevent self-injury, to prevent injury to others or to prevent property
11 damage.
12
13 <u>**DEFINTIONS:**</u>
14
15 <u>Four/Five-Point Restraints</u> -- A method by which both arms, head and legs are secured.
16
17 <u>Restraints</u> – A device used to physically limit the movement of the wearer.
18
19 <u>Restraint Chair</u> – A security-restraining device that utilizes a combination of handcuffs, leg irons,
20 and restraining straps in a specially designed contoured chair.  This chair is designed to provide
21 effective containment of an offender exhibiting violent and/or uncontrollable behavior.  Proper
22 application provides minimal potential for injury to the offender.
23
24 <u>**PROCEDURES:**</u>
25
26 <u>General</u>
27
28 *Adult Correctional Institutions:*  Written policy, procedure, and practice provide that
29 instruments of restraint, such as handcuffs, irons, and straight jackets, are never applied
30 as punishment and are applied only with the approval of the warden/superintendent or
31 designee [4-4190].
32
33 *Adult Correctional Institutions:* Written policy, procedure and practice, in general, prohibit
34 the use of restraints on female offenders during active labor and the delivery of a child.
35 Any deviation from the prohibition requires approval by, and guidance on, methodology
36 from the medical authority and is based on documented serious security risks.  The
37 medical authority provides guidance on the use of restraints on pregnant offenders prior
38 to active labor and delivery [4-4190-1].
39
40 All correctional staff will be trained in the application and use of instruments of restraint.

16-15-01 (e)
Forms

AG 4910

| TITLE: USE OF RESTRAINTS | | SOP NUMBER 16-15-01 |
|---|---|---|
| EFFECTIVE DATE: 06-01-2013 | RESTRICTED | PAGE 2 of 9 |

41 The Superintendent, Community Corrections Director, Warden, or designee will approve all non-
42 routine utilization of restraints. The Shift Commander may approve the emergency utilization of
43 restraints; however, the Superintendent, Community Corrections Director, Warden, or designee
44 will be immediately notified.
45
46 Use of Restraints
47
48 Instruments of restraint will be applied and utilized for the following reasons:
49
50 • Precaution against escape during transfer and/or transport
51 • Medical reasons, only upon the direction of a medical authority
52 • Prevent self-injury
53 • Prevent injury to others
54 • Prevent property damage
55
56 Instruments of restraint will never be utilized in the following ways:
57
58 • As a method of punishment
59 • In a manner that causes undue physical discomfort, inflicts physical pain, or restricts the
60 blood circulation or breathing of the offender
61 • Shackling an offender to a stationary object while inside a moving vehicle
62
63 The technique of placing an offender in a facedown position following the application of
64 restraints is strictly prohibited.
65
66 Restraints will be used no longer than is absolutely necessary. Due consideration must be
67 given to the comfort and welfare of the offender, commensurate with an adequate degree of
68 safety and restraint.
69
70 Restraints are apparatus that should be utilized as a temporary measure. An offender under
71 restraint is still potentially dangerous and will be kept under constant observation.
72
73 Appropriate restraints must be used as soon as possible when it appears an offender may
74 become violent or disruptive. The use of such restraints must be terminated as soon as the risk
75 subsides or the offender is confined.
76
77 Access to meals will not be withheld from an offender who is placed in any type of restraints.
78 Restroom access will be granted on an as needed basis.
79
80 Handcuffs
81
82 Handcuffs will be placed on an offender with care. Each handcuff will be tightened to a secure
83 fit on the wrist, with enough space left between the wrist and the handcuff to ensure proper
84 blood circulation.

16-15-01 (e)
Forms

| TITLE:  USE OF RESTRAINTS | | SOP NUMBER 16-15-01 |
|---|---|---|
| EFFECTIVE DATE: 06-01-2013 | RESTRICTED | PAGE 3 of 9 |

