# **Exhibit 8**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JERMAINE DOCKERY, ET AL.
                                          PLAINTIFFS

V.            CIVIL ACTION NO.  3:13-CV-326-WHB-JCG

MARSHALL L. FISHER, ET
AL.
                                          DEFENDANTS

DEPOSITION OF ELDON VAIL

Taken at the instance of the Defendants at Phelps Dunbar, 4270 I-55 North, Jackson, Mississippi, on Thursday, April 6, 2017, beginning at 8:58 a.m.

GINGER H. BROOKS, CCR #1165
CRR, RPR, CCR, CLR, RSA

```
 1      Q.   So he had to get to the fight, correct?
 2      A.   Right.  But, you know, if you take the
 3  whole paragraph in total from just watching the
 4  video, you can see the tension increasing for at
 5  least about a minute.  I didn't put precise
 6  seconds down there, and then multiple inmates
 7  began to attack a single inmate.
 8           If that officer is in the pod, it might
 9  not have happened, and, if it did happen, he would
10  have been able to move more quickly.
11      Q.   Okay.  Well, you say it "might not have
12  happened."  Again, you don't know if it would have
13  happened or not, correct?
14      A.   In any individual incident, no, I don't
15  know that, but based on my experience, I know that
16  some of them will be stopped before they start.
17      Q.   Paragraph 97, you refer to a November 4,
18  2014, fight in a general population unit.
19           Do you know what unit?
20      A.   No.  Again, the same answer as before.
21  Not without checking the Bates number.
22      Q.   All right.  Well, all of these examples
23  starting with paragraph 94 through 97, which I
24  think are all the examples, they're all from 2014
25  to, I think, July 2015, correct?
```

```
 1      A.   That's true.
 2      Q.   All right.  There are no examples from
 3  2016, correct?
 4      A.   I didn't receive any videos from 2016,
 5  except for the month of January.
 6      Q.   Okay.  But you didn't include any of
 7  those in this, did you?
 8      A.   No.
 9      Q.   Okay.  Well, in your opinion, what
10  should the facility be required to do to address
11  the issue in this section about insufficient
12  staffing in the general population?
13      A.   Establish a staffing model that puts one
14  officer in each of the pods during the waking
15  hours of the inmates, day and night shift.
16      Q.   Let's go to page 24.
17      A.   There.
18      Q.   And this is the section, "Insufficient
19  Staffing in Close Custody."
20           Do you see that?
21      A.   I do.
22      Q.   And this is paragraphs 99 through 107 on
23  page 27, correct?
24      A.   That is correct.
25      Q.   All right.  And this applies only to
```

```
 1   130.
 2          Well, let me just ask you this:  All of
 3   the examples that you give in this section are
 4   from -- appears to me to be from November 2013 to
 5   the latest one being June of 2015, correct?
 6       A.   That is correct.
 7       Q.   Okay.  None in 2016, correct?
 8       A.   I didn't receive any relevant documents
 9   past January '16.  So I wouldn't -- other than
10   January, I wouldn't have had the ability to put
11   anything in for 2016.
12       Q.   Okay.  Now, are you aware that the
13   facility has a -- has installed and is operating a
14   full body scanner at the front of the facility to
15   search visitors and the packages?
16       A.   It was in place when I was there in
17   June.
18       Q.   Okay.  It's there?
19       A.   Pardon?
20       Q.   It's there, correct?
21       A.   It was in place, yes.
22       Q.   All right.  And do you agree that that
23   is a reasonable effort to reduce the introduction
24   of contraband to the facility?
25       A.   It's a reasonable effort, yes.
```

```
 1        Q.   All right.  Did you ever personally
 2   actually train mental health staff?
 3        A.   No.
 4        Q.   Do you know what training and
 5   deescalation of mental health staff that EMCF
 6   gets?
 7        A.   I do not know.
 8        Q.   Looking back at Exhibit 3, paragraphs
 9   148 through 153, pages 38 to 39.  If you'd just
10   review those, I'm going to ask you about the
11   dates.  Just look at what the dates are.
12        A.   (Examining.)  Yeah, I've done that.
13        Q.   Okay.  Would you agree that they're all
14   from August 2014 to October 2015?
15        A.   Yeah, that was the bulk of the
16   production that I had available when I wrote this
17   report --
18        Q.   Okay.
19        A.   -- during that time period.
20        Q.   All right.  Let's look at paragraph 148.
21   It says in, I think, the third sentence, "Mental
22   health staff responded to the scene, and they
23   reported that 'there were no signs of mental
24   distress and that the inmate's actions towards
25   staff was due to behavioral issues.'"
```

Eldon Vail 4/6/2017

 1  but some effort?
 2     A.   It's tough for me to call how much
 3  effort.  I mean, it's just kind of a -- almost
 4  like checking a list and saying, "Well, he's not
 5  going to cooperate, so let's move on."
 6          So, you know, based on the records that
 7  are available to me, no, I don't think we spent
 8  enough time.  That was, I think, the original
 9  question.
10     Q.   Okay.  Now, all of these examples are
11  from -- are before October of 2015, correct?
12     A.   Yes.
13     Q.   None in 2016, correct?
14     A.   The same qualifier as before, that this
15  was -- the bulk of the reports that I got came
16  from this time period.
17     Q.   Yeah.  Okay.
18     A.   153 is different.
19     Q.   Okay.  Go ahead.  Let's talk about 153.
20          Why is 153 different?
21     A.   Well, this was a spontaneous use of
22  force, and they escorted the inmate to medical,
23  and the mental health staff said, "I'm not talking
24  to them.  This is behavioral."
25          That's not behavior that I would accept

```
 1              CERTIFICATE OF COURT REPORTER
 2              I, Ginger H. Brooks, Court Reporter and
 3  Notary Public, in and for the State of
 4  Mississippi, hereby certify that the foregoing
 5  contains a true and correct transcript of the
 6  testimony of ELDON VAIL, as taken by me in the
 7  aforementioned matter at the time and place
 8  heretofore stated, as taken by stenotype and later
 9  reduced to typewritten form under my supervision
10  by means of computer-aided transcription.
11              I further certify that under the
12  authority vested in me by the State of Mississippi
13  that the witness was placed under oath by me to
14  truthfully answer all questions in the matter.
15              I further certify that, to the best of
16  my knowledge, I am not in the employ of or related
17  to any party in this matter and have no interest,
18  monetary or otherwise, in the final outcome of
19  this matter.
20              Witness my signature and seal this the
21  18th day of April, 2017.
22
23                              _____
                                GINGER H. BROOKS, #1165
24                              CRR, RPR, CCR
    My Commission Expires:
25  September 18, 2017
```