THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JERMAINE DOCKERY, et al.,

        Plaintiffs,

    v.                          Civil Action No. 3:13-cv-00326-WHB-JCG

PELICIA HALL, et al.,

        Defendants

---

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF POST-DISCOVERY CHANGES TO PRISON POLICIES OR PRACTICES**

---

Plaintiffs respectfully move this Court for an order barring Defendant from admitting documents or eliciting expert or fact witness testimony concerning any alleged changed conditions at East Mississippi Correctional Facility ("EMCF") that post-date the July 14, 2017 discovery cut-off. Allowing such new evidence, which has never been disclosed to Plaintiffs, would be highly prejudicial and place Plaintiffs at a significant disadvantage in the trial of this case.

I.    **Permitting Defendant to admit evidence of changed conditions that post-dates the discovery cutoff — which Defendant has never produced and to which Defendant has exclusive access — would result in extreme prejudice to Plaintiffs, in violation of the Federal Rules of Civil Procedure.**

"The discovery provisions of the Federal Rules of Civil Procedure allow the parties to develop fully and crystalize concise factual issues for trial. Properly used, they prevent prejudicial surprises and conserve precious judicial energies." *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300, 303 (5th Cir. 1973). *See also Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994) ("basic purpose" of Rule 23(e) supplementation requirement is "preventing prejudice and surprise"). To that end, Federal Rule of Civil Procedure 26(e) imposes an ongoing

duty to supplement discovery responses that have become incorrect or incomplete. Fed. R. Civ. P. 26(e); *Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 421 (S.D. Tex. 2012) (noting that parties may supplement discovery responses after the close of discovery). Further, under Federal Rule of Civil Procedure 37(c)(1), a party that fails to disclose information required by Rule 26(a) or (e) "is not permitted to use the information as evidence at a trial, 'unless such failure is harmless'" or substantially justified. *Primrose Operating Co. v. National American Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004).

Trial is scheduled to begin in this case in approximately four weeks. The final pretrial conference, when Plaintiffs and Defendant must disclose their witness and exhibit lists, is just two weeks away. At this late date, Defendant has not supplemented its discovery responses to disclose any evidence of changes to its policies or practices at EMCF post-dating the July 14, 2017 discovery cutoff. Plaintiffs are not aware that any such evidence exists; however, if Defendant belatedly attempts to place Plaintiffs on notice of any such evidence after the filing of this Motion, such extremely late notice will severely prejudice Plaintiffs during the final stages of trial preparation. In light of the February 1, 2018 deadline for Motions in Limine, Plaintiffs are therefore filing this Motion as a prophylactic measure.

The prejudice to Plaintiffs of such trial tactics would be especially grave because this is a case with profoundly asymmetrical access to information: prisons are notoriously closed institutions that lack transparency to those who are not employed by correctional authorities or their contractors. *See, e.g.*, Michele Deitch, *Independent Correctional Oversight Mechanisms Across the United States: A 50-State Inventory*, 30 Pace L. Rev. 1754, 1762 (2010) (noting that prisons operate "entirely outside the public eye"); John J. Gibbons & Nicholas de B. Katzenbach, Vera Institute of Justice, *Confronting Confinement: A Report of the Commission on Safety and*

*Abuse in America's Prison*, at 15 (2006), https://storage.googleapis.com/vera-web-assets/downloads/Publications/confronting-confinement/legacy_downloads/Confronting_Confinement.pdf (finding that most correctional facilities are "walled off from external monitoring and public scrutiny"); *see also Pell v. Procunier*, 417 U.S. 817, 827 (1974) (noting that prison officials have broad powers to restrict the "entry of outsiders into the prison"). As a result, Defendant has a virtual monopoly over the evidence — documents and MDOC and EMCF staff — that will be dispositive of this case. To review this evidence, Plaintiffs must propound discovery requests — but their ability to do so ended when the discovery period closed.[1]

This asymmetrical access to information would result in severe prejudice if Defendant were permitted to admit evidence at trial of changed conditions that post-dates the discovery cutoff.  For example, if MDOC's witnesses were to testify that they had changed a challenged policy or practice after the close of discovery, Plaintiffs would have no way of obtaining the new information before trial, and would have few avenues even to become aware of the *existence* of the new policy before such testimony occurred. Additionally, surprise testimony on new policies and practices would rob Plaintiffs of the ability to have their experts opine on it. This would give MDOC a major and unfair advantage at trial that Plaintiffs would likely be unaware of when presenting their case in chief.  Permitting Defendant to rely on such evidence at trial — without

---

[1] Following the close of discovery, Plaintiffs' only insight into operations at EMCF has come from their access to prisoners and news reports. The information provided by both sources is necessarily limited. Plaintiffs' physical access to prisoners is limited by Defendant, and the information provided by prisoners is limited as well — prisoners can share personal observations of their time at EMCF, but are not privy to Defendant's decision-making as to system-wide policies and practices. For example, a prisoner may observe that staff have reduced the number of rounds they conduct at night, but lack personal knowledge as to whether this is due to a shortage of staff members, or a change in policy on how often staff should check the prisoner's cell. Media also lack physical access to EMCF, and news reports are frequently limited to events involving publically accessible data. Neither source is comparable to the documents and knowledge of MDOC officials and staff that Defendant — and only Defendant — can currently access.

having fulfilled its duty to supplement its responses to discovery requests seeking this information — would open the door to profoundly unfair gamesmanship that violates the letter and spirit of the Federal Rules.

