```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                    NORTHERN DIVISION
```

**JERMAINE DOCKERY, ET AL.**                                      **PLAINTIFFS**

VS.                                      CIVIL ACTION NO. 3:13-cv-326-WHB-JCG

**PELICIA HALL, ET AL.**                                          **DEFENDANTS**

## OPINION AND ORDER

This cause is before the Court on two discovery-related motions filed by Plaintiffs. Having considered the pleadings, the attachments thereto, as well as supporting and opposing authorities the Court finds that neither Plaintiffs' Motion for Leave to File Supplemental Expert Reports nor their Motion for Sanctions is well taken, and that both should be denied.

### I.  Factual Background and Procedural History

The subject class action lawsuit was filed on behalf of prisoners confined at the East Mississippi Correctional Facility ("EMCF") in Meridian, Mississippi, which is designed to provide treatment and housing for mentally ill prisoners. In their Complaint, Plaintiffs allege that the conditions under which they are confined violate their Eighth Amendment right to be free from cruel and unusual punishment, and they request that Defendants be ordered to "eliminate the substantial risks of serious harm" that have allegedly resulted from, *inter alia,* inadequate medical and

mental health care, unsanitary environmental conditions, the use of excessive force by EMCF personnel, and the use of isolated confinement.[1]  By prior Order, the Court certified the case to proceed as a class action consisting of one General Class, known as the EMCF Class, and three Subclasses: the Isolation Subclass, the Mental Health Subclass, and the Units 5 and 6 Subclass.  See Opinion and Order [Docket No. 257].  Membership of the General Class Subclasses is defined as follows:

> 1.  The EMCF Class: All persons who are currently, or will be, confined at the East Mississippi Correctional Facility.
>
> 2.   The Isolation Subclass: All persons who are currently, or will be, subjected to Defendants' policies and practices of confining prisoners in conditions amounting to solitary confinement at the East Mississippi Correctional Facility.
>
> 3.   The Mental Health Subclass: All persons who are currently, or will be, subjected to Defendants' mental health care policies and practices at the East Mississippi Correctional Facility.
>
> 4. The Units 5 and 6 Subclass: All persons who are currently, or will be, housed in Units 5 and 6 at the East Mississippi Correctional Facility.

Id. at 43.  The Motion of Defendants to appeal the decision by which the classes were certified was denied by the United States Court of Appeals for the Fifth Circuit.  See Dockery v. Fisher, Appeal No. 15-90110.

During the course of litigation, Plaintiffs designated several

---

[1]  A detailed account of Plaintiffs' specific factual allegations can be found in Dockery v. Hall, Civil Action No. 3:13-cv-326, slip op., (S.D. Miss. Sept., 29, 2015).

2

expert witnesses including Eldon Vail ("Vail"), Diane Skipworth ("Skipworth"), Madeleine LaMarre ("LaMarre"), Dr. Marc Stern ("Stern"), Dr. Bruce Gage ("Gage"), and Dr. Teddy Kupers ("Kupers"). Expert Reports were submitted by each of these witnesses on December 29, 2016, and Rebuttal Reports were submitted by Vail and Skipworth on March 23, 2017. Plaintiffs now seek to supplement the reports of their expert witnesses. The requested supplementation does not include the offering of new substantive opinions or theories. Instead, Plaintiffs seek to supplement their expert reports (1) to identify additional materials, some of which they argue were received after the close of discovery, that were reviewed by each expert, and (2) to provide that that review did not alter any of their initial opinions. The following exemplifies the supplementation requested by Plaintiffs:

> After submitting my March 2017 Rebuttal Report, I reviewed the documents and videos listed in Exhibit 1. These material were produced to Plaintiffs after my December 29, 2016 expert report, and address conditions and operations at EMCF through July 2017. Based on my review of the documents and videos in Exhibit 1, I reaffirm the opinions listed in my December 2016 Expert Report and March 2017 Rebuttal Report, which continue to apply to conditions and operations at EMCF in 2017. I continue to believe, as I stated in my December 2016 Report, that EMCF "is and remains a very dangerous prison," and "[t]here is clearly a substantial risk of serious harm at EMCF on a current on-going basis."

Mot. to Supp. [Docket No 584], Ex. 1 (Proposed Vail Supp.), ¶ 3. Plaintiffs also seek sanctions based on the untimely production of the discovery materials.

