IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JERMAINE DOCKERY, ET AL.                          PLAINTIFFS

VS.                        CIVIL ACTION NO. 3:13-cv-326-WHB-JCG

PELICIA HALL, ET AL.                              DEFENDANTS

### OPINION AND ORDER

This cause is before the Court on two Motions filed by Defendants. Having considered the pleadings, the attachments thereto, as well as supporting and opposing authorities the Court finds that neither Defendants' Motion for Decertification nor their Motion for Partial Summary Judgment is well taken, and both should be denied.

### I.  Factual Background and Procedural History

The subject lawsuit was filed on behalf of prisoners confined at the East Mississippi Correctional Facility ("EMCF") in Meridian, Mississippi, which is designed to provide treatment and housing for mentally ill prisoners. In their Complaint, Plaintiffs allege the conditions under which they are confined violate their Eighth Amendment right to be free from cruel and unusual punishment, and they request that Defendants be ordered to "eliminate the substantial risks of serious harm" that have allegedly resulted from, *inter alia,* inadequate medical and mental health care, unsanitary environmental conditions, the use of excessive force by EMCF personnel, and the use of isolated confinement.

The factual allegations in the Complaint are divided into several categories, the first of which is labeled "Solitary Confinement". As regards this category, Plaintiffs allege that although prisoners who are placed in solitary confinement should be permitted one hour of out-of-cell time per day to shower or have yard time, they often go days, and sometimes weeks, without being permitted any out-of-cell time. See Compl., ¶¶ 25-27. Plaintiffs also complain that numerous problems allegedly exist in the units in which they are housed including: (1) toilets in the units do not function for long periods of time, and that feces, urine, food, and other debris covers the floors and walls; (2) the units are infested with vermin; (3) some prisoners do not have working light bulbs in their cells; while others are subjected to "bright artificial light around the clock"; and (4) the noise in the units "is often deafening". Id. at ¶¶ 29-35. Plaintiffs further allege that prisoners in solitary confinement are beaten and/or ignored by EMCF personnel, and are at risk of inmate-on-inmate violence. Id. at ¶¶ 36-37.

The second category is labeled "Mental Health Care". As regards this category, Plaintiffs allege: (1) they receive little, if any, individual or group mental health treatment; (2) they are over-medicated with tranquilizing anti-psychotic medications; (3) the symptoms of their mental diseases are exacerbated by the conditions under which they are housed; and (4) they are subjected

2

to disciplinary actions if they attempt to seek help from the medical staff. Id. at ¶¶ 79-82. Plaintiffs further allege: (1) they have *de minis* contact with psychiatrists; (2) they are given little to no opportunity to discuss their symptoms or problems with mental health care providers; and (3) that psychiatric medications are often prescribed by psychiatrists who have not evaluated or assessed the prisoners but, instead, are simply rubber-stamping recommendations made by insufficiently trained personnel. Id. at ¶¶ 75-112.

The third category is labeled "Medical Care". As regards this category, Plaintiffs allege: (1) EMCF has insufficient staff to provide adequate medical treatment for prisoners; (2) they are often required to wait long periods of time before being seen by a healthcare provider; and (3) prisoners are often treated by nurses regardless of the nature or seriousness of their medical problems. Id. at ¶¶ 113-20. Plaintiffs further allege that they do not always receive their prescribed medications, and that there is insufficient documentation to determine whether their medications are being given or taken as prescribed. Id. at ¶¶ 121-23. Finally, Plaintiffs allege that (1) they are denied treatment for acute or chronic pain and other medical conditions including diabetes and hypertension; (2) they receive untimely and insufficient dental and other medical care; (3) they are required to wait extended periods of time to see specialists, for example

ophthalmologists; and (4) recommended treatment plans and corrective surgeries are often denied by prisoner officials. Id. at ¶¶ 124-89.

