```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                     NORTHERN DIVISION


JERMAINE DOCKERY, ET AL.                              PLAINTIFFS


VS.                            CIVIL ACTION NO. 3:13-cv-326-WHB-JCG


PELICIA HALL, ET AL.                                  DEFENDANTS
```

## OPINION AND ORDER

This Opinion and Order is entered following the bench trial in this constitutional rights violation case in which classes of inmates challenge the conditions under which they are being housed, and seek injunctive relief to remedy those alleged violations. During trial, it became apparent that conditions at the subject prison have changed based, in part, on the appointing/hiring of new administrators, and the implementation of new policies and procedures. In order to insure that any award of injunctive relief in this case does not run afoul of the Prison Litigation Reform Act, the Court finds the impact of the changes at the prison must first be assessed. To aid in this assessment, the Court will permit the changes to be implemented for a brief period of time, and will permit the expert and other witnesses on certain issues to offer additional evidence regarding the effects of the changes at the prison.

**I.   Factual Background and Procedural History**

The subject lawsuit was filed on behalf of prisoners confined at the East Mississippi Correctional Facility ("EMCF") in Meridian, Mississippi, which is designed to provide treatment and housing for mentally ill prisoners.  Beginning in July of 2012, EMCF has been privately operated by Management and Training Corporation ("MTC") pursuant to a Residential Services Agreement ("Services Agreement") that was entered between the Mississippi Department of Corrections ("MDOC") and the East Mississippi Correctional Facility Authority. The MDOC has hired a Contract Monitor to assess, inspect, and review the manner in which the prison is operated/managed.[1]

The lawsuit was filed in May of 2013, against Christopher Epps ("Epps"), in his then capacity as Commissioner of the MDOC.  In 2014, Epps was indicted on federal charges including money laundering and fraud, which arose from allegations that he was receiving bribes and kickbacks in exchange for his awarding of MDOC contracts (including contracts related to EMCF), and his failing to report the money he was receiving to the Internal Revenue Service. See United States v. Epps, Criminal No. 3:14-cr-111 (S.D. Miss.). Epps pleaded guilty to several of the counts in the indictment, and

---

[1] The Monitor hired by MDOC is required to, *inter alia*, (1) perform ongoing assessments of EMCF; (2) conduct reviews of incident reports and inmate movement reports; (3) perform quarterly reviews of inmate records, files, facility financial reports, and program progress reports; and (4) perform an annual comprehensive review and annual review of independent inspection reports.

2

is currently serving a 235-month term of imprisonment. Pelicia Hall ("Hall"), who is the current MDOC Commissioner, has been substituted as a real party in interest pursuant to Rule 25 of the Federal Rules of Civil Procedure. The Complaint also named Dr. Gloria Perry in her official capacity as Chief Medical Officer for the MDOC, and Archie Longley in his official capacity as Deputy Commissioner for Institutions for the MDOC, as defendants. The Deputy Commissioner position is currently held by Jerry Williams, and he has likewise been substituted as a real party in interest in this case.

In their Complaint, Plaintiffs allege that the conditions at EMCF under which they are confined violate their Eighth Amendment right to be free from cruel and unusual punishment, and they seek to redress these violations under 42 U.S.C. § 1983. The relief requested includes that Defendants be ordered to "eliminate the substantial risks of serious harm" that have allegedly resulted from, *inter alia,* inadequate medical and mental health care, unsanitary environmental conditions, the use of excessive force by EMCF personnel, and the use of isolated confinement.[2] By prior Order, the Court certified the case to proceed as a class action consisting of one General Class, known as the EMCF Class, and three Subclasses: the Isolation Subclass, the Mental Health Subclass, and

---

[2] A detailed account of the factual allegations underlying Plaintiffs' claims can be found at Opinion and Order [Docket No. 257].

the Units 5 and 6 Subclass.  See Opinion and Order [Docket No. 257].[3] Declarative and injunctive relief is sought on the following claims:

> Claim One – The policies and practices at EMCF subject members of the EMCF Class to a substantial risk of serious harm and injury from inadequate medical care, including dental care, optical care, and other health-related services.
>
> Claim Two - The policies and practices at EMCF subject members of the Mental Health Subclass to a substantial risk of serious harm and injury from inadequate mental health care.
>
> Claim Three - The policies and practices at EMCF subject members of the Isolation Subclass to a substantial risk of serious harm and injury because they are housed in conditions that amount to solitary confinement. The risks of harm arise from inadequate exercise and nutrition, unsafe environmental conditions, inadequate mental health treatment, and conditions of extreme social isolation and sensory deprivation.
>
> Claim Four - The policies and practices at EMCF subject members of the EMCF Class to a substantial risk of serious harm and injury from the infliction of excessive force.

