THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JERMAINE DOCKERY, et al.,

      Plaintiffs,

v.                                                Civil Action No. 3:13-cv-00326-WHB-JCG

PELICIA HALL, et. al.,

      Defendants.

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF EMERGENCY MOTION TO COMPEL PRODUCTION OF DOCUMENTS

On April 9, 2018, the Court concluded a seven-week bench trial on Plaintiffs' claims, subsequently finding, "[h]ad the conditions and practices at EMCF, as alleged by Plaintiffs in their Complaint and described by Plaintiffs' experts in their 2016 reports, continued to exist, Plaintiffs would likely be entitled to injunctive relief on at least some of their Section 1983 claims." Order at 10, Aug. 24, 2018, ECF No. 767. Finding that conditions at EMCF may have changed due to facility upgrades and the adoption of new policies, the Court stayed proceedings in this case pending the receipt of supplemental expert reports on the issues of medical care, mental health care, and security issues related to prison staffing which would update their 2016 expert reports. The Court's Order requires Plaintiffs' experts in these areas "to again *inspect and assess* the conditions presently existing in those specific areas at EMCF" and to file their supplemental reports "detailing the effects, if any, of the changes made at EMCF" with the Court on or before November 16, 2018. Order at 10-11 (emphasis added).

On September 14, 2018, Plaintiffs served Defendants with Plaintiffs' Requests for Production for Supplemental Expert Reports. Exhibit 1, Cover Letter from Elissa Johnson and

1

Requests for Production, dated September 14, 2018. Plaintiffs sent these formal requests and explanatory letter as an attempt to further confer regarding this issue. Eleven days prior, Defendants had declined to produce any written discovery, and agreed only to "consider" requests for access to records made by Plaintiffs' experts during their on-site tours. Exhibit 2, Letter from Michael Bentley to Elissa Johnson, Sep. 3, 2018. In an attempt to reach an agreement on discovery, Plaintiffs sent a letter on September 7, 2018 explaining the necessity of their experts reviewing documents both off- and on-site, as they had for their 2016 reports. Exhibit 3, Letter from Elissa Johnson to Michael Bentley, Sep. 7, 2018. Defendants subsequently reiterated to Plaintiffs that they "maintain[ed] that no written discovery or pre-inspection production is permitted or required by the Opinion and Order." Exhibit 4, Letter from Nicholas F. Morisani to Elissa Johnson, Sep. 14, 2018. Pursuant to Federal Rule of Civil Procedure 37, Plaintiffs hereby certify that they have conferred—unsuccessfully—with Defendants in a good-faith attempt to obtain discovery prior to involving the Court in this dispute. Fed. R. Civ. P. 37(a)(1). As indicated in the Good Faith Certificate, the parties have agreed to an expedited briefing schedule: Defendants' response is due 7 days after the filing of Plaintiffs' motion and Plaintiffs' reply is due three days after Defendants' response. Exhibit 5, Good Faith Certificate, September 19, 2018.

## ARGUMENT

On August 24, 2018, the Court ordered supplemental expert reports from the parties-- Plaintiffs' supplemental reports are due on November 16, 2018 and Defendants' supplemental reports are due on December 14, 2018. Plaintiffs' counsel have been working diligently and have scheduled their expert tours. In order to complete the supplemental reports, Plaintiffs' experts will also need critical facility documents in order to complete their assessment of the current conditions.

Due to the impasse regarding document production between the parties, Plaintiffs have filed this Emergency Motion, so that the parties' discovery dispute can be resolved as quickly as possible.

