THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JERMAINE DOCKERY, *et al.*,

      Plaintiffs,

v.                                                Civil Action No. 3:13cv326-WHB-JCG

PELICIA HALL, *et. al.*,

      Defendants.

**PLAINTIFFS' MOTION FOR EXPERT DISCOVERY RELIEF**

1.     Plaintiffs respectfully submit this Motion for Expert Discovery Relief, seeking that the Court order Defendant to produce to Plaintiffs the limited set of outstanding categories of documents that Plaintiffs' experts have requested for review and use in conjunction with their inspection and assessment of conditions at EMCF, and their forthcoming expert reports. Plaintiffs seek this relief in accordance with the October 18, 2018 Order that any motions about outstanding expert discovery issues regarding the Court's August 24, 2018 Order be filed today.

2.     The August 24, 2018 Order permitted Plaintiffs' experts to inspect and assess current conditions regarding security staffing, medical care, and mental health care at EMCF and to submit supplemental reports opining on those topics. Following the August 24, 2018 Order, Plaintiffs served discovery requests on Defendant for certain documents necessary for their experts to inspect and assess current conditions. Plaintiffs subsequently moved to compel

1

Defendant to produce those documents. *See* ECF No. 776-77.[1] On September 20, 2018, the parties reached an agreement: Plaintiffs agreed to stay their motion to compel, and Defendant agreed to produce several categories of documents by October 5, 2018 and to allow Plaintiffs' expert witnesses to review additional materials on-site during their Court-ordered tours of EMCF. Defendant also "agree[d] to produce (within seven days of a specific request by Plaintiffs) copies of certain materials reviewed by Plaintiffs' experts during their inspections," to the extent such documents are "consistent with the documents reviewed by Plaintiffs' experts when preparing their previous reports." *See* Pls. Mot. to Compel Expert Tours, Ex. 9, Letter from M. Walker, ECF No. 782-9, at 2 (Sept. 28, 2018) (restricted access filing). Three of Plaintiffs' four experts have now conducted their court-ordered tours of EMCF, with the final tour set to begin tomorrow. After completion of each tour, consistent with the parties' September 20, 2018 agreement, Plaintiffs have requested that Defendant produce copies of certain documents for their experts' use within seven days.

3. There are outstanding discovery issues from both the October 5 production and the post-tour productions. Plaintiffs set forth these issues because of today's deadline to file motions concerning discovery issues but anticipate that the parties may work out many of these issues in good faith. Plaintiffs hope to withdraw this motion to the extent that is possible.

4. **October 5, 2018 production:** Defendant has produced most of the documents it agreed to produce on October 5. There are two key outstanding categories of documents. First, Defendant agreed to produce healthcare staff rosters on October 5 for several specific dates.[2]

---

[1] The parties' communications about discovery in furtherance of the August 24, 2018 Order are set forth in the exhibits submitted in connection with Plaintiffs' Motion to Compel, *see* ECF No. 767 and described Plaintiffs' Memorandum in Support of the Motion to Compel, *see* ECF No. 777.
[2] Defendant agreed to produce healthcare rosters for the following weeks in 2018: February 1-8, March 18-24, April 1-7, May 7-13, May 24-30, June 30-July 6, August 13-21, and September 2-9. Plaintiffs requested the outstanding rosters on October 8, 2018 and have not received a response.

Plaintiffs request that the Court require Defendant to do so.  Second, Defendant produced redacted versions of monthly contract monitoring reports and monthly statistical reports.  Plaintiffs asked them to be reproduced with fewer redactions on October 11, 2018.  On October 18, 2018, Defendant counterproposed a set of more limited (but still too extensive) redactions for the contract monitoring reports, and Plaintiffs responded on October 19, 2018 with a request that several additional fields be unredacted.  After 4:00 p.m. today, Defendant provided another counterproposal regarding the contract monitor reports.  Defendant's current proposal still would redact some key items including the performance of prisoner counts by security staff and staff post orders (which identify specific duties to which staff are assigned).  In today's communication, Defendant also, for the first time, offered to produce the monthly statistical reports with fewer redactions, which Plaintiffs are considering.

5. Plaintiffs hope that the parties will be able to resolve both of these outstanding issues from the October 5 production in good faith.  However, given today's filing deadline, Plaintiffs ask that the Court compel the production of these documents (unredacted in the case of the monthly contract monitoring reports and monthly statistical reports), unless the parties can come to an agreement that moots this request.

6. **Post-tour productions:**  Plaintiffs also have requested the following categories of documents following their expert tours.  Defendant has informally agreed to produce most of these, but has not yet done so, and so Plaintiffs move the Court to compel their production (again in an abundance of caution and in the hope that this aspect of the motion may be mooted by the production of the relevant documents).

7. Defendant has agreed to produce the following:

- **Logbooks.**  Plaintiffs request the logbooks for Housing Unit 1 covering January, April, June, and September, 2018; for Housing Unit 5 covering February, March, May, July,

3

August, and October 1-8, 2018; and for Housing Unit 6 covering January, February, March, May, June, July, and August, 2018.

- **Shift Rosters and Staffing Documents.** Plaintiffs request several specific staffing-related documents of a sort relied upon in their experts' prior reports, concerning both security and medical and mental health staff. These include shift rosters, staffing plans for mental health staff, and mental health-related statistics showing staff-patient ratios and the frequency of staff-patient contacts.

- **Videos and color photographs associated with specific EORs.** On October 5, Defendant produced over 300 extraordinary occurrence reports ("EORs") concerning 2018 incidents, such as prisoner assaults, medical emergencies, and contraband seizures. Plaintiffs request color photographs and/or videos that are associated with 32 specifically identified EORs, to the extent they exist. These photographs and videos provide greater context and information about the incidents described in the associated EORs.

