IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**JERMAINE DOCKERY, ET AL.**               **PLAINTIFFS**

**VS.**                                    **NO.: 3:13-CV-0326-WHB-JCG**

**PELICIA HALL, ET AL.**                   **DEFENDANTS**

**MDOC's RESPONSE TO PLAINTIFFS' MOTION
FOR AN EVIDENTIARY HEARING**

Defendants Pelicia Hall, et al. (collectively "MDOC")[1] responds to Plaintiffs' Motion for an Evidentiary Hearing (Docs. 818 & 819) as follows:

**INTRODUCTION**

Plaintiffs filed this suit in May 2013, and since then Plaintiffs have complained repeatedly about delays in reaching a judgment. Now, after five-and-a-half years of litigation and a five-week trial, Plaintiffs' propose additional proceedings that—if the first trial is any indication—will be tedious, lengthy, and costly. This Court has broad discretion to decide how best to accept and evaluate the proof, and it may exercise its discretion to efficiently and finally resolve this case without more trial proceedings.

To be clear, if the Court believes that more weeks of trial are needed, MDOC's witnesses—Warden Frank Shaw, Chief Psychiatrist Dr. Steven Bonner, MDOC's subject-matter experts, and others—will gladly testify about improvements at East Mississippi Correctional Facility ("EMCF"). Before embarking on such proceedings,

---

[1] The named defendants are Pelicia Hall, Gloria Perry, Jerry Williams, and Richard McCarty in their official capacities, but persons sued in their official capacity "assume the identity of the government [entity] that employs them." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 (1989). Thus, the real party-in-interest is MDOC.

1

the costs of which Plaintiffs will seek to tax to MDOC, the Court should consider whether more live testimony—on top of the supplemental evidence already received—will actually assist in its deliberate indifference analysis. If not, then the Court should rule on the ample evidence that it has already accepted.

## BACKGROUND

This suit was filed in May 2013. In March and April 2018, this Court conducted a five-week bench trial during which it took live testimony from over 30 witnesses (both fact and expert) and received thousands of pages of documentary evidence regarding conditions at EMCF. In August 2018, after analyzing the trial proof for several months, the Court stayed proceedings so that the parties could engage in limited discovery and "offer additional evidence regarding the effects of the changes at the prison." Doc. 767 at 1 ("Stay Order").

The Stay Order allowed the parties to update their trial proof with a supplemental assessment of changes at EMCF. As the Court explained, Plaintiffs' claims about prison conditions were based primarily on expert opinions developed prior to December 2016. *Id.* at 7-8. Five weeks of trial had proven that, under its new leadership of Commissioner Pelicia Hall down to Warden Frank Shaw, MDOC had made major changes to the prison, impacting the security of inmates and the delivery of their medical and mental health care. *Id.* at 8-10 (summarizing changes and improvements).

The proof presented a dilemma: If prison conditions had remained as alleged in December 2016 (or before), then—in the Court's view—Plaintiffs would likely have

2

been entitled at least to some injunctive relief. *Id.* at 9-10. But conditions had not remained as alleged; they had demonstrably improved as of April 2018, and the Court must decide if constitutional violations *presently exist* at the prison. *Id.* at 10 (citing the PLRA). To resolve this dilemma, the Court allowed Plaintiffs' experts to re-inspect the prison and offer supplemental reports on particular areas identified in the Stay Order. *Id.* at 10-11. After receiving the reports, the Court would determine if another bench hearing would be needed to assess the additional evidence offered by Plaintiffs and MDOC. *Id.* at 11.

On November 16, 2018, Plaintiffs filed four supplemental expert reports, each of which takes the same exhaustive approach that these same experts took in their December 2016 reports. Plaintiffs' November 2018 supplemental reports offer more than 400 pages of new opinion testimony about EMCF, including:

- Supplemental Report of Marc F. Stern (Doc. 799-1), a medical expert, which offers 114 pages of opinions and prisoner case studies;

- Supplemental Report of Madeleine LaMarre (Doc. 800-1), a nurse practitioner, which offers 106 pages of opinions and prisoner case studies;

- Supplemental Report of Eldon Vail (Doc. 801-1), a security expert, which offers 62 pages of opinions; and

- Supplemental Report of Bruce Gage (Doc. 806-1), a mental health expert, which offers 145 pages of opinions and prisoner case studies.

