IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**JERMAINE DOCKERY, et al.**                                          **PLAINTIFFS**

**VS.**                                                 **No. 3:13-cv-326-WHB-JCG**

**PELICIA HALL, ET AL.**                                          **DEFENDANTS**

**RESPONSE IN OPPOSITION
TO PLAINTIFFS' [861] MOTION FOR REVIEW OF TAXATION
AND OBJECTIONS TO DEFENDANTS' COSTS**

Defendant Mississippi Department of Corrections ("MDOC")[1] files this Response in Opposition to Plaintiffs' [861] Motion for Review of Taxation and Objections to Defendant's Costs ("Motion"). For the following reasons, Plaintiffs' Motion should be denied.

## INTRODUCTION

At its core, Plaintiffs' Motion is nothing more than a thinly veiled attempt to circumvent the plain language of Federal Rule of Civil Procedure 54(d)(1), which provides that costs "*should* be allowed to the prevailing party." (emphasis added). Plaintiffs admit the Court "entered judgment in favor of [MDOC]" [862 at 2], making MDOC the prevailing party under Rule 54(d)(1) and consequently entitled to recover the costs available to it by law. *See* 28 U.S.C. § 1920. Nonetheless, through a misguided attempt to place a positive spin on the outcome of this case, Plaintiffs now ask this Court to undermine its earlier ruling by depriving MDOC of the costs to which it is legally entitled as the prevailing party.

---

[1] The named defendants are Pelicia Hall, Gloria Perry, Jerry Williams, and Richard McCarty in their official capacities, but persons sued in their official capacity "assume the identity of the government [entity] that employs them." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 (1989). Thus, the real party in interest is MDOC.

Plaintiffs' Motion [861] should be denied because none of their arguments hold water. By its plain language, Rule 54(d)(1) makes no allowance for lawsuits brought in "good faith" (as all lawsuits should be), nor does it exempt lawsuits that raise "close and difficult legal challenges" (as many lawsuits do). [862 at 9–11]. Perhaps the reddest of herrings, though, is Plaintiffs' allegation this lawsuit "conferred substantial public benefits." [862 at 11–12]. This argument attempts to substantiate a backdoor victory, ignoring the significant blow dealt to each of Plaintiffs' claims through this Court's Opinion and Order. [850] Plaintiffs entirely fail to acknowledge the simple fact the Court did not find a constitutional violation at East Mississippi Correctional Facility ("EMCF") and rendered judgment in MDOC's favor *in toto*.

At base, the parties agree MDOC is the prevailing party in this lawsuit, and no equitable considerations counsel against awarding it costs under Rule 54(d)(1). Plaintiffs' request for review of the Clerk's decision to tax costs against them is void of merit and should be denied.

**RELEVANT BACKGROUND**

Plaintiffs' Motion summarizes the nature of their claims and a large portion of the relevant procedural history. [862 at 1–5]. For the Court's convenience, MDOC will not retread this ground, except to emphasize the Court definitively ruled in MDOC's favor (by Opinion and Order dated December 31, 2019) on each of Plaintiffs' seven claims. [850] Consistent with Rule 54(d)(1) and Local Rule 54, MDOC timely submitted its Bill of Costs [853] and supporting documentation on

2

January 31, 2020.  On February 18, 2020, the Clerk of Court taxed MDOC's costs totaling $104,380.58.  *See* [859] Bill of Costs.  On February 25, 2020, Plaintiffs filed their Motion [861], objecting and asking the Court to review the costs taxed.

## ARGUMENT

I. **The Court Should Tax Costs in the Context of this Case, and Nothing in Plaintiffs' Motion Suggests Otherwise.**

Plaintiffs' Motion should be denied for two separate and independent reasons.  *First*, Rule 54(d)(1) expressly authorizes the payment of costs to the prevailing party, and there is nothing unprecedented about taxing costs against these particular Plaintiffs.  *Second*, Plaintiffs spill much ink on the nature of this lawsuit to excuse their obligation under Rule 54(d)(1), all the while ignoring the simple fact the Court entered judgment in MDOC's favor.  As the prevailing party, MDOC is entitled to recover its costs under Rule 54(d)(1), and Plaintiffs' Motion should be denied.