85  Handcuffs will be applied behind the offender's back.  Immediately after placing the handcuffs
86  on the offender, the officer will double-lock the handcuffs.
87
88  Handcuffs will be examined prior to use for defects in chain links, for malfunction of the double-
89  locking device, and for foreign objects in the locking and keyhole slots.
90
91  Handcuffs will never be removed while in transit unless there is a vehicle accident or collision.
92  The officer will consider the welfare of the offender and protection of the officer and community
93  before removal of the handcuffs.
94
95  Offenders housed in maximum security units will be restrained with handcuffs or waist chains
96  prior to exiting their cells, and escorting to and from the shower and yard call.
97
98  <u>Chains</u>
99
100  Chains used to restrain offenders will be approximately four feet in length, of single link
101  construction with an enlarged link at one end.
102
103  Chains will be applied in the following manner:
104
105  • Circle the offender's waist threading the chain through the belt loops
106  • Pull the waist chain firm
107  • Place the large end link through a link of the waist chain
108  • Insert the open handcuffs through the large link ensuring one cuff is on both sides of the
109    waist chain
110  • Proceed to cuff the offender
111
112  <u>Black Box</u>
113
114  The Black Box will be applied in the following manner:
115
116  • Pull the securing lid off
117  • Open the box
118  • Apply the handcuffs
119  • Place the box on handcuffs
120  • Reapply the securing slide
121  • Put the large chain link through the slot in the box
122  • Lock in place with a padlock
123
124  <u>Leg Irons for Community Work Center Offenders</u>
125
126  Community Work Center offenders will be placed in restraints only when being transported to a
127  major facility for disciplinary actions, court appearances or outside hospital for medical
128  appointments.

16-15-01 (e)
Forms

| TITLE: USE OF RESTRAINTS | | SOP NUMBER 16-15-01 |
|---|---|---|
| EFFECTIVE DATE: 06-01-2013 | RESTRICTED | PAGE 4 of 9 |

129  Leg Irons for All Other Offenders
130
131  When offenders are transported by car, van, or bus, leg irons will be applied.  Prior to the
132  application of leg irons, the officer will ensure the offender is properly handcuffed and wearing a
133  waist chain.
134
135  Leg irons will be examined prior to being placed on the offender.  Leg irons may be utilized over
136  socks or pant legs and pulled to a firm fit, leaving enough room for circulation, and double-
137  locked with the keyhole placed on the lower side.
138
139  The officer will place the leg irons on the offender while positioned directly behind the offender.
140  The officer will be alert to immediately respond if the offender attempts to kick.
141
142  One pair of leg irons will be applied to each offender unless emergency transportation needs
143  exist.
144
145  Leg irons will never be removed while in transit unless there is a vehicle accident or collision.
146  The officer will consider the welfare of the offender and protection of the officer and the
147  community before removal of the leg irons.
148
149  Maximum security offenders who are being escorted to and from appointments (i.e., Case
150  Manager appointment, disciplinary hearing, medical appointment) will be restrained with waist
151  chains and leg irons.
152
153  All offenders who are being escorted to and from appointments off institutional grounds (i.e.,
154  medical appointments, court appearances) will be restrained with waist chains and leg irons.
155
156  Removal of Restraint Gear for Medical Procedures
157
158  Restraint gear may be taken off an offender upon the request of an on-site or off-site medical
159  provider for the performance of medical procedures such as x-rays, whole body scans, and
160  surgery.
161
162  If possible, only the restraint gear that hinders the medical procedure is to be removed.  Upon
163  completion of the medical procedure, the offender is to be frisk searched and placed back into
164  full restraint gear.
165
166  If the medical provider requests an extended removal of restraint gear, the Warden or designee
167  is to be contacted immediately.
168
169  Permanent or Temporary Suspension of Restraint Gear
170
171  Only MDOC site medical directors are allowed to approve temporary or permanent suspension
172  of restraint gear.
173
174  The request must be reviewed and authorized by the Warden or designee.

16-15-01 (e)
Forms

| TITLE: USE OF RESTRAINTS | | SOP NUMBER 16-15-01 |
|---|---|---|
| EFFECTIVE DATE: 06-01-2013 | RESTRICTED | PAGE 5 of 9 |