Moreover, the Supreme Court has explicitly affirmed a court's authority to grant this relief in the context of prison conditions litigation. *See Brown v. Plata*, 563 U.S. 493, 523 (2011). In *Plata*, the lower court established a cutoff date for discovery a few months before trial and excluded evidence of changes in the prisons that post-dated that cutoff. *Id.* The Supreme Court affirmed the lower court's decision "that evidence of 'changed prison conditions' after that date would not be admitted," deeming the decision to be "within the sound discretion" of the court. *Plata*, 563 U.S. at 523. While courts retain discretion to rely on "developments that postdate the pleadings and pretrial motions," *Farmer v. Brennan*, 511 U.S. 825, 845 (1994), the Supreme Court has never held that it would be proper to do so in a way that up-ends standard rules of trial practice prohibiting unfair surprise. *See Plata*, 563 U.S. at 523.

In this case, as in *Plata*, the Court should exclude any evidence of changed prison conditions that post-date the July 14, 2017 discovery cutoff. Defendant had a duty to provide such discovery months prior to trial, if it intended to rely on such evidence. For MDOC to disclose such evidence now, on the eve of trial, would not comport with the purpose of open discovery and should not be allowed

## II. Permitting Defendant to rely on evidence of changed conditions that post-dates the discovery cutoff would also violate the Federal Rule of Evidence's bar on evidence that is more prejudicial than probative.

Under Federal Rule of Evidence 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

presenting cumulative evidence."  Fed. R. Evid. 403.  Here, evidence of changed conditions that post-dates the discovery cutoff would not only be unfairly prejudicial for the reasons stated above, it would also result in "confusi[on]," "undue delay," and "wasting time."

To establish that any alleged changes at EMCF since the discovery cutoff had sufficiently ameliorated conditions so as to render the case moot, MDOC would have the "heavy burden" of making it "absolutely clear that [its] allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal punctuation and citation omitted); *see also Jordan v. Fisher*, 823 F.3d 805, 809 n.4 (5th Cir. 2016) (applying *Laidlaw* to conclude that claim challenging lethal injection drugs used by Mississippi Department of Corrections was not mooted by the state's present inability to purchase the drug, because it was not "absolutely clear" that the state could not resume its offending activity by purchasing more in the future).

Even with the assistance of the improper element of surprise, Defendant would struggle to make such a showing here. While the Fifth Circuit does provide "government actors in their sovereign capacity" a rebuttable presumption that "formally announced changes to official governmental policy are not mere litigation posturing," *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009), that presumption does not apply here and, even if it did, it would be soundly rebutted. The companies that operate EMCF on a day-to-day basis, hire staff, and draft the policies and procedures applicable at EMCF (MTC, a for-profit corporation headquartered in Utah, and Centurion, a for-profit corporation headquartered in Missouri) are not "government actors in their sovereign capacity." Moreover, in the unlikely event that Mississippi officials overhauled the policies applicable to EMCF on the eve of trial, the nearly seven-year

record in this case would provide ample evidence that it was not "absolutely clear" that such belated changes would endure or impact the practices shaping conditions at EMCF.

Throughout the litigation of this case, Plaintiffs have provided ample evidence that actual practices at EMCF diverge sharply from the prison's written policies. *See, e.g.*, ECF No. 506-8, at 41-42, 126, 176-78 (medical staff fail to follow procedures for maintaining accurate medical records); ECF No. 549 at 36-37 (security staff fail to stay on the posts to which they are assigned); ECF No. 549 at 39-40 (security staff fail to conduct prisoner count according to policy); ECF No. 549 at 55-56 (Mississippi Department of Health has repeatedly cited EMCF kitchen for "critical" violations of health code); ECF No. 551-8, at 24 (mental health staff fail to conduct daily rounds on patients on suicide watch as required by Centurion policy).

Given this record, evidence of post-discovery policy and practice changes would not provide a firm basis for finding that any of Plaintiffs' claims were remedied, with no reasonable expectation of recurrence. Instead, such surprise evidence would create a confusing, fact-intensive quagmire that would tremendously complicate the trial of this case and prejudice Plaintiffs. Diving into this quagmire would waste judicial resources by further lengthening an already complex trial, and force the Court to make on-the-fly rulings that would unnecessarily risk creating multiple appealable issues. In contrast, a decision to limit the triable facts to the discovery period would conserve judicial resources and is clearly within the sound discretion of the Court. *See Plata*, 563 U.S. at 523.