3

**II.  Discussion**

The designation of expert witnesses is governed by Rule 26 of the Federal Rules of Civil Procedure.  Under Rule 26, parties are required to disclose "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705", and the "disclosure must be accompanied by a written report[2] – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case ..."  FED. R. CIV. P. 26(2)(A) and (B).  The disclosure of expert witnesses must be made "at the times and in the sequence that the court orders" and must be supplemented "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or as ordered by the court."  Id. at 26(2)(D)&(E) and 26(e), respectively.

Plaintiffs acknowledge that under the Local Rules of this Court, supplements to expert reports must be submitted by the close

---

[2]  The report required of an expert witness must disclose (1) a complete statement of his or her opinions and the bases/reasons therefor; (2) the facts/data considered in forming the opinions; (3) any exhibits that will be used to summarize or support the opinions; (4) his or her qualifications for rendering an expert opinion; (5) certain other cases in which the witness testified as an expert; and (6) the rate at which he or she is being compensated.  See Fed. R. Civ. P. 26(2)(B)(i-vi).

4

of discovery, see Local Rule 26(a)(5), which in this case was July 14, 2017. To determine whether Plaintiffs should be permitted to now supplement their expert reports, the Court considers the following four factors: "(1) the explanation for the failure to submit a complete report on time; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." Reliance Ins. Co. v. Louisiana Land and Exploration Co., 110 F.3d 253, 257 (5th Cir. 1997)(alterations in original)(citation omitted). As regards the first factor, Plaintiffs argue that they were precluded from supplementing their export reports before the discovery deadline because Defendants produced a vast quantity of discovery materials – described by Plaintiffs as a "massive dump of thousands of pages of documents" – either shortly before the close of discovery or within the two-week period thereafter. Although the untimely receipt of discovery materials may justify the supplementing of an expert report, see e.g. Droplets, Inc. v. Overstock.com, Inc., 2015 WL 510317, at *1 (E.D. Tex. Jan. 6, 2015), the Court finds too much time has transpired between the receipt of the late discovery responses and Plaintiffs' moving to supplement their expert reports to give credence to this proffered explanation.

Here, again, the period for discovery ended on July 14, 2017, and Plaintiffs claim that Defendants produced over 10,000

additional pages of discovery after that date. Plaintiffs, however, have not offered any explanation for the five-month delay between their receipt of the albeit belated discovery responses and their experts' having submitted supplemental reports. There is likewise no explanation for the facts that (1) each of the six expert witnesses completed his or her supplemental report within a two day period and (2) each of the six experts authored supplemental reports that are nearly identical in language and content. Additionally, some of the discovery materials reviewed by the experts in conjunction with the proposed supplemental reports, namely the depositions conducted by the parties, were clearly available for review long before the discovery period closed. For these reasons, the Court finds Plaintiffs have not provided a satisfactory explanation for their expert witnesses' failure to submit their supplemental reports at an earlier time and, therefore, that this factor weighs against granting leave to supplement.

As regards the second factor, the Court finds no basis for disputing the importance of the experts' testimony in this case and, therefore, that this factor weighs in favor of granting leave to supplement.

As to the third factor, i.e. prejudice to Defendants, the Court finds this factor weighs against granting leave to supplement. As explained by Defendants, their trial strategy was

6

dependent on the expert reports that were produced in December of 2016. By operation of Rule 26, these reports were required to (1) provide a complete statement of each expert's opinions and the bases/reasons for those opinions, and (2) identify the facts and data considered by each expert when formulating his or her opinions in this case. After reviewing the expert reports, Defendants made decisions with respect to the type(s) of expert witnesses to designate, the deposing of witnesses, and whether to challenge Plaintiffs' experts under Daubert. To permit Plaintiffs to supplement the reports of their experts to include new facts and data in support of their opinions would necessarily prejudice Defendants as the latter does not now have any ability to counter and/or defend against the newly supplemented opinions.

Finally, as regards the fourth factor, it is likely that a continuance in this case could cure any prejudice resulting from permitting Plaintiffs to supplement their expert reports at this time. Granting a continuance in this case, however, is not as available a remedy as might exist in other cases. First, the Court has had to make significant changes in its schedule to accommodate the parties who are expecting that the bench trial in this case will last as long as eight weeks. Continuing the case at this time will require the Court to again clear an eight-week block of time in its schedule, and again displace any litigants who have cases pending during that time period. Second, Plaintiffs have