The fourth category is labeled "Abuse and Excessive Force by Staff". As to this category, Plaintiffs allege that security officers at EMCF often "use excessive force with impunity and with no oversight." Id. at ¶ 190. Plaintiffs further allege that EMCF security officers and staff (1) receive insufficient training; (2) frequently use chemical agents and physical force without warning and in the absence of immediate threat of danger or resistance from the prisoners; and (3) deny requests for medical care by prisoners who have been subjected to physical force or chemical agents. Id. at ¶¶ 191-202. According to Plaintiffs, EMCF personnel use chemical agents and force against prisoners regardless of their pre-existing medical or psychiatric problems. Id. at ¶¶ 203-08.

The fifth category is labeled "Failure to Protect Prisoners From Violence". As to this category, Plaintiffs allege that EMCF fails to protect prisoners from extortion, bodily and sexual assaults, and other threats of violence from other inmates. Id. at ¶ 209. Plaintiffs allege that in some cases, EMCF personnel have actively arranged and enabled inmate-inmate violence. Id. at ¶¶ 210-20. In other cases, EMCF personnel have allegedly acted with deliberate indifference to that violence by (1) failing to ensure the proper function of safety equipment; (2) failing to maintain

4

adequate staff; (3) failing to remove weapons and dangerous objects from prisoners; and (4) failing to remove prisoners from potentially dangerous situations.  Id. at ¶¶ 221-32.

The sixth category is labeled "Sanitation and Environmental Conditions".  In this section, Plaintiffs allege that (1) there are multiple broken toilets, sinks, and showers throughout EMCF; (2) food, excrement, and other debris litter the inmate cells and units; (3) there is soot, and often smoke, from fires that have been started by prisoners; (4) they are required to wear clothing and sleep on bedding that has become saturated because of faulty water pipes; and (5) there is poor ventilation throughout the facility and air ducts and vents are not routinely cleaned.  Id. at ¶¶ 234-43.  As to the seventh category, which is labeled "Nutrition and Food Safety", Plaintiffs allege that they are "being deliberately underfed and malnourished."  Nearly sixty percent of reviewed medical records purportedly indicate significant weight loss in patients after their arrival at EMCF.  Id. at ¶¶ 244-50.

Next, in their Complaint, Plaintiffs allege that Mississippi prison officials have been indifferent to the problems that exist at EMCF.  First, Plaintiffs allege that the officials have known of the problems existing at EMCF for several years, but have failed to take action to remedy them.  Id. at ¶¶ 251-53. Second, Plaintiffs allege that prison officials have continued to renew and/or enter additional contracts with private prison vendors even though the

5

management and health care services provided by those vendors have been criticized, and the new contracts further reduce the medical and mental health care services received by EMCF prisoners. According to Plaintiffs, the prison officials do not monitor or engage in any oversight of the private prison vendors. Id. at ¶¶ 254-62.  Third, Plaintiffs allege that their grievances regarding the care and conditions at EMCF have generally been either (1) answered with intimidation, coercion, obstruction, or threats from the staff, or (2) have not been answered at all because the prison officials either lose or ignore grievances filed by prisoners under the Administrative Remedy Program.  Id. at ¶¶ 263-83.

Based on these allegations, Plaintiffs filed a Complaint in this Court seeking relief under 42 U.S.C. § 1983 against the Commissioner, the Chief Medical Officer, and the Deputy Commissioner for Institutions of the Mississippi Department of Corrections ("MDOC").  By prior Order, the Court certified the case to proceed as a class action consisting of one General Class, known as the EMCF Class, and three Subclasses: the Isolation Subclass, the Mental Health Subclass, and the Units 5 and 6 Subclass.  See Opinion and Order [Docket No. 257].  Membership of the General Class Subclasses is defined as follows:

> 1.  The EMCF Class: All persons who are currently, or will be, confined at the East Mississippi Correctional Facility.
>
> 2.  The Isolation Subclass: All persons who are currently, or will be, subjected to Defendants' policies

6

and practices of confining prisoners in conditions amounting to solitary confinement at the East Mississippi Correctional Facility.