---

[3] Defendants' Motion to appeal the decision by which the classes were certified was denied by the United States Court of Appeals for the Fifth Circuit.  See Dockery v. Fisher, Appeal No. 15-90110.

>Claim Five - The policies and practices at EMCF subject members of the EMCF Class to a substantial risk of serious harm and injury by failing to protect them from violence, ignoring emergency situations, and enabling violent attacks on prisoners.
>
>Claim Six - The policies and practices at EMCF subject members of the Units 5 and 6 Subclass to a substantial risk of serious harm and injury from dangerous environmental conditions, including vermin, exposure to smoke and other toxic substances, filthy cells and fixtures, broken plumbing, inoperable lighting, constant illumination, and inadequate ventilation.
>
>Claim Seven - The policies and practices at EMCF subject members of the EMCF Class to a substantial risk of serious harm and injury by providing inadequate nourishment to maintain health, and by serving food in an unsanitary and unsafe manner.

Through these claims, Plaintiffs seek a declaration that the current policies and practices at EMCF violate their constitutional rights. Plaintiffs also request that Defendants be enjoined from continuing to use the policies and practices that give rise to the alleged constitutional violations, and be required to implement a plan to eliminate the substantial risks of harm that result from (1) inadequate medical and mental health care, (2) unsanitary and dangerous environmental conditions, (3) the use of excessive force by EMCF staff, (4) inmate-on-inmate violence, (5) malnutrition and

unsanitary food preparation and delivery, and (6) the use of isolated confinement.  At a minimum, Plaintiffs request that the court-ordered plan: (1) prohibit solitary confinement under conditions of social isolation and sensory depravation; (2) provide timely and adequate treatment for both mental and physical illness; (3) protect prisoners from excessive force at the hands of EMCF staff and from harm by other prisoners; (4) require that prisoners be housed in safe, clean, and sanitary conditions; (5) provide prisoners nutritionally adequate, and safely prepared and served meals; and (6) require that prison officials monitor the performance of all private prison contractors.  All of these claims were tried to the bench.

## II.  Discussion

To remedy the constitutional violations that allegedly exist at the EMCF, Plaintiffs seek prospective injunctive relief.  The claim for injunctive relief is governed by the Prison Litigation Reform Act ("PLRA"), codified at 18 U.S.C. § 3626, which provides:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.  The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

6

18 U.S.C.A. § 3626(a)(1).  The United States Court of Appeals for the Fifth Circuit has recognized that the "PRLA greatly limits a court's ability to fashion injunctive relief."  Ball v. LeBlanc, 792 F.3d 584, 598 (5th Cir. 2015).  Thus, before injunctive relief may be ordered, the district court:

> [M]ust find that "such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation." 18 U.S.C. § 3626(a)(1)(A). The court must also "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." Id. If, after making the necessary findings and weighing the adverse impact on the criminal justice system, the court still feels injunctive relief is required, such relief "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." Id.

Ball, 792 F.3d 598-99.

During the bench trial, Plaintiffs offered expert evidence regarding the conditions of confinement existing at EMCF.  The testimony of Plaintiffs' experts was predicated on assessments of the prison they made prior to December of 2016, the time at which they submitted their expert reports.  Plaintiffs also offered evidence documenting discreet incidents that occurred at the prison, including testimony from individual prisoners, to support their allegations that constitutional violations had occurred at the facility.  This evidence shows that significant problems existed at or near the time the lawsuit was filed.