"In reviewing a motion to compel, courts must take into account that discovery rules 'are to be accorded a broad and liberal treatment to effect their purpose of adequately informing litigation in civil trials.'" *Georgia-Pacific W&FS (MS) LLC v. Johnson's Fence, LLC*, No. 5:14-cv-121, 2015 WL 5021887, at *1 (S.D. Miss. Aug. 24, 2015) (quoting *Herbert v. Lando*, 441 U.S. 153, 176 (1979)). The party resisting a discovery request bears the burden of showing why the request is objectionable pursuant to Fed. R. Civ. P. 26(b). *See McLeod, Alexander, Powel & Appfel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1980). The documents Plaintiffs have requested are critical to Plaintiffs' experts' assessment of the conditions at EMCF that are identified in the Order, and as such, production of the documents is crucial to permit Plaintiffs to comply with the Order.

I. **Plaintiffs Seek Documents that are Necessary for Plaintiffs' Experts to Assess the Conditions Cited in the Court's Order**

Plaintiffs' Requests for Production seek documents similar to those their experts relied upon to produce their 2016 reports and opinions in this matter, and are critical to their ability to assess the post-discovery changes identified in the Court's Order. For example, at trial, Plaintiffs' mental health care expert, Bruce Gage, MD, described the methodology he used to complete his expert report. Dr. Gage reviewed medical records, policies, incident reports, videos, grievances, contracts, Continuous Quality Improvement ("CQI") data, and pertinent medical logs. Trial Tr. vol. 26, 23:7–16, Mar. 22, 2018 (Gage).  These documents permitted Dr. Gage "to assess the kinds of services [prisoners] were being administered" and to evaluate "any substantial change[s] in the quality and nature of the services that were being delivered." Trial Tr. vol. 26, 24:21–25:4 (Gage). The documents also were the basis for Dr. Gage to engage in purposive sampling of the mental health care provided at EMCF—a routine methodology for health care experts. Dr. Gage used

purposive sampling to identify those prisoners most at risk of harm, and then assessed their care in order to gauge whether Defendants are providing adequate mental health services and to determine if systemic problems exist at the facility. Trial Tr. vol. 26, 28:18–30:15 (Gage). Indeed, Dr. Gage could not then and cannot now "inspect and assess the conditions presently existing . . . at EMCF" without access to such documents, as doing so would require Dr. Gage to rely only on observations of conditions during an announced tour, unsupported by documentation of the mental health care actually provided to prisoners on a daily basis.

Plaintiffs' medical expert, Marc Stern, MD engaged in a similar review for his 2016 report. As Dr. Stern testified, he reviewed the "supporting records of the institution," including logs, electronic data, video, grievance files, and supporting documents, and sampled medical records. Trial Tr. vol. 19, 33:21–34:10, 35:9–37:15, Mar. 19, 2018 (Stern); *see* Expert Report of Marc Stern at 3–4, Dec. 12, 2016, ECF No. 553-4 (listing documents reviewed). Dr. Stern also used purposive sampling to evaluate correctional medical care. (*Id.* at 35:9–37:15 (Stern). Plaintiffs' medical expert, Madeleine LaMarre, also reviewed policies and procedures, staffing reports, CQI reports, and a sampling of medical records to appraise medical care at EMCF. Trial Tr. vol. 27, 27:2–10, Mar. 27, 2018 (LaMarre); *see* Expert Report of Madeleine LaMarre at 4–5, Dec. 29, 2016, ECF No. 549-9 (listing documents reviewed). Similarly, Plaintiffs' prison staffing expert, Eldon Vail, reviewed "incident reports, use of force reports . . . [and] monthly reports," as well as shift rosters, internal audit checklists, and staffing rosters, among other documents, to assess staffing and its effect on security practices at EMCF. Trial Tr. vol. 2, 112:12–113:2, Mar. 5, 2018 (Vail); *see* Expert Report of Eldon Vail at 18-22, Dec. 29, 2016, ECF No. 549-2 (detailing staffing information obtained from staff rosters and internal monitor's checklists).

Defendants have indicated they may permit Plaintiffs' health care experts to review medical records for a limited period of time on-site at EMCF. *See* Exhibit 3 at 2. Defendants' proposal is not a reasonable substitution for off-site production: First, Defendants' proposal ignores Plaintiffs' request for documents other than medical records—such as health care logs and staffing information—that were crucial to the experts' prior reports. Second, Defendants' proposal would sharply limit the experts' time with the documents and their ability to refer to the documents while drafting their reports, hampering the experts' assessment of the conditions at EMCF. Third, Defendants made no such proposal regarding Plaintiffs' security expert, Mr. Vail.

Moreover, Plaintiffs' Requests will allow their experts to identify which medical records to review before they are on-site, utilizing the same purposive sampling methodology they used for their 2016 reports. For example, the Court noted that since the experts' 2016 reports EMCF had expanded its area for observing suicidal prisoners. Order at 9. In order to determine if and how that change has affected suicide prevention services at the prison, Dr. Gage will need to know who has attempted or committed suicide at EMCF and the circumstances of those events. Plaintiffs have therefore requested relevant documents, so Dr. Gage knows which prisoner records to review. That is purposive sampling. It is not sufficient to simply allow Dr. Gage to randomly pick records while at the prison, hoping to find among them prisoners who have been placed on suicide precautions, or who have attempted suicide. *See, e.g.,* Trial Tr. vol. 26, 28:21–31:3, Mar. 22, 2018 (Gage) (discussing purposive sampling and the reasons random record sampling makes evaluating correctional health care systems exceptionally time-consuming and difficult); Stern Report, ECF No. 553-4, at 4 (stating that random sampling would not be appropriate for evaluating EMCF's health care system); Trial. Tr. vol. 27, 27:15–28:18, Mar. 27, 2018 (LaMarre) (discussing tracer methodology for reviewing records in order to determine adequacy of provided health care).

To comply with this Court's Order, Plaintiffs' experts thus require production of the same types of documents the experts previously relied upon to identify records to review and generate their reports.[1] If these documents are not produced, Defendants will have unilateral access to records documenting conditions at the prison, making it impossible for Plaintiffs' experts to knowingly assess Defendants' representations regarding the conditions or recent changes at the prison, contrary to the Court's Order.

## II. Plaintiffs' Requests for Production are Narrowly Tailored to Permit Plaintiffs' Experts to Assess the Conditions Cited in the Court's Order

Plaintiffs have tailored their requests and only seek the production of documents necessary for Plaintiffs' experts to provide supplemental reports to the Court consistent with the Order. Plaintiffs' Requests for Production seek, *inter alia,* EMCF's policies and procedures, updated health care contracts and addenda, health care logs, documents related to prisoner deaths, logs of prisoners placed on suicide precautions or psychiatric observation, and incident reports relevant to staffing and health care issues.

Plaintiffs are not seeking to reopen full discovery in this case.[2] Instead, Plaintiffs have narrowly sought only documents similar to those previously relied on by their experts that relate to conditions at EMCF since the experts issued their last reports in 2016. These documents will

---

[1] These documents are even more vital should Defendants not permit Plaintiffs' experts to speak to Defendants' employees, agents, or contractors during their upcoming site visits, as they did during the experts' previous tours.

[2] To the extent Plaintiffs must satisfy the multi-factor test relevant to re-opening discovery, those factors are more than met here: the need for additional discovery was beyond Plaintiffs' control, the documents sought are critical to Plaintiffs' experts' assessments of conditions at EMCF, and Plaintiffs would therefore be gravely prejudiced if Defendants were not compelled to produce the documents. *See Reliance Ins. Co. v. Louisiana Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997) (applying a four-factor test for re-opening discovery: (1) the explanation for the failure to complete discovery on time, (2) the importance of the amendment, (3) the potential prejudice in allowing the amendment, and (4) the availability of a continuance to cure such prejudice).

allow the experts to update their 2016 reports to assess the effect of changes identified by the Court since their last reports. Throughout trial, Defendants alleged changed and improved conditions, but produced no documents codifying or corroborating these purported changes; the production of these documents is necessary to assist and determine what, if any, impact those changes have had on the risk of harm facing the EMCF class.

Indeed, Plaintiffs' Requests seek only a limited number of documents directly relevant to the conditions at issue: For example, Request 1 seeks EMCF's current policies regarding the areas covered by the Court's Order (unless already produced to Plaintiffs). Request 2 seeks any internal audits conducted at EMCF this year regarding staffing and health care. Requests 4 and 7 seek limited staffing rosters for security and health care personnel. Request 8 seeks the production of contracts and any addenda related to security and health care services (again, unless already produced to Plaintiffs). Most of the requests only seek documents from this year, while a small number of requests (such as Request 1) seek documents that have not been produced that post-date those the experts last reviewed for their 2016 reports.

In each instance, Plaintiffs have requested a limited number of documents, cabined in time and scope, that are necessary to their experts' ability to select records and draft reports in compliance with the Court's Order, while limiting the burden on Defendants. Defendants should not be permitted to shroud the true nature of the conditions at EMCF at this stage in the proceedings by denying Plaintiffs documents needed to comply with this Court's Order.

Defendants' blanket refusal to produce any written discovery—a refusal Defendants made before even examining Plaintiffs' Requests for Production—runs counter to the principle that "[o]pen disclosure of all potentially relevant information is the keynote of discovery provisions." *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300 (5th Cir. 1973).

### III. The Court Should Order Expedited Briefing and Issue and Expedited Decision on This Motion

For the reasons stated, Plaintiffs' experts urgently require the production of documents prior to their expert tours and for use in drafting their supplemental reports as ordered by the Court. Plaintiffs want to commence their experts' EMCF tours the first week of October, and their supplemental reports are due no later than November 16, 2018. The parties have agreed to an expedited briefing schedule regarding the instant motion: Defendants will file their response to Plaintiffs' Motion to Compel within seven (7) days of the filing of the Motion, and Plaintiffs will file a reply (if any) three (3) days thereafter.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Emergency Motion and compel Defendants to produce the written discovery sought in Plaintiffs' Requests for Production.

DATED this 20th of September, 2018.

Mark P. Gimbel
Erin Monju
Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Phone: 212-841-1000
pgimbel@cov.com
emonju@cov.com
(admitted pro hac vice)

Gretchen Hoff Varner
Covington & Burling LLP
One Front Street
San Francisco, CA 94111
Phone: 415-591-6000
ghoffvarner@cov.com
(admitted pro hac vice)

Anna Q. Han
Covington & Burling LLP
850 Tenth Street, NW
Washington, DC 20001
Phone: 202-662-6000
ahan@cov.com
(admitted pro hac vice)

s/ Elissa Johnson
Jody E. Owens, II, MS Bar #102333
Elissa Johnson, MS Bar #103852
Southern Poverty Law Center
111 E. Capitol Street, Suite 280
Jackson, MS 39201
Phone: 601-948-8882; Fax: 601-948-8885
jody.owens@splcenter.org
elissa.johnson@splcenter.org

Eric G. Balaban
Gabriel B. Eber
National Prison Project of ACLU
915 15th Street, NW, 7th Floor
Washington, DC 20005
Phone: 202-393-4930; Fax: 202-393-4931
ebalaban@aclu.org
geber@aclu.org
ctakei@aclu.org
(admitted pro hac vice)

Elizabeth Alexander
Law Offices of Elizabeth Alexander
1416 Holly Street NW
Washington, DC 20012
Phone: 202-291-3774
elizabethalexander@lawofficesofelizabethalexander.com
(admitted pro hac vice)

## CERTIFICATE OF SERVICE

I, Elissa Johnson, hereby certify that a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all parties by the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

SO CERTIFIED, this 20th day of September, 2018.

s/Elissa Johnson
Elissa Johnson, MS Bar No. 103852