- **Medical records.** Plaintiffs request medical records for prisoners relevant to an assessment of mental health services, most of whom Dr. Bruce Gage met during his tour. These are necessary for Dr. Gage to assess the mental health care system at EMCF, and to update his prior findings concerning the systemic deficiencies with mental health care.

- **Policies and contracts.** Pursuant to the parties' agreement, on October 5, 2018 Defendant provided policies concerning healthcare, but did not provide security policies or contracts concerning healthcare or security. Plaintiffs request that Defendant either confirm there are no new security policies or any contracts since trial or, if there are, to provide those.

8. Again, Plaintiffs ask the Court to require the production of the above categories of documents, but anticipate that Defendant may produce some or all of them without the Court's intervention. Plaintiffs will withdraw this motion to the extent that occurs.

9. Unlike the documents described above, based on discussions between counsel it appears Defendant will *not* agree to produce the following categories of documents. These, too, are documents of the sort that Plaintiffs' experts previously relied upon in drafting their expert reports and testifying at trial. They are necessary to help provide the Court with a complete understanding of current staffing, medical care, and mental health care conditions at EMCF and

4

to guide the parties' settlement discussions. Each request is limited to a targeted subset of the documents Plaintiffs might otherwise request and that their experts previously relied upon.[3]

- **Use of Force reports.** Plaintiffs request Use of Force reports and accompanying documentation concerning uses of force by staff against prisoners in Units 3 or 5 or the Acute Care Unit. These are necessary for Dr. Gage's review of EMCF's treatment of mentally ill prisoners, including whether mental health staff has intervened and attempted to deescalate planned uses of force involving mentally ill prisoners, a system problem Dr. Gage identified in his 2016 report. The requests cover only those areas of the prison most relevant to Dr. Gage's inquiries: Unit 3, where, by policy and practice, prisoners with serious mental illness are largely concentrated; Unit 5, where uses of force are most prevalent (including against mentally ill prisoners, given that the vast majority of EMCF prisoners have a mental health diagnosis); and the Acute Care Unit, a small unit opened after the close of discovery where a limited number of individuals reside and participate in mental health programming.

- **Custodial files.** Plaintiffs request documents from custodial files for specific prisoners with whom Mr. Vail or Dr. Gage spoke during their tours, or whose medical records Dr. Gage will review.[4] These files contain documents such as rule violation reports, administrative remedy program documents, and incident reports, and will be crucial to assessing information the experts received during their on-site inspections.

10. Finally, Plaintiffs expect they will submit to Defendant a final request for documents to be produced within seven days following Madeleine LaMarre's tour this week. That request will also seek materials of the sort Ms. LaMarre previously relied upon in her earlier reports. Although Plaintiffs hope there will be no dispute over the request, they also ask the Court for leave to file a limited motion seeking to compel Ms. LaMarre's documents, along the lines of the instant motion, should it be necessary.[5]

---

[3] For example, Plaintiffs do not seek any ESI information (like emails), daily reports, shakedown reports, or lockdown reports. These are documents that Plaintiffs' experts previously relied upon in 2016, but the production of which, Plaintiffs recognize, may now impose undue burden on Defendant.

[4] Plaintiffs request only a limited set of documents from these prisoners' custodial files, and only from 2018. If it is less burdensome for Defendant to provide the entire files rather than picking out individual documents, Plaintiffs would also accept that.

[5] Plaintiffs also reserve the right to seek further relief from the Court should this matter proceed to an evidentiary hearing in or after January 2019, including any relief necessary to prepare for that hearing.

11. Due to the nature of this Motion, Plaintiffs ask the Court to waive the requirement of L.U. Civ. R.7(b)(4) that a separate memorandum of authorities be submitted with this motion.

12. For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiff's requests for expert discovery relief and order Defendant to produce the documents described above.

RESPECTFULLY SUBMITTED, this the 22nd day of October, 2018.

|  |  |
|---|---|
| Mark P. Gimbel (admitted *pro hac vice*)<br>Erin Monju (admitted *pro hac vice*)<br>Covington & Burling LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018<br>Phone: 212-841-1000 | s/ Benjamin R. Salk<br>Elissa Johnson, MS Bar #103852<br>Jody E. Owens, II, MS Bar # 102333<br>Benjamin R. Salk (admitted *pro hac vice*)<br>Southern Poverty Law Center<br>111 E. Capitol Street, Suite 280<br>Jackson, MS 39201<br>Phone: 601-948-8882; Fax: 601-948-8885 |
| Gretchen Hoff Varner (admitted *pro hac vice*)<br>Covington & Burling LLP<br>One Front Street<br>San Francisco, CA 94111<br>Phone: 415-591-6000 | Eric G. Balaban (admitted *pro hac vice*)<br>National Prison Project of ACLU<br>915 15th Street, NW, 7th Floor<br>Washington, DC 20005<br>Phone: 202-393-4930; Fax: 202-393-4931 |
| Anna Q. Han (admitted *pro hac vice*)<br>Covington & Burling LLP<br>850 Tenth Street, NW Washington, DC 20001<br>Phone: 202-662-6000 | Elizabeth Alexander *(*admitted *pro hac vice*)<br>Law Offices of Elizabeth Alexander<br>1416 Holly Street NW<br>Washington, DC 20012<br>Phone: 202-291-3774 |

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I, Benjamin R. Salk, hereby certify that a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all parties by the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

SO CERTIFIED, this 22nd day of October, 2018.

                                                                       s/ Benjamin R. Salk
                                                                       Benjamin R. Salk (admitted *pro hac vice*)