These written reports are admissible as evidence in this case, just as the experts' prior reports were received as evidence at trial subject to specific evidentiary rulings

by this Court.  *See* Trial Ex. 1501 (Stern Reports), Ex. 1505 (LaMarre Reports), Exs. 1507 & 1508 (Vail Reports), and Ex. 1504 (Gage Report).[2]

In addition to their admissibility, two things about Plaintiffs' supplemental reports are important.  First, the Court is familiar with these experts—their methods and credibility—because each of them testified at length during the five-week trial.  Second, these experts are bound by the opinions in their written reports; they cannot expand those opinions through live testimony.  Given the lengthy and detailed nature of their reports, it is difficult to imagine how the in-person reiteration of these experts' written opinions could add anything to the Court's deliberate indifference analysis.

In December 2018, MDOC responded to Plaintiffs' supplemental expert reports by offering its own supplemental evidence, including:

- Declaration of Dr. Steven Bonner (Doc. 812-1), chief psychiatrist for EMCF, which provides a 15-page update on mental health care at the prison;

- Supplemental Expert Report of Tom Roth (Doc. 812-2), a security expert, which offers 25 pages of opinions;

- Declaration of Dr. Patrick Arnold (Doc. 812-3), medical director for EMCF, which provides a 7-page update on medical care at the prison; and

- Supplemental Expert Report of Kenneth McGinnis (Doc. 812-4), a security expert, which offers 13 pages of opinions

With the provision of these reports and declarations, the evidentiary submissions required by the Stay Order were completed.  A bench hearing would only be convened "if necessary."  Doc. 767 at 11.

---

[2] In a separate filing, MDOC has made limited and specific law-of-the-case objections to certain portions of these reports.  *See* Doc. 821 (MDOC's Motion to Strike).  Except as stated in its motion to strike, MDOC has no objection to the admission of Plaintiffs' November 2018 supplemental reports as evidence on which this Court may rely when adjudicating Plaintiffs' constitutional claims.

4

**ARGUMENT**

The purpose of this injunctive-relief proceeding is to determine whether Plaintiffs can show that conditions at EMCF are so deplorable that they violate the Eighth Amendment's strict deliberate indifference standard. *See Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 755-56 (5th Cir. 2001) (discussing subjective nature of the deliberate indifference inquiry and the "extremely high standard" that plaintiffs must meet under the inquiry). The proof is in on that issue. The question presented by Plaintiffs' motion is whether *even more proof* is needed in the form of an in-person hearing, at which Plaintiffs' experts—bound by their reports—would reiterate the contents of those reports.

**I. The Court, having already held a five-week trial, is not required to conduct an evidentiary hearing before rendering its decision.**

As the fact-finder in this bench trial proceeding, the Court retains significant discretion when deciding how to accept and evaluate the parties' proof. The Fifth Circuit has made clear the bench trials are not constrained by the formalities of a jury trial. "A judge has a great deal of latitude in conducting a bench trial." *Cranberg v. Consumers Union of United States, Inc.*, 756 F.2d 382, 391-92 (5th Cir. 1985). The Court's wide latitude extends to admissibility determinations, *Rogers v. Air Line Pilots Ass'n., Int'l*, 988 F.2d 607, 612 (5th Cir. 1993), and decisions as to the weight that should be accorded to admitted evidence, *In re Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991). Simply put, the presiding judge may decide the best means of taking evidence on claims presented.

5

In this case, the Court has conducted a full trial and has already accepted volumes of testimony and stacks of proof on the contested constitutional claims, including supplemental expert reports. There is no requirement that the Court take further live testimony before rendering a final decision. Instead, a federal court adjudicating equitable claims may accept additional testimony in written form, including expert reports, after a trial has been conducted. *Bianco v. Globus Medical, Inc.*, 30 F. Supp. 3d 565 (E.D. Tex. 2014) (admitting post-trial declarations by experts to resolve injunctive relief issue in patent dispute).

Plaintiffs' contrary arguments are addressed in turn.

**A. Further trial proceedings are not required by the PLRA.**

Plaintiffs first argue that an evidentiary hearing is necessary to allow them an opportunity to prove a "current and ongoing" constitutional violation. Doc. 819 at 3-4. Plaintiffs cite no authority to support their contention further in-person trial proceedings are required in the context of this case, where the Court has fully tried the disputed constitutional claims, but reserved a final judgment so that it may evaluate additional evidence. Instead, Plaintiffs cite distinguishable cases involving proceedings to *terminate a consent decree* that had been entered pursuant to the Prison Litigation Reform Act, 18 U.S.C. § 3626 ("PLRA") and was governed by the PLRA's procedural requirements for termination proceedings.

In the cases cited by Plaintiffs, the courts construed the PLRA to *mandate* an evidentiary hearing before ruling on a defendant's motion to terminate an existing consent decree. *See Rouser v. White*, 825 F.3d 1076, 1083 (9th Cir. 2016) (applying

6

Ninth Circuit precedent that construed PLRA to require evidentiary hearing in termination proceeding); *Cason v. Seckinger*, 231 F.3d 777, 781-83 (11th Cir. 2000) (reading PLRA Section 3626(b)(3) to require an evidentiary hearing); *Loyd v. Ala. Dep't of Corr.*, 176 F.3d 1336, 1342 (11th Cir. 1999) (same). These cases do not control here because there is no consent decree to be terminated. This Court is not bound by an inapplicable section of the PLRA; it is guided by the traditional discretion afforded to a district court trying disputed equitable claims in a bench trial. *See Cranberg*, 756 F.2d at 391-92.

Even if the Court were to consider Plaintiffs' off-point authorities, it would find that the Fifth Circuit—unlike some of its sister circuits—has held that in-person evidentiary hearings are not mandated by the PLRA even in consent-decree-termination proceedings. Instead, "[w]hether to hold a PLRA pre-termination evidentiary hearing is within the discretion of the district court[.]" *Guajardo v. Tex. Dep't of Criminal Justice*, 363 F.3d 392, 397 (5th Cir. 2004). If the district judge determines that an in-person hearing is not necessary, it may rely on "evidentiary submissions" when deciding whether to terminate a consent decree. *Id.* at 394, 397. The Fifth Circuit decision cited by Plaintiffs is consistent with this rule. In *Castillo v. Cameron County, Texas*, 238 F.3d 339 (5th Cir. 2001), the Court set forth the legal standards for termination proceedings and remanded the case for an evidentiary hearing on whether those standards were satisfied in that particular case. *Id.* at 352-53. *Castillo* did not address whether—much less, hold that—an evidentiary hearing

7

was mandatory in all cases. *Guajardo* later determined that in-person evidentiary hearings were not mandatory, but were left to the district judge's discretion.

This Court retains discretion to decide whether further trial proceedings, on top of the supplemental reports and evidence that it has already accepted, will aid the Court's resolution of the disputed constitutional claims. Plaintiffs have offered no reason why, after five weeks of trial in March-April 2018 and the submission of four new expert reports in November 2018 (totaling over 400 pages), further in-court proceedings are necessary. The only effect of such proceedings, so far as MDOC can tell, will be to run up costs and delay a final judgment.

### B. The Court may rely on the parties' supplemental expert reports and declarations in lieu of additional in-person testimony.

Plaintiffs next argue that an evidentiary hearing is necessary to admit the supplemental expert opinions and the testimony of EMCF Chief Psychiatrist Dr. Steven Bonner and Chief Physician Dr. Patrick Arnold. Doc. 819 at 4. Of course, the parties could resolve this issue by stipulating to the admissibility of the expert reports and declarations. MDOC is willing to enter such a stipulation.

#### 1. The parties' expert reports are admissible to supplement the trial proof in this case.

According to Plaintiffs, the experts' supplemental reports "constitute inadmissible hearsay and cannot form the basis of the Court's findings of fact." Doc. 819 at 4. This is wrong on two accounts. The Court may rely on the experts' written reports in lieu of live testimony even if Plaintiffs maintain their newly-hatched

8

"hearsay" objections to the very type of report that they previously stipulated was admissible evidence.

First, this Court has already admitted the prior reports of these same experts as evidence in this case *without objection* by the parties.  The Court is familiar with their methods and areas of expertise and has already observed them testify in person at trial.  The Court does not need to hear these same experts again to understand or fairly weigh their testimony.  And their testimony, of course, would be confined to the data and opinions in their written supplemental reports.  MDOC has no objection to the admission of the parties' supplemental expert reports in lieu of live testimony, as there is nothing to be added by live testimony—other than costs.

Second, the Court has the discretion to admit an expert's written report in lieu of taking live testimony in a bench trial proceeding.  *See Bianco*, 30 F. Supp. 3d at 570-76 (admitting post-trial declarations by experts to resolve injunctive relief issue in patent dispute); *In re Bordelon Marine, Inc.*, 2012 WL 1804632, *1 (E.D. La. May 17, 2012) (admitting expert report in lieu of live testimony at bench trial); *In re Antill Pipeline Const. Co., Inc.*, 2013 WL 263510, *2 (E.D. La. Jan. 23, 2013) (same).  In these cases, the parties agreed that the reports would be admissible in lieu of live testimony.  Even if Plaintiffs maintain their objections, the Court may exercise its broad discretion to rely on the supplemental reports in lieu of live testimony in the circumstances of this case:  (1) The Court has heard and observed these experts testify at length during a five-week bench trial; (2) the parties have previously stipulated to the admission of these same experts' prior written reports; (3) the Court allowed

supplemental reports for the limited purpose of updating their prior trial testimony and reports; and (4) the Stay Order notified all parties that the Court might deem further hearings unnecessary.

These circumstances are quite different from those that led the Court to exclude an expert report in *Polythane Systems v. Marina Ventures Int'l, Ltd.*, 993 F.2d 1201 (5th Cir. 1993), cited by Plaintiffs. In *Polythane Systems*, the defendant's expert relied on portions of a non-testifying expert's report during his testimony to the jury, and the defendant offered the non-testifying expert's report into evidence. *Id.* at 1207. The trial court admitted the non-testifying expert's report into evidence over the plaintiff's objection. *Id.* The Fifth Circuit reversed, reasoning that "to admit the hearsay opinion of an expert not subject to cross-examination goes against the natural reticence of courts to permit expert opinion unless the expert has been qualified before the jury to render an opinion." *Id.* at 1208. The Fifth Circuit added that there had been "no opportunity to cross-examine [the non-testifying expert] regarding the methodology he employed, statistical discrepancies in his report, or any other matters which might illuminate shortcomings in his work." *Id.* This is nothing more than an application of the sensible rule that one expert may not pass through another expert's unverified testimony.

No such pass through problem is at issue in this bench trial. The expert reports would be admitted to supplement the trial testimony and prior reports that have already been received as evidence by this Court. Unlike *Polythane Systems*, there is no jury in this case and no risk that the Court (as the finder of fact) will be deprived

10

of the opportunity to evaluate the reliability of supplemental reports prepared by witnesses that have *already testified in person*. The Court is fully competent to accord the supplemental reports the proper weight without the need for additional testimony by their familiar authors.

### 2. The declarations of the prison's psychiatrist and physician are admissible to supplement the trial proof in this case.

Plaintiffs also raise hearsay objections to the declarations submitted by Dr. Bonner, the prison's chief psychiatrist, and Dr. Arnold, the prison's medical director and chief physician. Doc. 819 at 4. Again, Plaintiffs could agree to admit these declarations in lieu of live testimony.

Even if Plaintiffs will not withdraw their objections, this Court may overrule them. Plaintiffs' hearsay objections may be valid if the Court were relying on these two declarations alone to resolve factual disputes in this case. Both declarations are tied to prior trial testimony, and explain that they are simply updating that testimony as requested by the Court. The Court would admit the declarations merely as supplemental proof, and the Court would consider these declarations in light of all of the other testimony and documentary evidence that was submitted in the course of a five-week bench trial. Such an approach to taking supplemental evidence falls comfortably within this Court's broad discretion in a bench trial.

If Plaintiffs will not agree and the Court has reservations about admitting the declarations of Dr. Bonner and Dr. Arnold, then MDOC will gladly produce these medical providers for in court testimony.

### C. The "open courts" doctrine does not require an evidentiary hearing in this case.

Third, Plaintiffs invoke various "open court" rules, which confirm the due process preference that trials be conducted and testimony be taken in an open court. *See* Doc. 819 at 4-5 (citing Fed. R. Civ. P. 43(a) and 77(b)). Given Plaintiffs' ability to generate headlines throughout this litigation (both before and after the five-week trial), their concern that this Court might proceed in anything other than an "open" manner is a strange one. Any evidence admitted, whether testimonial or documentary, will be open and available to the public.

In fact, the rules contemplate that evidentiary rules will control all federal court proceedings: "At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise." Fed. R. Civ. P. 43(a). Plaintiffs citation to Rule 77(b) is even more far afield, given that the rule "simply articulates the traditional authority of a judge to speak privately with the parties to a suit, whether in bench conferences or in chambers." *United States v. Town of Moreau*, 979 F. Supp. 129, 134 n.2 (N.D.N.Y. 1997) (quoting *B.H. v. McDonald,* 49 F.3d 294, 298 (7th Cir. 1995)) (internal marks omitted).

The open courts doctrine does not prevent a district judge presiding at a bench trial from determining the best means of receiving supplemental evidence and resolving pending cases. *See, e.g., Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.");

*Prudhomme v. Tenneco Oil Co.*, 955 F.2d 390, 392 (5th Cir. 1992) ("The district court has broad discretion in the management of its docket and the trial of lawsuits pending before it . . . ."). As already discussed, this Court has broad discretion as the fact-finder in a bench trial to accept the experts' written supplemental reports in lieu of in-person testimony. Doing so will not deprive Plaintiffs of due process.

### D. Plaintiffs' request for a "remedies hearing" is premature.

Finally, Plaintiffs presume that the Court will "impose remedies" and argue that it must hold a hearing to accept evidence as to what remedies may be appropriate in this case. Doc. 819 at 5. The Court's Stay Order did not suggest that remedies would certainly be imposed. Instead, the Court requested supplemental proof on the effect of recent changes at EMCF so that it may determine whether Plaintiffs' alleged constitutional violations have already been remedied by the actions of MDOC officials and EMCF's custody and healthcare staff. Doc. 767 at 10-11.

Moreover, a "remedies hearing" would be premature without a liability finding by this Court. The parties are at least two steps removed from such a hearing. First, the Court would have to find that prison officials are deliberately indifferent and, as a result, that certain conditions at EMCF violate the Eighth Amendment. Second, if the Court were to make such a liability finding, it should then allow MDOC to propose a means to address any constitutional deficiencies identified by the Court. *See Lewis v. Casey*, 518 U.S. 343, 361-63 (1996). This procedure respects concerns about comity to state officials with expertise in prison administration and ensures that the Court does not become "enmeshed in the minutiae of prison operations." *Id.* at 362 (citing

*Bell v. Wolfish*, 441 U.S. 520, 562 (1979)). A "remedies hearing" would be required only if the case was not resolved at either of these predicate points.

## II. Alternatively, the Court should grant a hearing on specific issues identified by the Court.

If the Court believes that an evidentiary hearing is necessary, it should identify specific issues to be addressed by witnesses and counsel. This will permit the parties to save costs and court resources by tailoring their witness presentations to the specific factual questions, if any, that remain unresolved after the Court's review of the supplemental reports. Such limitations are necessary to prevent a supplemental evidentiary hearing from becoming a second, full-blown trial on the merits.

In addition to identifying specific issues to be addressed, the Court could take additional steps to focus the parties' presentation at an evidentiary hearing, such as limiting the number of witnesses (e.g., five per side) and limiting the days allowed for presentation of evidence (e.g. four days total, divided equally among the sides). Such limitations would be appropriate in any case where a party requests an unlimited evidentiary hearing after a five-week trial, and they are particularly appropriate in this case because Plaintiffs will ultimately seek to tax all costs and fees to the MDOC.

## CONCLUSION

MDOC will gladly appear at an evidentiary hearing to present witness testimony on the improvements that it has made and continues to pursue at EMCF. MDOC respectfully suggests, however, that no such hearing is necessary given the supplemental expert reports and evidence that the parties have already provided to this Court. If the Court allows further hearings, it should limit the hearing to specific

14

areas, if any, that remain unresolved notwithstanding the trial and supplementary proof. Such a limited hearing will conserve court resources and save costs.

Dated: February 11, 2019.

           Respectfully submitted,

BY:   JIM HOOD, ATTORNEY GENERAL
        STATE OF MISSISSIPPI

BY:   *s/ Krissy Nobile*
      Harold E. Pizzetta, III, Bar No. 99867
      Krissy Nobile, Bar No. 103577
      Office of the Attorney General
      Post Office Box 220
      Jackson, Mississippi 39205
      Telephone: (601) 359-3860
      hpizz@ago.state.ms.us
      knobi@ago.state.ms.us

BY:   *s/ Nicholas F. Morisani*
      W. Thomas Siler, Jr., Bar No. 6791
      Nicholas F. Morisani, Bar No. 104970
      Phelps Dunbar, LLP
      4270 I-55 North
      Jackson, Mississippi 39211-6391
      Telephone: 601-352-2300
      Gary.Friedman@phelps.com
      Nick.Morisani@phelps.com

BY:   *s/ Michael J. Bentley*
      Michael J. Bentley, Bar No. 102631
      Molly M. Walker, Bar No. 100689
      Bradley Arant Boult Cummings, LLP
      Post Office Box 1789
      Jackson, Mississippi 39215-1789
      Phone: (601) 948-8000
      mbentley@babc.com
      mmwalker@babc.com

**ATTORNEYS FOR THE DEFENDANT**

## **CERTIFICATE OF SERVICE**

I, *Michael J. Bentley*, certify that the foregoing document has been filed with the Clerk of Court using the Court's ECF system, which provides service of the foregoing to all counsel of record who have entered an appearance in this case as of the date below.

Dated: February 11, 2019.

*/s/ Michael J. Bentley*
Michael J. Bentley

## **CERTIFICATE OF SERVICE**

I, *Michael J. Bentley*, certify that the foregoing document has been filed with the Clerk of Court using the Court's ECF system, which provides service of the foregoing to all counsel of record who have entered an appearance in this case as of the date below.

Dated: February 11, 2019.

*/s/ Michael J. Bentley*
Michael J. Bentley