On the first point, and as previously noted, Rule 54(d)(1) could not more clearly prescribe the payment of costs to the "prevailing party"—in this case, MDOC.  The Fifth Circuit Court of Appeals clearly established "a strong presumption under Rule 54(d)(1) that the prevailing party will be awarded costs." *E.g.*, *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 384 (5th Cir. 2012); *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 586 (5th Cir. 2006).  And, the Prison Litigation Reform Act expressly authorizes the payment of costs taxed to this class of Plaintiffs (*i.e.*, inmates): "If the judgment against a prisoner includes payment of costs . . . , the prisoner shall be required to pay the full amount of the

costs ordered." 28 U.S.C. § 1915(f)(2)(A). Under subsection (f)(2)(B), the collection of these costs is to be done "in the same manner as is provided for filing fees under subsection (a)(2)"—namely, through the prisoner's trust account. It, therefore, makes no difference that the members of the class are "indigent," a point Plaintiffs' belabor. *See* [862 at 8]. In fact, it is well within the Court's discretion to tax costs to inmate plaintiffs who do not prevail at trial. *See Hughes v. Judd*, No. 8:12-cv-568, 2015 WL 5135538 (M.D. Fla. July 17, 2015) (taxing costs to a class of juvenile individuals who were detained in Central County Jail in Polk County, Florida).

To the second point, Plaintiffs characterize this lawsuit as a hard-fought battle in a vain attempt to spin a total loss into something positive in hopes of excusing their obligation under Rule 54(d)(1). [862 at 8–12]. Specifically, Plaintiffs argue the Court should not assess costs against them because this case "is [the] paradigmatic example of a case conferring public benefits, warranting an exercise of the Court's discretion to order the parties to bear their own costs." [862 at 11] This description ignores both the letter and the spirit of the Court's Opinion and Order, which decimated Plaintiffs' case by rendering judgment in MDOC's favor on all seven claims. [850]

For starters, absolutely no record evidence supports the argument that Plaintiffs' suit precipitated any public benefit, and Plaintiffs cite none. To determine whether the lawsuit actually spurred public or social change, the parties may only look to the Court's Opinion and Order [850], not Plaintiffs' unfounded allegations. And, the Court's Opinion [850] makes abundantly clear that Plaintiffs'

4

PD.28172227.1

case is not the impetus behind any widespread social change. Even if some measure of public benefit *did* occur in the aftermath of this lawsuit (a dubious claim), these changes were wholly independent of Plaintiffs' case. The Court's Opinion and Order clearly rejected the contentions described in Plaintiffs' initial complaint: "There is insufficient evidence that prisoners, as a class, are being refused treatment, having their medical problems ignored, or are intentionally being mistreated as is required to succeed on a Section 1983 claim." [850 at 20–21]. The Court never substantiated Plaintiffs' allegations and even rejected the contention that the living and healthcare conditions at EMCF had not improved during the pendency of this lawsuit. Nevertheless, Plaintiffs have continued aggressively pursuing this case, up to and including the filing of a notice of appeal. [852] It does nothing for "public benefit" to continue litigation merely because prisoner advocates fueled by a $500 million endowment refuse to accept the conditions of confinement at EMCF are constitutional.

Plaintiffs also characterize this lawsuit as "a close civil rights case" [862 at 1], presumably hoping for some measure of leniency with respect to the costs to be taxed under Rule 54(d)(1). This characterization also ignores both the Court's Opinion and Order [850] and the reality of life at EMCF today. Again, the Court found in MDOC's favor on all seven of Plaintiffs' claims, refuting the notion that prisoners detained at EMCF suffered a widespread pattern of constitutional violations. Also, that the Court found in MDOC's favor on all seven claims refutes the argument that the case was as "close" as Plaintiffs would represent. And,

5

contrary to Plaintiffs' argument, the post-trial proceedings were not for the purpose of "ascertain[ing] ongoing violations" [862 at 10] because Plaintiffs never met their burden of establishing constitutional violations at EMCF in the first place.

At bottom, Plaintiffs' attempts to put a positive spin on the Court's Opinion and Order [850] definitively ruling in Defendant's favor on all seven claims advanced by Plaintiffs is grossly misplaced. Their argument that Defendant should not be entitled to the costs they incurred in defending this case is a nonstarter, and their [861] Motion for Review should be denied.

## II.  **Defendant has submitted sufficient proof of the costs they seek**.

Implicitly recognizing that MDOC is entitled to recover its costs under Rule 54(d)(1), Plaintiffs next object to particular costs taxed but the overwhelming majority of these objections are without merit. "There is . . . a strong presumption 'that the prevailing party is prima facie entitled to costs and it is incumbent on the losing party to overcome that presumption since denial of costs is in the nature of a penalty.'" *Marmillion v. Am. Int'l Ins. Co.*, 381 F. App'x 421, 429 (5th Cir. 2010) (citing *Walters v. Roadway Express, Inc.*, 557 F.2d 521, 526 (5th Cir. 1977)). Here, the Clerk of Court taxed $51,521.85 in costs attributable to deposition and trial transcripts, $32,884.68 in costs attributable to copying documents, and $19,854.05 in other costs. *See* [859] Bill of Costs. As explained below, Plaintiffs' conclusory, speculative objections are not enough to overcome the "strong presumption" that Defendant is entitled to the majority of these costs.

6

PD.28172227.1

### A. <u>Defendant is entitled to the transcript costs taxed</u>.

Plaintiffs argue that Defendant should not be entitled to costs related to depositions and trial transcripts because parties should not be entitled to costs for daily transcripts. [862 at 14-15] Plaintiffs also seek to exclude certain costs they claim are for a "duplicate record" and for expedited copies of transcripts. [862 at 15] Plaintiffs further seek exclusion of Defendant's deposition transcript costs on grounds that Defendant is asking or not only the costs of the original copy of each deposition but also costs for copies each deposition. [862 at 16]

Each of Plaintiffs' arguments related to the costs for depositions and transcripts are nonstarters. Taking first the trial transcript costs, Plaintiffs are incorrect in arguing that Defendant paid to receive daily trial transcripts after each day of trial. Defendant did not obtain trial transcripts until after the trial concluded on April 9, 2018. This fact is plain from the invoices themselves, all of which show the trial transcripts were ordered **after** trial concluded. *See* [853-1 at 3-11 ("Date Ordered" section)] and [853-1 at 75-104 ("Date Ordered" section)] Rather, these trial transcripts were purchased for use during the post-trial proceedings ordered by the Court pursuant to its [767] Opinion and Order and subsequent request for post-trial briefs. *See* [830] Order. The fact these transcripts were purchased for use in post-trial proceedings is no impediment to Defendant obtaining these costs. *See Montano v. Orange Cty.*, No. 1:13-cv-611, 2015 U.S. Dist. LEXIS 180275, at *8 (E.D. Tex. Apr. 18, 2015) (emphasizing that under section 1920, the prevailing party is "entitled to recover costs necessarily incurred in the case, not just trial").

Insofar as Plaintiffs argue Defendant is not entitled to costs for a "duplicate record" related to Captain Matthew Naidow's video deposition, Plaintiffs offer no authority in support of this bare-bones, conclusory argument. This is made worse by the fact Plaintiffs noticed Naidow's deposition by video, not Defendant. Plaintiffs cannot now argue that Defendant is not entitled to the costs associated with obtaining both the deposition video and transcript. *See Petri v. Kestrel Oil & Gas Props., L.P.*, No. H-09-3994, 2013 U.S. Dist. LEXIS 8695, at *29 (S.D. Tex. Jan. 17, 2013) ("[T]he Court may tax costs for both video and stenographic versions of the depositions.") (citing *Baisden v. I'm Ready Prods.*, 793 F. Supp. 2d 970, 976-77 (S.D. Tex. 2011)).

To the extent that Plaintiffs argue Defendant should not be entitled to the costs of expediting the transcripts for the depositions of Captain Naidow and Marjorie Brown, Plaintiffs fail to acknowledge that, even if it was unnecessary to expedite the transcripts in the context of recovering costs under Rule 54(d), Defendant is still entitled to the costs of both transcripts minus the expedited transcript fee. *See Fogleman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991) (observing that if an expedited transcript was not necessary, "the district court should reduce the taxable costs for th[e] deposition to whatever the charge would have been on a non-expedited basis"). As a result, Defendant is entitled to at least $574.40 for the costs of Naidow's deposition transcript, which represents the cost of that transcript minus the expedited transcript fee. *See* [853-1 at 22].

8

Plaintiffs' argument that Defendant is not entitled to obtain the costs incurred for obtaining deposition transcripts throughout this case is another red herring.  "[T]he cost of the original deposition is taxable without any factual findings." *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 133 (5th Cir. 1983).  The costs submitted by Defendant are those for the original copies of the numerous depositions taken throughout the life of this, the overwhelming majority of which were taken at Plaintiffs' choice.  Even if Defendant is required to show it actually needed and used the deposition transcripts in this case, the record of this case makes so much clear.  *See, e.g.*, *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993) ("We do not require that a deposition be actually introduced into evidence to meet this requirement.") *Johnston v. Borders*, No. 6:15-cv-936-Orl-40DCI, 2017 U.S. Dist. LEXIS 72002, at *8 (M.D. Fla. Apr. 24, 2017) ("[C]osts for transcripts of depositions conducted in support of a motion for summary judgment or depositions conducted of witnesses listed on a party's witness list are examples of the types of costs recoverable under § 1920(2).") (citation omitted).[2]

---

[2] *Compare* Plaintiffs' Witness List, attached as **Exhibit** "**A**" *with* the following deposition notices: [427] Hillman Clemons, [404] Tony Compton, [391] Christopher Dykes, [412] Norris Hogans, [405] Dr. Terry Kupers, [433] Saul Mata, [465] Dr. Gloria Perry, [400] Frank Shaw, [423] Diane Skipworth, [413] Vernell Thomas, [390] Eldon Vail, [450] Jason Holloway, [447] Terry Beasley, [464] Penny Brookshire, [502] Pelicia Hall, [449] Merlin Hill, [451] Lonnie Jordan, [452] Barry Melton, [399] Charles Pickering, [393] Michael Rice, [461] Kimberly Townsend, [428] Anthony Bean, [426] James "Van" Kendrick, [395] Marilyn Braxton, [369] Marjorie Brown, [392] Simone Jones, [467] [505] MDOC Corporate Representatives (Rick McCarty, Jerry Williams, and Pelicia Hall), [465] [500] Gloria Perry, and [468] Management and Training Corporation 30(b)(6) (Marjorie Brown).

B. **Defendant is entitled to the copying costs taxed**.

The Clerk of Court taxed Defendant's copying costs, which totaled $32,884.68. *See* [853-3 at 2, 24-26] Plaintiffs object to six categories of costs that were taxed and argue there is insufficient proof of the necessity of those six categories of costs. [862 at 17-18] Aside from these six categories, Plaintiffs make no specific objection to the remaining categories of copying costs taxed by the Clerk, totaling $11,388.20, and thus Defendant is entitled to those remaining costs. *See Marmillion*, 381 F. App'x at 429 (observing that losing party has the burden of refuting the presumption that winning party is entitled to costs) (citation omitted).

Nearly all of the six categories of costs to which Plaintiffs object are taxable as either costs attributable to discovery production or costs attributable to Defendant's trial exhibits. "Copies attributable to discovery, copies of pleadings, correspondence, documents tendered to the opposing party, copies of exhibits, and documents prepared for the Court's consideration are recoverable." *Desisto Coll., Inc. v. Howey-in-the-Hills*, 718 F. Supp. 906, 913 (M.D. Fla. 1989) (citing *Fressell v. AT & T Technologies, Inc.*, 103 F.R.D. 111, 115-16 (N.D. Ga. 1984)). In addition, conversion of native files to an agreed-upon format for production and scanning documents to create digital duplicates are generally recognized as taxable costs. *Race Tires Am. Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 167 (3d Cir. 2012).

Here, four of the six categories of copying costs to which Plaintiffs object are costs incurred related to discovery production:

- $7,722.65 incurred for burning "242 CDs, 124 DVDs, 63 16GB flash drives[,]" incurred by Defendant in producing incident reports, videos, and photographs through supplemental production in response to Plaintiffs' written discovery requests;

- $1,472.92 incurred for document transfer and conversion to .tiff and .pdf format, which were the production formats upon which the parties agreed, *see* Amended Case Management Order with ESI Statement [286-1 at 3];

- $81.00 for "[c]onverting documents to .pdf" and $280.00 for "Data transfer to external hard drive[,]" incurred to produce information in response to Plaintiffs' written discovery requests; and

- $145.53 for "[b]inding prison log books," incurred in having certain log books bound back together after Plaintiffs took them apart to copy their contents.

*See* [853-3 at 5, 13, and 7]  Defendant is entitled to these costs totaling $9,422.10.

Additionally, Plaintiffs object to $9,860.08 incurred related to Defendant's trial exhibits. [862 at 18]  As the relevant invoice makes clear, these are costs for making three copies of Defendant's trial exhibits, one copy for the Court, one for Plaintiffs' counsel, and one for Defendant's counsel.  *See* [853-3 at 16]  As such, these are taxable costs regardless of whether Defendant actually admitted every exhibit into evidence.  *See Montano v. Orange Cty.*, No. 1:13-cv-611, 2015 U.S. Dist. LEXIS 180275, at *12 (E.D. Tex. Apr. 18, 2015) (rejecting argument that prevailing party should not be permitted to recover costs for copying trial exhibits not used at trial, reasoning that "no interpretation of 28 U.S.C. § 1920 indicates that [the

11

prevailing party] forego[es] their taxable cost the moment that they elect not to offer a document into evidence[; a] party cannot be required to anticipate every exhibit it will or will not offer at trial").

### C. Defendant is entitled to a portion of the "Other Costs" taxed.

The Bill of Costs (Form AO133) includes a line-item for "Other Costs," and at the time Defendant filed its Bill of Costs, it believed certain costs and expenses necessarily incurred during the life of this case could be taxable as "Other Costs." In evaluating Plaintiffs' challenges to the "Other Costs" it seeks, Defendant now acknowledges that it is not entitled to the meal, travel, and parking costs of counsel and expert fees. However, Plaintiffs are incorrect in arguing Defendant is not entitled to costs incurred related to the production of electronically stored information, *see* [862] at 14.

Namely, Defendant is entitled to what Plaintiffs inartfully refer to as "data processing and hosting fees," which total $541.39. *See* [853-4 at 11-15] As noted above, conversion of native files to an agreed-upon format for production and scanning documents to create digital duplicates are recognized as the taxable costs, *Race Tires*, 674 F.3d at 167, and the parties agreed that certain electronically stored information should be produced in .tiff or .pdf format, *see* [286-1 at 3]. Thus, Defendant is entitled to the $541.39 incurred for such conversion.

## CONCLUSION

For the foregoing reasons, MDOC respectfully requests that the Court deny Plaintiffs' [861] Motion for Review.

Dated: March 10, 2020.

                Respectfully submitted,

                BY:    LYNN FITCH, ATTORNEY GENERAL, STATE OF MISSISSIPPI

BY:  *s/ Krissy Nobile*
      Harold E. Pizzetta, III, Bar No. 99867
      Krissy Nobile, Bar No. 103577
      Office of the Attorney General
      Post Office Box 220
      Jackson, Mississippi 39205
      Telephone: (601) 359-3860
      Facsimile: (601) 359-2003
      hpizz@ago.state.ms.us
      knobi@ago.state.ms.us

BY:  *s/ Nicholas F. Morisani*
      W. Thomas Siler, Jr., Bar No. 6791
      Nicholas F. Morisani, Bar No. 104970
      Phelps Dunbar, LLP
      4270 I-55 North
      Jackson, Mississippi 39211-6391
      Telephone: 601-352-2300
      Facsimile: 601-360-9777
      Tommy.Siler@phelps.com
      Nick.Morisani@phelps.com

BY:  *s/ Molly M. Walker*
      Michael J. Bentley, Bar No. 102631
      Molly M. Walker, Bar No. 100689
      Bradley Arant Boult Cummings, LLP
      Post Office Box 1789
      Jackson, Mississippi 39215-1789
      Phone:  (601) 948-8000
      Fax:    (601) 948-3000
      mbentley@bradley.com
      mmwalker@bradley.com

**ATTORNEYS FOR THE DEFENDANT**

## CERTIFICATE OF SERVICE

I, *Nicholas F. Morisani*, certify that the foregoing document has been filed with the Clerk of Court using the Court's ECF system, which provides service of the foregoing to all counsel of record who have entered an appearance in this case as of the date below.

Dated: March 10, 2020.

*/s/ Nicholas F. Morisani*
Nicholas F. Morisani