175 Medical Records personnel will ensure that the suspension approval is logged in the offender's
176 medical records as well as ensure that an alert status is noted in Offendertrak.
177
178 <u>Use of Restraints to Restrict Mobility of an Inmate</u>
179
180 Hand and leg restraints attached to a stationary object may be applied for the following reasons
181 and only after all lesser types of restraint methods have failed:
182
183 • Precaution against escape during transfer and/or transport
184 • Medical reasons, only upon the direction of a medical authority
185 • Prevent self-injury
186 • Prevent injury to others
187 • Prevent property damage
188
189 When this restraint procedure is utilized, the following is required:
190
191 • Direct visual observation by staff must be continuous prior to obtaining approval from the
192   Warden or designee and clearance by medical staff.
193
194 • Subsequent visual observation will be made periodically.
195
196 • Restraints will be used no longer than absolutely necessary.
197
198 • Restricted mobility restraints will only be applied initially for a period no longer than three
199   hours. Continued utilization beyond three hours must be authorized by the Warden or
200   designee and approved by the health authority.
201
202 • Restraints will not prevent the offender from rising from the bed, utilizing the toilet facilities or
203   eating.
204
205 • Restricted Mobility Restraints form will be completed.
206
207 <u>Use of Four/ Five-Point Restraints and Restraint Mattress</u>
208
209 Restraints which prevent an offender from rising from his bed, utilizing toilet facilities, or eating
210 will not be placed on any offender in a locked room except in extreme circumstances. These
211 circumstances will include, but are not limited to the following:
212
213 • Offender threatens suicide
214 • Experiences a violent episode of mental instability
215 • Needs to be completely subdued for a very short period of time after behaving violently
216   towards another person

16-15-01 (e)
Forms

| TITLE:  USE OF RESTRAINTS | | SOP NUMBER 16-15-01 |
|---|---|---|
| EFFECTIVE DATE: 06-01-2013 | RESTRICTED | PAGE 6 of 9 |

217  *Adult Correctional Institutions:*  (MANDATORY) Four/five point restraints are used only in
218  extreme instances and only when other types of restraints have proven ineffective or the
219  safety of the inmate is in jeopardy.  Advance approval is secured from the facility
220  administrator/designee before an inmate is placed in a four/five point restraint.
221  Subsequently, the health authority or designee must be notified to access the inmate's
222  medical and mental health condition, and to advise whether, on the basis of serious
223  danger to self or others, the inmate should be in a medical/mental health unit for
224  emergency involuntary treatment with sedation and/or other medical management, as
225  appropriate.  If the inmate is not transferred to a medical/mental health unit and is
226  restrained in a four/five point position, the following minimum procedures are followed:

227
228  1.  Direct visual observation by staff is continuous prior to obtaining approval from the
229      health authority or designee;
230  2.  Subsequent visual observation is made at least every fifteen minutes
231  3.  Restraint procedures are in accordance with guidelines endorsed by the designated
232      health authority
233  4.  All decisions and actions are documented [4-4191].

234
235  When an offender is placed in four/five-point restraints (arms, head, and legs secured), advance
236  approval must be obtained from the Superintendent, Community Corrections Director, Warden,
237  or designee.

238
239  The Institutional Medical Director or designee must be notified in order to assess the offender's
240  medical and mental health condition, and to advise, on the premise of serious danger to self or
241  others, whether the offender should be placed in a medical or mental health unit for involuntary
242  emergency treatment with sedation and/or other medical management as appropriate.

243
244  Four/Five-point restraints should only be used in extreme instances and only when other types
245  of restraints have proven to be ineffective.  Due consideration must be given to an individual's
246  physical condition, such as body weight.

247
248  When an offender is restrained in a four/five-point position, the following minimum procedures
249  will be followed:

250
251  •  Direct visual observation by staff must be continuous prior to obtaining approval from the
252     Institutional Medical Director or designee.

253
254  •  Subsequent visual observation must be made at least every 15 minutes.

255
256  •  Restraint procedures are in accordance with guidelines approved by the Institutional Medical
257     Director.

258
259  Offenders secured in four/five-point restraints will be clothed in underwear only.  This provision
260  may be modified if deemed necessary by the appropriate supervisor and approved by the
261  Superintendent, Community Corrections Director, Warden, or designee.

16-15-01 (e)
Forms

| TITLE: USE OF RESTRAINTS | | SOP NUMBER 16-15-01 |
|---|---|---|
| EFFECTIVE DATE: 06-01-2013 | RESTRICTED | PAGE 7 of 9 |

262 Upon determination that the application of four/five-point restraints is necessary, a staff member
263 will be assigned to maintain direct, continual observation of the offender until approval has been
264 obtained from the Institutional Medical Director or designee.
265
266 Offenders placed in four/five-point restraints will be examined by medical staff as soon as
267 possible to evaluate any injuries and ensure the restraints have been applied in a way that
268 normal breathing and circulation are permitted.
269
270 Correctional personnel will monitor offenders in restraints at least every 15 minutes and
271 document this in the appropriate log.
272
273 Four/Five-point restraints will only be applied for a period no longer than three hours on the
274 order of the Superintendent, Community Corrections Director, Warden, or designee.
275
276 A physician will approve any continued utilization of restraints beyond the three-hour period,
277 either personally or by telephone, within this three-hour period.  This extension will be for no
278 longer than three additional hours.
279
280 Authorization for continued utilization of restraints beyond an initial extension could be given
281 only by a physician based on a personal examination of the offender and only for reasonable
282 periods not to exceed eight hours.
283
284 The offender will not be in restraints beyond the authorized eight-hour period without further
285 personal examination and authorization by a physician.
286
287 The offender will be released or placed in lesser restraints unless the physician finds the
288 behavior mandates otherwise.
289
290 <u>Restraint Chair</u>
291
292 When an offender is placed in the restraint chair, advance approval must be obtained from the
293 Superintendent, Community Corrections Director, Warden, or designee.
294
295 The following procedure will apply when placing an offender in the restraint chair:
296
297 • The Warden or designee and the Shift Commander will be present and directly supervise
298 the placement of an offender into the restraint chair.
299
300 • Only staff members trained in the use of the restraint chair can administer restraint by these
301 means.
302
303 • To facilitate placement in the restraint chair, the offender will be placed in a prone position
304 (facedown) on the floor.
305
306 • The offender will place his hands behind his back and handcuffs will be applied; leg irons
307 will be placed around the offender's ankles.

16-15-01 (e)
Forms

| TITLE: USE OF RESTRAINTS | | SOP NUMBER 16-15-01 |
| --- | --- | --- |
| EFFECTIVE DATE: 06-01-2013 | RESTRICTED | PAGE 8 of 9 |

308  • The offender will be stood upright immediately in front of the chair and will be instructed to
309    seat himself in the chair.  If the offender refuses to comply, the attending staff members will
310    seat the offender.
311
312  • One staff member will be positioned behind the chair to control the offender's head and
313    prevent injury, and one staff member will be positioned in front of the offender to control leg
314    movement if necessary.
315
316  • Once the offender is seated, one staff member will secure the chair's lap belt across the
317    offender's abdomen.  The other staff member will secure the leg strap across the offender's
318    legs and pull until snug.
319
320  • Two staff members will then secure the shoulder straps and alternate pulling the straps
321    securely across the offender's chest.
322
323  Offenders placed in the restraint chair will be kept isolated from other offenders.
324
325  An offender will be removed from the restraint chair only under the direction of the
326  Superintendent, Community Corrections Director, Warden, or designee.   The Warden or
327  designee and the Shift Commander, in conjunction with medical staff, will monitor the current
328  condition and behavior of the offender in order to determine when it is appropriate to remove the
329  offender from the restraint chair.
330
331  Correctional personnel will maintain direct observation of the restrained offender.  A written 15
332  minute observation log will be maintained for all offenders placed in the restraint chair.
333
334  Restraints will be checked for excessive tightness a minimum of once every 30 minutes and
335  noted in the observation log.  If loss of circulation is detected, adjustment will be made as
336  necessary.  If an offender complains of pain caused by restraints, the observing staff member
337  will request an examination of the offender from the medical staff.
338
339  The Shift Commander will review the status and need for continued restraint of the offender a
340  minimum of once every two hours and will document the review on the observation log.  Medical
341  staff will examine the offender a minimum of once every three hours; however, staff members
342  may request that medical staff examine the offender at any time.
343
344  Any offender who urinates or has a bowel movement while in the restraint chair or the four/five-
345  point restraints, will be removed from the restraint for cleaning as soon as possible.
346
347  <u>Restraint Logging and Reporting Procedures</u>
348
349  All non-routine utilization of restraints will be fully documented and appropriate information
350  reports completed and forwarded to the Superintendent, Community Corrections Director or
351  designee for review.
352
353  An observation log will be maintained indicating the following:

16-15-01 (e)
Forms

| TITLE:  USE OF RESTRAINTS | | SOP NUMBER 16-15-01 |
|---|---|---|
| EFFECTIVE DATE: 06-01-2013 | RESTRICTED | PAGE 9 of 9 |

354   •   Name of the restrained offender
355   •   Reason for the restraint
356   •   Type of restraints utilized
357   •   Time of initial restraint
358   •   Time of authorization
359   •   Name of the physician
360   •   Time monitored
361   •   Name of the person monitoring
362   •   Time of release
363
364 The Warden or designee and the Shift Commander are responsible for ensuring that the
365 appropriate Incident Reports, Extraordinary Occurrence Reports, and Observation Logs are
366 completed and forwarded to the Superintendent, Community Corrections Director or designee.
367 The reports must include, at a minimum, the following:
368
369   •   Description of the specific incident requiring the use of restraints
370   •   Time and place restrained
371   •   Any additional altercations occurring during or when the offender is released from restraint
372   •   Time restraints are removed
373   •   Copy of the observation log
374
375 <u>Post Restraint Procedures</u>
376
377 Upon removal of an offender from the restraint chair or four/five-point restraints, medical staff
378 will immediately examine the offender and note the offender's condition in the medical file.
379
380 Following each use of restraints, all devices will be cleaned and checked for any damage
381 according to the recommendations of the manufacturer.  The restraints will then be returned to
382 the appropriate ready position.
383
384 **DOCUMENTS REQUIRED:**
385
386 As required by this procedure and through the chain of command.

| ENFORCEMENT AUTHORITY | | |
|---|---|---|
| **Reviewed and Approved for Issuance** | Deputy Commissioner of Institutions | 05/31/13    Date |
| | Deputy Commissioner of Community Corrections | 05/31/13    Date |

16-15-01 (e)
Forms

| | MISSISSIPPI DEPARTMENT OF CORRECTIONS | SOP NUMBER 16-23-01 |
|---|---|---|
| | | AGENCY WIDE |
| USE OF OLEORESIN CAPSICUM SPRAY OR CHEMICAL AGENTS | | INITIAL DATE 03-01-2001 |
| ACA STANDARDS: 4-4092 | | EFFECTIVE DATE 12-01-2009 |
| STATUTES: | RESTRICTED | PAGE 1 of 4 |

**APPLICABILITY:**

This procedure applies to all Mississippi Department of Corrections (MDOC) staff, Regional Facilities and Private Prison staff authorized to use agency approved chemical agents or Oleoresin Capsicum Spray.

**POLICY STATEMENT:**

It is the policy of the Mississippi Department of Corrections (MDOC) to certify staff to carry and use agency approved chemical agents or Oleoresin Capsicum Spray.

**DEFINITIONS:**

Oleoresin Capsicum Spray (OC) - A spray or foam derived from Capsicum peppers and mixed with essential oils, waxes and materials (commonly known as pepper spray or OC spray).

Chemical Agents - All types of tear gases that are currently approved and used.

Contamination - Making impure by contact with an OC product or chemical agent.

Decontamination - The process that is initiated after a person has been contaminated by OC spray or a chemical agent.

Certification Course - A basic course of instruction that teaches the proper methods of contamination and decontamination of OC spray or chemical agents.

**PROCEDURES:**

Adult Correctional Institutions:  (MANDATORY) All personnel authorized to use chemical agents receive thorough training in their use and in the treatment of individuals exposed to a chemical agent [4-4092].

All Correctional Commanders and Correctional Supervisors who exert control or custody over offenders will acquire and maintain certification for OC spray or chemical agents.

Successful completion of a certification course for OC spray or chemical agents is a condition of employment for being hired or promoted to the position of Correctional Commander or Correctional Supervisor.

| TITLE:  USE OF OLEORESIN CAPSICUM SPRAY OR  CHEMICAL AGENTS | SOP NUMBER 16-23-01 |
|---|---|
| EFFECTIVE DATE:  12-01-2009 | RESTRICTED | PAGE 2 of 4 |

39  Any authorized staff member who may reasonably be expected to carry, use or deploy OC
40  spray or chemical agents during duty hours will be trained in approved methods to include, but
41  not limited to the following:
42
43  • Must have successfully completed a certification course for OC spray or chemical
44    agents.
45
46  • Must have been contaminated or exposed after signing a Medical Warning statement.
47
48  • Must carry only agency approved or departmental issue.
49
50  • Must be recertified every two years by passing the basic course of instruction and a
51    written test.
52
53  • Must possess a general knowledge of contamination and decontamination procedures.
54
55  • Must have record of certification in the training file.
56
57  • Must have signed acknowledgement of receipt of a copy of "Use of Oleoresin Capsicum
58    Spray or Chemical Agents" and the "Use of Force" policy and procedure prior to
59    receiving any OC spray/foam or other chemical agent.
60
61  • Must contact medical staff prior to a planned use of chemical agents to possibly avoid
62    preventable medical problems.
63
64  • Must ensure that the OC spray or chemical agents do not become accessible to
65    offenders.
66
67  Trained personnel may employ OC spray or chemical agents in the following situations:
68
69  • To gain control of an offender who physically resists or threatens to physically resist (i.e.,
70    assuming an aggressive posture and does not comply with verbal request).
71
72  • To gain control of any offender who poses a threat to staff or property.
73
74  • To defend oneself against attack.
75
76  • To defend another staff member, offender or citizen against attack.
77
78  • To defend a staff member or citizen from an animal attack.
79
80  • To defend the institution against a riot.
81
82  All offenders will be handcuffed as soon as possible after OC products or chemical agents are
83  deployed.

16-23-01 (b)
Forms

AG 5038

| TITLE:   USE OF OLEORESIN CAPSICUM SPRAY OR  CHEMICAL AGENTS | | SOP NUMBER 16-23-01 |
|---|---|---|
| EFFECTIVE DATE:  12-01-2009 | RESTRICTED | PAGE 3 of 4 |

84   Once an offender is incapacitated or restrained, the use of OC products or chemical agents is
85   no longer justified.

### Prohibited Use

89   OC spray or chemical agents will not be used against passive demonstrators, spectators or
90   individuals who are holding an infant or small child.

92   Chemical agents will not be deployed in areas deemed unsafe.

### Medical Attention

96   Immediately after exposure to chemical agents, institutional staff should transport offenders to
97   the clinic for examination.

- 99   Officers should be alert to any indications that the offender needs medical care (ie,
  100  breathing difficulties, gagging, profuse sweating and loss of consciousness).

- 102  Upon observing these or other medical problems or if the individual requests medical
  103  assistance, staff will immediately summon emergency medical aid (effects of OC spray
  104  or chemical agents vary among individuals).

- 106  Persons coming in contact with chemical agents should be treated as soon as possible
  107  with exposure to fresh air and rinsing with cold water or other decontaminates.

- 109  Persons that have come in contact with chemical agents will be monitored closely for
  110  indications of medical problems and no offender will be left alone while in custody.

- 112  A Community Corrections offender who has been sprayed with OC spray will be placed
  113  under arrest by the staff member or local law enforcement personnel and transported to
  114  a holding facility as soon as possible.

- 116  The holding facility personnel will be advised that the offender has been contaminated
  117  with OC spray and should be monitored.

- 119  Assistance should be offered to any individual who has been accidentally exposed to OC
  120  spray or chemical agents who feels the effects of the agents.

### Notification

124  Accidental discharges of any chemical agent will be reported to the staff member's immediate
125  supervisor as soon as possible and followed up with a written report within 24 hours utilizing the
126  Incident Report Form and Extraordinary Occurrence Report.

128  Whenever a staff member discharges any chemical agent intentionally (except while undergoing
129  approved exercise or training), he will notify his immediate supervisor of the incident via the
130  fastest means possible.

16-23-01 (b)
Forms

| TITLE:   USE OF OLEORESIN CAPSICUM SPRAY OR  CHEMICAL AGENTS | SOP NUMBER 16-23-01 |
|---|---|
| EFFECTIVE DATE:  12-01-2009 | RESTRICTED | PAGE 4 of 4 |

131  The immediate supervisor will immediately notify his supervisor who will, following the chain of
132  command, ensure that the appropriate Deputy Commissioner is notified.
133
134  The Deputy Commissioner will notify the Commissioner in respect to the seriousness of the
135  incident.
136
137  Unless instructed otherwise, once the notification process is complete, the Supervisor will report
138  to the scene of the incident.
139
140  The staff member will then complete an Incident Report and Use of Force report containing all
141  events of the incident and will submit reports before the end of the shift.
142
143  **DOCUMENTS REQUIRED:**
144
145  Acknowledgement of Receipt of OC Spray
146  Record of Certification of Training
147  Incident Report
148  Use of Force
149  Extraordinary Occurrence Report
150  As required by this Standard Operating Procedure and through the chain of command.

| | ENFORCEMENT AUTHORITY |
|---|---|
| **Reviewed and Approved for Issuance** | _signature_                                    11/17/09 |
| | Deputy Commissioner of Institutions                    Date |
| | _signature_  Lora M. Cole              11-17-09 |
| | Deputy Commissioner of Community Corrections        Date |

16-23-01 (b)
Forms

AG  5040