III.   **If Defendant were permitted to rely on evidence of changed conditions that post-dates the discovery cutoff, a trial continuance permitting additional discovery would not remedy the prejudice to Plaintiffs.**

After five years of litigation, this case is on the eve of trial.[2] Named plaintiffs and the represented class of prisoners allege that they are now — and have for years — been living in unconstitutional conditions of confinement at the hands of Defendant. Under these circumstances, the only appropriate remedy with respect to undisclosed evidence of post-discovery conditions is exclusion. *See Promethean Insulation Technology LLC v. Sealed Air Corp.*, No. 2:13-CV-1113, 2015 WL 11027038, at *1 (E.D. Tex. Oct. 13, 2015) (denying request for continuance to cure late disclosure because the case was on the "eve of trial"). Prisoners at EMCF should not be forced to wait longer still for resolution of their claims. Accordingly, a trial continuance would not be reasonable, and the only appropriate remedy would be to exclude evidence of changed conditions that post-dates the discovery cutoff.

IV.   **Evidence of changed conditions that post-dates the discovery cutoff is distinguishable from Plaintiffs' supplemental expert reports, which relate solely to policies and practices that were in effect during the discovery period.**

Defendant may argue that Plaintiffs' Motion to Supplement Expert Reports, ECF No. 585, is in tension with the instant Motion. However, evidence of post-discovery changes is easily distinguishable from Plaintiffs' supplemental expert reports. These supplemental reports rely exclusively on evidence regarding policies and practices as they existed *during* the discovery period, not afterward. *See* ECF No. 585, at 6. Moreover, the evidence these expert reports rely upon is a combination of deposition transcripts (where both parties were present and participated) and evidence that Defendant itself produced to Plaintiffs—*i.e.,* facts that are fully known to both parties. In contrast, any evidence of post-discovery changes to EMCF policies and

---

[2] Defendant's trial delay tactics have been described in previous briefing and need not be repeated here. *See generally* ECF Nos. 445, 561.

practices remains solely in the hands of Defendant, having never been disclosed to Plaintiffs. Finally, these supplemental reports — which simply state that the opinions expressed in Plaintiffs' experts' initial reports are unchanged based on subsequently produced discovery — were disclosed to Defendant over two months prior to trial, ample time to address the brief reports. Disclosure on the eve of trial — or during trial — of new documents, opinions, and fact testimony solely within Defendant's control does not compare.  Accordingly, evidence of post-discovery changes should be excluded regardless of the outcome of Plaintiffs' separate motion to supplement their expert reports.

**Conclusion**

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order barring Defendant from admitting documents or eliciting expert or fact witness testimony concerning any alleged changes at EMCF that post-date the July 14, 2017 discovery cut-off.

RESPECTFULLY SUBMITTED, this 1st day of February, 2018.

s/Rekha Arulanantham

Gretchen Hoff Varner (admitted *pro hac vice*)
Covington & Burling LLP
One Front Street
San Francisco, CA 94111
Phone: 415-591-6000

Benjamin R. Salk (admitted *pro hac vice*)
Mark P. Gimbel (admitted *pro hac vice*)
Erin Monju (admitted *pro hac vice*)
Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Phone: 212-841-1000

Ravi Doshi (admitted *pro hac vice*)
Anna Q. Han (admitted *pro hac vice*)
Covington & Burling LLP
850 Tenth Street, NW
Washington, DC 20001
Phone: 202-662-6000

Rekha Arulanantham* (admitted *pro hac vice*)
Carl Takei (admitted *pro hac vice*)
Eric G. Balaban* (admitted *pro hac vice*)
Gabriel B. Eber (admitted *pro hac vice*)
National Prison Project of ACLU
915 15th Street, NW, 7th Floor
Washington, DC 20005
Phone: 202-393-4930; Fax: 202-393-4931
* Not admitted in DC; practice limited to federal courts

Chelsea Caveny, MS Bar #105300
Jody E. Owens, II, MS Bar #102333
Elissa Johnson, MS Bar #103852
Sarah D. Bidinger, MS Bar #105015
Southern Poverty Law Center
111 E. Capitol Street, Suite 280
Jackson, MS 39201
Phone: 601-948-8882; Fax: 601-948-8885

Elizabeth Alexander (admitted *pro hac vice*)
Law Offices of Elizabeth Alexander
1416 Holly Street NW
Washington, DC 20012
Phone: 202-291-3774

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, <u>Rekha Arulanantham,</u> hereby certify that a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all parties by the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

SO CERTIFIED, this 1st day of February, 2018.

/s/Rekha Arulanantham

Rekha Arulanantham (admitted *pro hac vice*)