7

repeatedly stressed that their claims need to be tried in order to abate the unconstitutional conditions in which they are allegedly being housed.  See e.g. Mem. [Docket No. 538], 9 (Plaintiffs arguing that "prejudice cannot be cured by a continuance of trial, because in this case seeking injunctive relief for ongoing constitutional violations, further delays would only cause further irreparable harm.").  Third, as discussed above, Plaintiffs have not explained the reason all six of their expert witnesses produced supplemental reports within a two-day period, nor have they provided an explanation as to the reason(s) their experts could not have earlier reviewed the discovery materials produced by Defendants (even those materials that were produced after the discovery period ended) and authored their nearly identical supplemental expert reports.  Had Plaintiffs sought leave to supplement in October or November of 2017, Defendants could have been afforded an opportunity to amend/supplement their expert designations without infringing on the March of 2018 trial date. Instead, Plaintiffs waited until Defendants had filed their Daubert challenges and dispostive motions, and the anticipated eight-week trial had not only been scheduled but was set to begin in approximately two months, before seeking to supplement their expert reports.  Under these circumstances, the Court finds a continuance is not an available remedy in this case.

Thus, having considered the pertinent factors, Plaintiffs'

8

Motion for Leave to File Supplemental Expert Reports will be denied.

Plaintiffs also seek sanctions against Defendants for the latters' having produced documents and other materials after the close of discovery. Although the parties agree that discovery sanctions are governed by Rule 37 of the Federal Rules of Civil Procedure, they disagree as to which particular subsection of Rule 37 should be applied in this case. Specifically, Plaintiffs argue that the issue of sanctions should be decided under Rule 37(b)(2), which provides, in relevant part:

> If a party or a party's officer, director, or managing agent – or a witness designated under Rule 30(b)(6) or 31(a)(4) – fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey

>any order except an order to submit to a physical or mental examination.

Defendants, however, argue that the issue should be decided under Rule 37(c), which provides, in relevant part:

>If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Rule 26(e), in turn provides:

>A party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response:
>
>(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
>(B) as ordered by the court.

On review, the Court finds that this is not a case in which Defendants failed to provide or permit discovery during the applicable discovery period such as would permit the awarding of sanctions under Rule 37(b)(2). Instead, it appears that the discovery violation in this case involves the failure of Defendants to timely supplement their prior responses to requests for production and, therefore, that Rule 37(c) is the applicable measure for awarding sanctions. To determine whether Defendants' failure to timely supplement their discovery responses was

10

"substantially justified" or "harmless" for the purpose of Rule 37(c), the Court considers the same four factors as it did above, i.e. (1) the explanation for the failure to timely disclose the evidence; (2) the importance of the evidence; (3) the potential prejudice to the opposing party in allowing the evidence; and (4) the availability of a continuance to cure any prejudice resulting from the late disclosure. See e.g. CG, Inc. v. TXU Min. Co., L.P., 565 F.3d 268, 280 (5th Cir. 2009).

Here, the Court finds Defendants have provided an adequate explanation for the late disclosure of some of the discovery materials. Specifically, the discovery requested in this case necessarily included an on-going review of EMCF operations, which meant that discoverable information was constantly being created during the discovery period itself. This newly acquired information thereafter had to be reviewed by counsel and reproduced before it could be furnished to Plaintiffs' counsel. While this does not explain the production of all of the documents/video produced after the close of discovery, the Court finds it adequately explains the reason(s) for at least some of the belated discovery responses. Accordingly, the Court finds this factor weighs in favor of finding that the untimely production of discovery was substantially justified.

As to the second factor, both parties have argued, in various pleadings before the Court, that the discovery produced by

Defendants is import in this case. As to the third and fourth factors, the Court finds that any prejudice that may have resulted to Plaintiffs because of the two-week delay in receiving the supplemental discovery response has been cured by the continuances previously granted by the Court. Indeed, based on the prior continuances, Plaintiffs will have had more than seven months to review the late discovery materials, and prepare for trial. Thus, the Court finds the second, third, and fourth factors all weigh in favor of finding that the late production of discovery materials in this case was harmless.

Accordingly, having considered the relevant factors, the Court finds that the late production of discovery materials in this case was either substantially justified or harmless for the purpose of Rule 37(c) and, therefore, that Plaintiffs' Motion for Sanctions should be denied.

## II. Conclusion

For the forgoing reasons:

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Leave to File Supplemental Expert Reports [Docket No. 584] is hereby denied.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Sanction Pursuant to Rule 37 [Docket No. 537] is hereby denied.

12

SO ORDERED this the 8th day of February, 2018.

s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE

`