3. The Mental Health Subclass: All persons who are currently, or will be, subjected to Defendants' mental health care policies and practices at the East Mississippi Correctional Facility.

4. The Units 5 and 6 Subclass: All persons who are currently, or will be, housed in Units 5 and 6 at the East Mississippi Correctional Facility.[1]

Id. at 43. The Motion of Defendants to appeal the decision by which the classes were certified was denied by the United States Court of Appeals for the Fifth Circuit. See Dockery v. Fisher, Appeal No. 15-90110.

As to the EMCF Class and identified subclasses, Plaintiffs request relief under Section 1983 on claims that their constitutional rights, as protected by the Eighth and Fourteenth Amendments, have been violated as follows:

Claim One – The policies and practices at EMCF subject members of the EMCF Class to a substantial risk of serious harm and injury from inadequate medical care, including dental care, optical care, and other health-related services.

Claim Two - The policies and practices at EMCF subject members of the Mental Health Subclass to a substantial risk of serious harm and injury from inadequate mental health care.

---

[1] Unit 5 houses inmates in long-term segregation, and Unit 6 houses inmates in short-term segregation.

<u>Claim Three</u> - The policies and practices at EMCF subject members of the Isolation Subclass to a substantial risk of serious harm and injury from housing them in conditions that amount to solitary confinement, including risks of harm from inadequate physical exercise, filthy and unsafe environmental conditions, inadequate nutrition, inadequate mental health treatment, and conditions of extreme social isolation and sensory deprivation.

<u>Claim Four</u> - The policies and practices at EMCF subject members of the EMCF Class to a substantial risk of serious harm and injury from the infliction of excessive force.

<u>Claim Five</u> - The policies and practices at EMCF subject members of the EMCF Class to a substantial risk of serious harm and injury by failing to protect them from violence, ignoring emergency situations, and enabling violent attacks on prisoners.

<u>Claim Six</u> - The policies and practices at EMCF subject members of the Units 5 and 6 Subclass to a substantial risk of serious harm and injury from dangerous environmental conditions, including vermin, exposure to smoke and other toxic substances, filthy cells and fixtures, broken plumbing, inoperable lighting, constant illumination, and inadequate ventilation.

<u>Claim Seven</u> - The policies and practices at EMCF subject members of the EMCF Class to a substantial risk of serious harm and injury by providing inadequate

nourishment to maintain health, and by serving food in an
unsanitary and unsafe manner.

Through these claims, Plaintiffs seek a declaration that the
current policies and practices at EMCF have violated their
constitutional rights as protected under the Eighth Amendment.
Plaintiffs also request that the named prison officials be enjoined
from continued use of the policies and practices now being
implemented at EMCF, and that they be required to implement a plan
to eliminate the substantial risks of harm that result from (1)
inadequate medical and mental health care, (2) unsanitary and
dangerous environmental conditions, (3) the use of excessive force
by EMCF staff, (4) inmate-on-inmate violence, (5) malnutrition and
unsanitary food preparation and delivery, and (6) the use of
isolated confinement.  At a minimum, Plaintiffs request that the
court-ordered plan: (1) prohibit solitary confinement under
conditions of social isolation and sensory depravation; (2) provide
timely and adequate treatment for both mental and physical illness;
(3) protect prisoners from excessive force at the hands of EMCF
staff and from harm from other prisoners; (4) require that
prisoners be housed in safe, clean, and sanitary conditions; (5)
provide prisoners nutritionally adequate, and safely prepared and
served meals; and (6) require that prison officials monitor the
performance of all private prison contractors.  Finally, Plaintiffs
request costs and attorneys' fees under 42 U.S.C. § 1988.

Defendants have now moved for decertification of the classes and for partial summary judgment on Plaintiffs' claims Three through Seven.

## II.   Discussion

### A.   Motion for Decertification

For a lawsuit to proceed as a class action under the Federal Rules of Civil Procedure, all of the requirements of Rule 23(a), and at least one of the requirements of Rule 23(b) must be satisfied.  See FED. R. CIV. P. 23(a) and (b).  See also Allison v. Citgo Petroleum Corp., 151 F.3d 402, 411 (5th Cir. 1998).  Here, the Court previously found that Plaintiffs had shown (1) the Rule 23(a) requirements of numerosity, commonality, typicality, and adequate representation were satisfied, and (2) that Rule 23(b)(2), i.e. that Defendants allegedly "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole", had likewise been satisfied.  See Opinion and Order [Docket No. 257].  Defendants now seek decertification of the classes as permitted by Rule 23(c)(1)(C), which provides in relevant part: "An order that grants or denies class certification may be altered or amended before final judgment."  In support of their Motion for Decertification, Defendants argue that, following discovery and substantive changes at EMCF, Plaintiffs can no longer

10

satisfy the commonality requirement of Rule 23(a), and the injunctive relief they seek is not sufficiently specific so as to satisfy Rule 23(b).

As to the Rule 23(a) challenge, the United States Supreme Court has held that commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349-50 (2011)(quoting General Tel. Co. Of Sw. V. Falcon, 446 U.S. 318, 330 (1980)).

> This does not mean merely that they have all suffered a violation of the same provision of law.... [Instead,] their claims must depend upon a common contention ... [that is] of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

Id. At 350 (alterations in original(internal citations omitted).

Here, Defendants argue that the commonality requirement is not satisfied because there are distinctions among the prisoners with respect to, *inter alia*: (1) the areas of the prison in which they are housed, (2) problems that are unique to specific areas in which the prisoners are housed[2], and (3) the nature of their medical/psychological problems, as well as the type and frequency of care they receive for those problems.  Plaintiffs counter that

---

[2]  For example, Defendants argue that the problem with prisoner assaults was "concentrated in specific parts of EMCF, not facility-wide."  Mem. In Supp. Of Mot. For Decert. [Docket No. 530], 14.

while there are differences among the prisoners, they are all subjected to the same policies and practices at EMCF, which place them at a substantial risk for serious harm. For example, Plaintiffs argue that although they are housed in different units, they are all subjected to a substantial risk of serious harm from inmate-on-inmate violence because EMCF maintains policies and practices that result in under-staffing and lax security. Likewise, Plaintiffs argue that although they have different medical and psychological problems, they are all subjected to a substantial risk of serious harm because EMCF maintains policies and practices that result in delayed access to inadequate healthcare and medications.

Having reviewed the pleadings, the Court finds the Rule 23(a) commonality requirement remains satisfied at this juncture. As explained by the United States Court of Appeals for the Ninth Circuit, in a prison-based class action lawsuit:

> Here, a proper understanding of the nature of the plaintiffs' claims clarifies the issue of commonality. What all members of the putative class and subclass have in common is their alleged exposure, as a result of specified [prison] policies and practices that govern the overall conditions of health care services and confinement, to a substantial risk of serious future harm to which the defendants are allegedly deliberately indifferent.... [A]lthough a presently existing risk may ultimately result in different future harm for different inmates — ranging from no harm at all to death — every inmate suffers exactly the same constitutional injury when he is exposed to a single [prison] policy or practice that creates a substantial risk of serious harm. See, e.g., Farmer v. Brennan, 511 U.S. 825, 834 (1994); Helling v. McKinney, 509 U.S. 25, 33 (1993) cf. Brown v.

12

Plata, 563 U.S. 493, 501)("For years the medical and
mental health care provided by California's prisons has
fallen short of minimum constitutional requirements and
has failed to meet prisoners' basic health needs.
Needless suffering and death have been the well-
documented result.").

The putative class and subclass members thus all set
forth numerous common contentions whose truth or falsity
can be determined in one stroke: whether the specified
... policies and practices to which they are all
subjected [in prison] expose them to a substantial risk
of harm. See Wal-Mart Stores, Inc., 564 U.S. 350-51. The
... [prison policies] to which all members of the class
are subjected ... are the "glue" that holds together the
putative class and the putative subclass; either each of
the policies and practices is unlawful as to every inmate
or it is not. That inquiry does not require us to
determine the effect of those policies and practices upon
any individual class member (or class members) or to
undertake any other kind of individualized determination.

The district court thus did not abuse its discretion in
deciding to structure the litigation in the form of a
class of "all prisoners who are now, or will in the
future be, subjected to the medical, mental health, and
dental care policies and practices of the [prison]."
After all, every inmate in [EMCF] custody is necessarily
subject to the same medical, mental health, and dental
care policies and practices of [that facility]. And any
one of them could easily fall ill, be injured, need to
fill a prescription, require emergency or specialist
care, crack a tooth, or require mental health treatment.
It would indeed be surprising if any given inmate did not
experience such a health care need while serving his
sentence. Thus, every single [prison] inmate faces a
substantial risk of serious harm if [EMCF] policies and
practices provide constitutionally deficient care for
treatment of medical, dental, and mental health needs. As
Justice Kennedy explained in Plata, inadequate health
care in a prison system endangers every inmate: "Even
prisoners with no present physical or mental illness may
become afflicted, and all prisoners in California are at
risk so long as the State continues to provide inadequate
care.... [P]risoners who are not sick or mentally ill ...
[are] in no sense remote bystanders in California's
medical care system. They are that system's next
potential victims." Id. 563 U.S. at 532.

13

Parsons v. Ryan, 754 F.3d 657, 678-79 (9th Cir. 2014)(alterations
in original).  Because Plaintiffs claim that they are all subjected
to the same policies and practices at EMCF, which expose them to
the same substantial risks of serious harm, the Court finds the
Rule 23(a) commonality requirement remains satisfied.

Next, Defendants argue that the requirement of Rule 23(b) is
not satisfied because not all of the class members have been
exposed to and/or suffered the same harm and, therefore, the Court
would be unable to craft specific injunctive relief to each member
of the class.  As to the Rule 23(b)(2) requirement, the Supreme
Court has held:

> The key to the (b)(2) class is the indivisible nature of
> the injunctive or declaratory remedy warranted — the
> notion that the conduct is such that it can be enjoined
> or declared unlawful only as to all of the class members
> or as to none of them. In other words, Rule 23(b)(2)
> applies only when a single injunction or declaratory
> judgment would provide relief to each member of the
> class. It does not authorize class certification when
> each individual class member would be entitled to a
> different injunction or declaratory judgment against the
> defendant.

Wal-Mart Stores, Inc., 564 U.S. at 360.

Here, the class members allege that they are subjected to the
same policies and procedures at EMCF, which necessarily establishes
that Defendants have "acted or refused to act on grounds that apply
generally to the class." FED. R. CIV. P. 23(b)(2). See also Yates
v. Collier, 868 F.3d 354, 368 (5th Cir. 2017)(finding that Rule
23(b) was satisfied in a case in which putitive class members

14

alleged that they had been subjected to the same prison policies that had exposed them to the same substantial risk of serious harm.). As to the specificity requirement, the United States Court of Appeals for the Fifth Circuit requires that sufficient "content" be given "so that final injunctive relief may be crafted to describe in reasonable detail the acts required." Id. at 368 (internal citations omitted). Rule 23(b), however, "does not require that every jot and tittle of injunctive relief be spelled out at the class certification stage, it requires only 'reasonable detail' as to the 'act required'". Id. (quoting M.D. ex rel. Stukenberg v. Perry, 675 F.3d 832, 848 (5th Cir. 2012)).

Here, the Court finds Plaintiffs have provided reasonable detail with respect to the actions they claim are necessary to abate the substantial risks of serious harm to which they are subjected. See e.g. Mem. [Docket No. 530], at 25-29 (itemizing the suggested forms of injunctive relief to include installing tamper proof locking mechanisms, increasing staff, conducting more frequent prisoner checks, providing sufficient illumination in lavatories, cleaning ventilation systems, reducing the number of cancellations of sick care requests and chronic care appointments because of custody-related reasons, and properly equipping medical and dental examination rooms).

In sum, because Plaintiffs have alleged that they are subjected to the same policies and procedures at EMCF, and have

provided reasonable detail with respect to the nature and type of injunctive relief they request, the Court finds the requirements of Rule 23(b) remain satisfied in this case.  Upon finding that the requirements of Rule 23 remain satisfied, Defendants' Motion for Decertification will presently be denied.


**B.   Motion for Partial Summary Judgment**

**a.   Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. <u>Id.</u> As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. <u>Id.</u> at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." <u>Kennett-Murray Corp. v. Bone</u>, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. <u>National Screen Serv. Corp. v. Poster Exchange, Inc.</u>, 305 F.2d 647, 651 (5th Cir. 1962).

**b.   Discussion**

Plaintiffs claim that the conditions existing at EMCF violate their rights as protected under the Eighth Amendment to the United State, which prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.  While this Amendment "does not mandate comfortable prisons", it does not "permit inhumane ones." Ball v. LeBlanc, 792 F.3d 584, 592 (5th Cir. 2015)(quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)).

> To plead an Eighth Amendment violation based on the conditions of an inmate's confinement, a plaintiff must allege conditions that "pos[e] a substantial risk of serious harm." Farmer, 511 U.S. at 834.  The plaintiff must also allege that the defendant prison officials were deliberately indifferent to the inmate's health or safety. Id. This requires more than an allegation of mere negligence, but less than an allegation of purpose or knowledge. Id. at 835-36.  Rather, a prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

> Whether a risk is substantial and the threatened harm is serious represents an objective test; whether prison officials consciously disregarded the risk represents a subjective one.  Ball, 792 F.3d at 592.  Furthermore, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842 (internal citation omitted).  For instance, "if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being

18

sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." Id. at 842-43 (internal quotation marks omitted).

Hinojosa v. Livingston, 807 F.3d 657, 664-66 (5th Cir. 2015).

Defendants have moved for summary judgment with respect to the claims of the plaintiffs in the Isolation Subclass and the Unit 5 and 6 Subclass (i.e. Claims Three and Six) who allege that they are subjected to unsafe environmental conditions, which include exposure to filthy and unsanitary cells and showers, inadequate lighting and ventilation, and pests. The Fifth Circuit has held that "filthy cell conditions may constitute an Eighth Amendment violation." See Harper v. Showers, 174 F.3d 716, 720 (5th Cir. 1999). See also Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989)(recognizing that "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time").

In support of their Motion for Partial Summary Judgment, Defendants argue that the evidence produced by Plaintiffs fails to "demonstrate anything more than isolated incidents of uncomfortableness", which is insufficient to state a constitutional violation. Contrary to this claim, Plaintiffs have presented evidence tending to show that the levels of dirt and mold in the facility establish that adequate cleaning and disinfecting practices are not being followed; that the shower facilities in the

19

subject units were infested with mold and insects; that plumbing problems, including non-working toilets in prisoners' cells, were not repaired for as long as eleven days; that vermin (and the excrement therefrom) as well as cockroaches and other insects were found throughout the units; that broken light bulbs in prisoners' cells were not replaced for as long as thirty days; that blocked ventilation ducts fail to clear smoke caused by prisoner-lit fires; and that spills of bodily secretions and chemicals were not cleaned for extended periods of time.

Having considered the pleadings, the Court finds Plaintiffs have submitted sufficient evidence to show that there exists genuine issues of material fact with respect to (1) whether the unsanitary conditions existing at EMCF create a substantial risk of serious harm for the purpose of establishing an Eighth Amendment violation, and (2) whether those conditions were of such a longstanding and pervasive nature so as to permit a finding that Defendants had actual knowledge of that risk.  For these reasons, the Court will deny summary judgment as to the safety and security claims of the Isolation Subclass and the Unit 5 and 6 Subclass.

Defendants have also moved for summary judgment with respect to Plaintiffs' inadequate nutrition claims (i.e. Claim 7).  The Fifth Circuit has held that "[t]he Eighth Amendment requires that jails provide inmates with 'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" <u>Green v.</u>

Ferrell, 801 F.2d 765, 770 (5th Cir. 1986)(quoting Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir. 1977)). See also Farmer, 511 U.S. at 832 (finding that the Eighth Amendment requires that "inmates receive adequate food.").

In support of their Motion for Partial Summary Judgment, Defendants argue that the evidence shows that prisoners at EMCF receive three meals per day; there is no evidence that any prisoner received less than 2,900 calories per day; it uses dietician-approved meal plans; and it regularly inspects and cleans the kitchen areas.[3] Plaintiffs, however, have presented evidence that (1) the meals provided to inmates only consider calorie content,

---

[3] Defendants argue that its being accredited by the American Correctional Association ("ACA") belies Plaintiffs' allegations that the environmental and nutritional conditions at EMCF rise to the level of substantial risk of serious harm. See Mem. in Supp. at 10. As to ACA accreditation, the Fifth Circuit has found:

> Similarly, MDOC also argues, as to several of the injunctions, that Parchman,s accreditation by the American Correctional Association ("ACA") is proof that the conditions in question don't violate the Eighth Amendment. But it is absurd to suggest that the federal courts should subvert their judgment as to alleged Eighth Amendment violations to the ACA whenever it has relevant standards. Additionally, the ACA's limited inspections are not binding as factual findings on the magistrate or on this court. While compliance with ACA standards may be a relevant consideration, it is not *per se* evidence of constitutionality. See Ruiz v. Johnson, 37 F.Supp.2d 855 924-25 (S.D. Tex. 1999)(recognizing the limitations of ACA accreditation and noting situations where it has not equated to constitutionality), rev'd on other grounds, 178 F.3d 385.

Gates v. Cook, 376 F.3d 323, 337 (5th Cir. 2004).

and not other nutritional requirements; (2) the prison did not
abide by the dietician-prepared meal plan; (3) the amount of
available food was insufficient to feed all of the prisoners; (4)
the food given to prisoners was, at times, raw, undercooked, or
spoiled; (5) prisoners have been seen eating food left-over on
other inmates' trays and/or out of the garbage cans; and evidence
of vermin and insects was witnessed in the kitchen and on the trays
on which food is served.  Plaintiffs have also presented evidence
that concerns and complaints regarding the food served at EMCF have
been made to prison officials both by compliance officers and
inmates for an extended period of time.

Having considered the evidence, the Court finds Plaintiffs
have submitted sufficient evidence to show that there exists
genuine issues of material fact with respect to (1) whether the
nutrition provided to inmates at EMCF creates a substantial risk of
serious harm for the purpose of establishing an Eighth Amendment
violation, and (2) whether the nutrition-related concerns were
either directly reported and/or were of such a longstanding and
pervasive nature so as to permit a finding that Defendants had
actual knowledge of the nutrition-related risks.  For these
reasons, the Court will deny summary judgment as to the inadequate
nutrition claims.

Next, Defendants move for summary judgment with respect to
Plaintiffs' excessive force claims (i.e. Claim Four).  The Supreme

Court has held that prison officials may not use excessive physical force against inmates, see Hudson v. McMillian, 503 U.S. 1, 4-7 (1992), but instead must "balance the need to maintain or restore discipline through force against the risk of injury to inmates." Id. at 6.  Thus, the crucial matter to decide in excessive force claims is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7.  Additionally, in this Circuit, "to support an Eighth Amendment excessive force claim a prisoner must have suffered from the excessive force of a more than de minimis physical injury, but there is no categorical requirement that the physical injury be significant, serious, or more than minor." Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999).

In support of their Motion for Partial Summary Judgment, Defendants argue that there is no evidence that Plaintiffs are at a substantial risk of serious harm from the use of excessive force at EMCF and, even if such risk existed, there is no evidence that EMCF official have been deliberately indifferent to that risk.  To demonstrate that they have not been deliberately indifferent, Defendants cite to evidence that they provide staff training on the use of force, they investigate claims of excessive force, and they reprimand staff members who have been found to have used excessive force against inmates.

In response, Plaintiffs have cited to multiple instances in

23

which their expert witnesses opine that excessive force was applied, in particular against the psychologically impaired prison population. Plaintiffs have also presented evidence showing that there is a monthly average of twenty use-of-force incidents, and that EMCF was repeatedly found to be non-compliant with its own use-of-force policies.

Having considered the pleadings, the Court finds Plaintiffs have submitted sufficient evidence to show that there exists genuine issues of material fact with respect to (1) whether prisoners at EMCF are subjected to a substantial risk of serious harm secondary to the use of excessive force, and (2) whether the prison officials were aware of that risk. For these reasons, the Court will deny summary judgment as to the use of excessive force claim.

Finally, Defendants have moved for summary judgment with respect to Plaintiffs' safety and security claims, which are based on allegations that Plaintiffs are subjected to an unreasonable risk of serious harm from their own actions as well as from inmate-on-inmate violence (i.e. Claim Five). The Supreme Court has recognized that prison officials must "take reasonable measures to guarantee the safety of the inmates....", see Hudson v. Palmer, 468 U.S. 517, 526-27 (1984), because it is "cruel and unusual punishment to hold convicted criminals in unsafe conditions." Youngberg v. Romeo, 457 U.S. 307, 315-16 (1982). Thus, "prison

officials have a duty ... to protect prisoners from violence at the hands of other prisoners." <u>Farmer</u>. 511 U.S. at 833 (citations omitted).

In support of their Motion for Partial Summary Judgment, Defendants argue that Plaintiffs' safety and security claim is not supported by evidence demonstrating either substantial risk or deliberate indifference. First, Defendants argue that they cannot be held liable for self-inflicted serious risks that are created by the prisoners themselves. Defendants also argue that Plaintiffs have not shown a substantial risk of serious harm from inmate-on-inmate violence because, during the relevant time period, (1) EMCF had 156 correctional officers on staff, all of whom underwent extensive training; (2) the locking mechanisms at the facility are designed and function properly; and (3) the acts of violence were not so pervasive as to constitute a constitutional violation. Defendants further argue that even is a substantial risk of harm existed, there has been no showing of deliberate indifference because they have implemented aggressive programs to train correctional officers, detect and remove contraband, and identify and monitor gang-related activity.

Plaintiffs, however, have presented evidence showing that (1) mandatory guard posts at EMCF are frequently not staffed; (2) staff members routinely leave their assigned posts thereby leaving areas unsupervised; (3) required inmate counts are frequently not

conducted; (4) there is a significant gang presence as well as a wide prevalence of contraband at EMCF; and (5) the locking mechanisms on cell doors can be easily rigged to not lock. Plaintiffs have also presented evidence showing that prison officials are aware of these problems based on their having received monthly monitoring reports.

Having considered the pleadings, the Court finds Plaintiffs have submitted sufficient evidence to show that there exists genuine issues of material fact with respect to (1) whether prisoners at EMCF are subjected to a substantial risk of serious harm from inmate-on-inmate violence and (2) whether prison officials are aware of this risk.  For these reasons, the Court will deny summary judgment as to the safety and security claims.

Having found that there exists genuine issues of material fact with respect to whether conditions existing at EMCF pose a substantial risk of serious harm to the prisoners housed at that facility, and with respect to whether Defendants have acted with deliberate indifference to those risks, the Motion of Defendants for Partial Summary Judgment will be denied.

## IV.  Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that Defendants' Motion for Decertification [Docket No. 529] is hereby denied.

26

IT IS FURTHER ORDERED that Defendants' Motion for Partial Summary Judgment [Docket No. 531] is hereby denied.

SO ORDERED this the 14th day of February, 2018.

s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE

27