7

During trial, however, it became evident that numerous changes have been made at the facility since the lawsuit was filed, and that many of these changes directly bear on Plaintiffs' claims. Again, Plaintiffs' claims were largely supported by testimony of expert witnesses that, in turn, was based on their assessment of the policies, practices, and conditions that existed at the prison at times prior to March of 2013 (the date the lawsuit was filed) and December of 2016 (the date on which the expert reports were filed). After these dates, the MDOC came under new leadership with Hall replacing Epps as Commissioner of the MDOC, and Williams replacing Langley as Deputy Commissioner for Institutions. Additionally, the facility came under new leadership as Frank Shaw was hired by MTC as Warden of EMCF.

With Shaw as Warden it appears that major changes have been made with respect to the physical conditions at the prison. The decrepit cell and common-area conditions that were documented as having existed when the lawsuit was filed in 2013, were not present when the facility was toured by the undersigned during trial. Shaw has implemented staffing changes including the hiring of additional corrections officers and shift managers, has fired guards and other personnel for disciplinary reasons, and has worked to both improve security and decrease the amount of contraband at the facility. For example, one of the complaints in this case is that prisoners would destroy lighting fixtures for the purpose of obtaining

8

materials with which to make shives and other weapons. The destruction of the fixtures led to the two-fold problem of inadequate lighting in the cells, and weaponized prisoners. At the time of trial, the prison was in the process of testing a new type of fixture, one that is more difficult to destroy and does not have metal components that can be fashioned into weapons. Another complaint in this case was that the locking mechanisms on cell doors were ineffective thereby permitting prisoners to leave their cells and victimize other prisoners. The testimony at trial suggested that the locking mechanisms themselves were not inadequate but, instead, the problem resulted because prisoners would tamper with the locks to prevent the mechanism from engaging. To address this problem, up-grades were made to the computer system that electronically monitors the cell doors/locks, and policies were implemented by which cell doors are manually tested by guards when prisoners are returned to their cells.

In addition to changes being made with respect to the physical conditions and security at the facility, changes were also made with respect to the provision of medical and mental care. For example, as of February of 2018, the medical area was expanded to include more space/beds and personnel to treat medical emergencies. The expanded area also includes cells designed specifically to house and monitor prisoners who are placed on suicide precautions. Prior to the expansion, such prisoners had been placed in regular

holding cells.  New policies have also been implemented with respect to the manner in which medications are distributed to prisoners.  As regards the nutrition claim, evidence was presented showing that a new company has been hired to provide nutritional services at the prison, and that new equipment for food storage and delivery are being utilized.

Had the conditions and practices at EMCF, as alleged by Plaintiffs in their Complaint and described by Plaintiffs' experts in their 2016 reports, continued to exist, Plaintiffs would likely be entitled to injunctive relief on at least some of their Section 1983 claims.  Because, however, the PLRA requires that any injunctive relief be "narrowly drawn" and "necessary to correct the violation of [a] Federal right", the Court finds it must preliminarily determine whether the constitutional violations about which Plaintiffs complain either remain in existence or have been remedied by the changes already implemented at EMCF.  The Court is particularly interested in the effect, if any, of the changes made with respect to the delivery of physical and mental health care in the facility and with staffing.

To aid in this determination, proceedings in this case will be stayed for the purpose of permitting the parties' witnesses who had been designated as experts in the areas of physical health care, mental health care, and prison staffing, to again inspect and assess the conditions presently existing in those specific areas at

EMCF. Only those experts will, thereafter, be permitted to file supplemental reports detailing the effects, if any, of the changes made at EMCF with respect to those particular areas. A bench hearing as to the supplemental reports will be scheduled as necessary.

### III. Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that proceedings in this case shall be stayed pending the receipt of supplemental expert reports. Beginning on September 1, 2018, the parties' experts in the areas of physical health care, mental health care, and prison staffing, will be permitted to inspect/assess the conditions presently existing in those specific areas at EMCF, and proffer supplemental reports detailing the effects, if any, of the changes made at EMCF to date with respect to those particular areas.

The supplemental reports of Plaintiffs' experts shall be filed on or before November 16, 2018. The supplemental reports of Defendants' experts shall be filed on or before December 14, 2018. A bench hearing relevant to the information contained in the supplemental reports will be scheduled, if necessary, during the January of 2019 term of Court.

SO ORDERED this the 24th day of August, 2018.

s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE