# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
August 5, 2021
Lyle W. Cayce
Clerk

No. 20-60086

Jermaine Dockery, Joseph Osborne, John Barrett, *on behalf of themselves and all others similarly situated*,

> *Plaintiffs—Appellants*,

Eddie Pugh,

> *Intervenor Plaintiff—Appellant*,

*versus*

Burl Cain, *in his official capacity as Commissioner of the Mississippi Department of Corrections*; Jeworski Mallett, *in his official capacity as Deputy Commissioner for Institutions of the Mississippi Department of Corrections*; Gloria Perry, *in her official capacity as Chief Medical Officer for the Mississippi Department of Corrections*; Richard D. McCarty,

> *Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:13-CV-326

Before Jones, Costa, and Duncan, *Circuit Judges*.

Stuart Kyle Duncan, *Circuit Judge*:

Plaintiffs, prisoners at East Mississippi Correctional Facility (EMCF), challenged their conditions of confinement by filing a class action

against Mississippi Department of Corrections (MDOC) officials. After six years of litigation, including a five-week bench trial, the district court concluded wide-ranging improvements had made EMCF "not the same [prison] as the one that had existed when this lawsuit was filed." The court therefore found no constitutional violations and denied Plaintiffs' requested injunction. We affirm.

**I.**

Plaintiffs filed their class-action complaint in 2013. They sought declaratory and injunctive relief regarding numerous conditions at EMCF, which houses inmates with mental illnesses. The challenged conditions fell into seven categories: mental health care, medical care, solitary confinement, excessive force, protection from violence, sanitation, and nutrition and food safety. (Of those, only claims related to medical care, protection from violence, and solitary confinement are before us on appeal.) The district court certified a general class of EMCF inmates and three subclasses, including one for all prisoners in solitary confinement.

After five years of pretrial motions and discovery, the district court conducted a five-week bench trial in 2018, during which the judge toured EMCF personally. The court then ordered post-trial discovery and briefing to assess the current status of the prison. These proceedings generated a nearly 100,000-page record.

The court subsequently issued a fifty-five-page order finding no constitutional violations and denying Plaintiffs all relief. In particular, the court noted that conditions at EMCF had changed dramatically since the lawsuit's beginning. While the court did not "speculate" what the outcome might have been had "the conditions that existed at the prison when the lawsuit was filed continued to exist at the time of trial or thereafter," it found the current conditions constitutional. Notably, the original lead defendant,

MDOC Commissioner Christopher Epps, had since been convicted on corruption charges and sent to federal prison. Dr. Carl Reddix, EMCF's contractor for health services at the time of the complaint, was likewise convicted of bribery and imprisoned. The court found "the bribery and kickbacks . . . likely affected the quality of care that was being provided to prisoners as well as other conditions at that facility."

The court further noted specific changes made at EMCF during the litigation. As to medical care, EMCF had rescinded its contract with Dr. Reddix's company and partnered with a new provider of medical and mental health services, created an in-house medical unit to monitor and treat acute mental health problems, and established an in-house pharmacy to improve the distribution of medications. As to protection from violence, EMCF had hired more security staff and created systems for filling mandatory positions whenever vacancies arose, either with officers on call or officers previously assigned to nonmandatory posts.[1] These changes helped satisfy the court that Plaintiffs had not shown any basis for an injunction.

Plaintiffs appealed.

## II.

We review the district court's legal conclusions *de novo*. *Ali v. Stephens*, 822 F.3d 776, 783 (5th Cir. 2016). Ordinarily, we would review the court's findings of fact for clear error. *Ibid.* But Plaintiffs have disclaimed any argument that the court clearly erred in its fact findings, *see* O.A. Rec. at 2:25–35, so we focus on whether the court correctly applied the law.

---

[1] As to solitary confinement conditions, the court focused more on the constitutionality of the length and conditions of confinement than on recently implemented changes (other than installation of tamper-resistant light fixtures to address complaints of non-functioning lights).

No. 20-60086

## III.

Plaintiffs claimed at trial that various conditions at EMCF violate the Eighth Amendment's proscription of "cruel and unusual punishments." U.S. Const. amend. VIII. "To be tantamount to the infliction of cruel and unusual punishment, prison conditions must pose 'an unreasonable risk of serious damage' to a prisoner's health—an objective test—and prison officials must have acted with deliberate indifference to the risk posed—a subjective test." *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015) (quoting *Helling v. McKinney*, 509 U.S. 25, 33–35 (1993)); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Plaintiffs have appealed only as to three of the conditions they originally challenged: medical care, protection from harm, and solitary confinement. They raise several arguments for vacating the district court's ruling, none of which succeed.

First, Plaintiffs argue the court erred by considering the challenged conditions in isolation instead of in combination. To the extent they argue that all conditions at EMCF should have been evaluated together, that argument is foreclosed by *Wilson v. Seiter*, 501 U.S. 294 (1991). As that decision explained, "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

It is true that courts must consider conditions together if "they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Id.* at 304; *see also Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004).[2] But nothing in the

---

[2] A familiar example is low cell temperatures alongside lack of blankets. *Wilson*, 501 U.S. at 304; *see also Sanchez v. Young Cnty.*, 956 F.3d 785, 796 (5th Cir. 2020) (considering whether jail's lack of medical staff, inadequate intake assessment, lack of subsequent

district court's opinion suggests it failed to do so. To the contrary, the court grouped Plaintiffs' allegations into several categories based on different "identifiable human needs," such as medical care and protection from violence, and considered all allegations related to each category in a distinct section.[3] The court also analyzed together all allegations of the solitary confinement subclass. The fact that the court organized its discussion of the wide-ranging allegations in this way—discussing specifics *seriatim* before reaching a conclusion about each category—does not show it overlooked the possibility of mutually enforcing effects.

Plaintiffs next argue that the district court erred by failing to consider whether past violations were likely to recur, even if it found EMCF complied with the Eighth Amendment at the time of judgment. In their view, the district court could not refuse an injunction without determining whether there were violations when the complaint was filed and whether they were likely to recur.

This argument is foreclosed by the Supreme Court's decision in *Farmer v. Brennan. See* 511 U.S. 825. *Farmer* tells courts how to address a request for an injunction to prevent the continuation or recurrence of unconstitutional prison conditions:

---

assessments, and "pervasively inadequate" monitoring combined to deprive detainees of medical care against lethal drug overdoses).

[3] For example, one section addressed both EMCF's "indirect prisoner supervision" system, which according to Plaintiffs used too few security officers to protect inmates, and evidence that even the existing security posts under this system were chronically undermanned. The court concluded that "[t]he evidence . . . does not show that Defendants have acted with deliberate indifference to the risk of prisoner-on-prisoner violence either by utilizing the indirect prisoner supervision system, or by failing to fill mandatory staffing positions."

No. 20-60086

> An inmate seeking an injunction on the ground that there is a contemporary violation of a nature likely to continue, . . . must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, *and are at the time of summary judgment*, knowingly and unreasonably disregarding an objectively intolerable risk of harm, *and that they will continue to do so*; and finally . . . must *demonstrate the continuance of that disregard during the remainder of the litigation and into the future*. In so doing, the inmate may rely, in the district court's discretion, on developments that postdate the pleadings and pretrial motions, *as the defendants may rely on such developments to establish that the inmate is not entitled to an injunction*.

511 U.S. at 845–46 (emphases added) (internal quotation marks and citations omitted). Additionally, the court "should approach issuance of injunctive orders with the usual caution" and "may . . . exercise its discretion if appropriate by giving prison officials time to rectify the situation before issuing an injunction." *Id.* at 846–47 (citation omitted). This restrained approach is necessary, *Farmer* warned, to prevent federal courts from "becoming 'enmeshed in the minutiae of prison operations.'" *Id.* at 847 (quoting *Bell v. Wolfish*, 441 U.S. 520, 562 (1979)). The district court correctly applied these instructions from *Farmer*. It exercised its discretion to "giv[e] prison officials time to rectify" possible violations and then relied on "developments that postdate[d] the pleadings and pretrial motions" to find Plaintiffs were "not entitled to an injunction." *Id.* at 846, 847.

Plaintiffs argue a footnote in *Farmer* supports their argument, but they are mistaken. That footnote, which discusses how post-filing developments may shed light on officials' awareness of risk, states the following:

> [E]ven prison officials who had a subjectively culpable state of mind when the lawsuit was filed could prevent issuance of an injunction by proving, during the litigation, that they were no

> longer unreasonably disregarding an objectively intolerable risk of harm and that they would not revert to their obduracy upon cessation of the litigation.

*Id.* at 846 n.9. Contrary to Plaintiffs' argument, this language does not impose on district courts a duty in every case to determine officials' past mental states and make a risk-of-recurrence finding. Reading it that way would swallow the broad discretion given district courts elsewhere in the opinion. The footnote merely sketches one way to resolve an injunction suit, not the only way. In this case, the district court found that—even assuming violations "may have existed" when the lawsuit was filed—the major changes since instituted at EMCF removed any potential violation, meaning "the injunctive relief sought by Plaintiffs has not been shown necessary." That finding falls within the ample discretion *Farmer* affords district courts, without any additional finding that EMCF officials would not revert to the prior conditions.[4]

Finally, Plaintiffs argue the district court wrongly disregarded the testimony of their expert witnesses—Dr. Marc Stern, Madeleine LaMarre, and Dr. Terry Kupers—by finding their opinions did not establish relevant Eighth Amendment standards. Plaintiffs are again mistaken. The district court merely concluded that these experts' views about specific conditions did not determine the Eighth Amendment's standard for what conditions are

---

[4] Courts are split as to whether the Prison Litigation Reform Act of 1995, 18 U.S.C. § 3626, which Congress enacted after *Farmer*, positively forbids injunctive relief absent a "current and ongoing" violation at the time of judgment. *Compare Porter v. Clarke*, 923 F.3d 348, 366–68 (4th Cir. 2019), *as amended* (May 6, 2019), *and Thomas v. Bryant*, 614 F.3d 1288, 1320 (11th Cir. 2010), *with Hallett v. Morgan*, 296 F.3d 732, 743–44 (9th Cir. 2002), *and Porter*, 923 F.3d at 374–75 (Niemeyer, J., dissenting). Because we find the district court properly denied injunctive relief regardless, we need not decide that question.

cruel and unusual.[5] District courts have "ample discretion" to accord more or less weight to parties' evidence, including expert submissions. *M.D. ex rel. Stukenberg v. Abbott*, 907 F.3d 237, 264 (5th Cir. 2018). We see no abuse of the court's discretion here.

AFFIRMED.

---

[5] For example, the district court considered Dr. Kupers's testimony that a prisoner should not be held in solitary confinement for more than fifteen days but refused to adopt a constitutional benchmark based on Dr. Kupers's opinion, noting that longer periods of continuous cell time had been upheld as constitutional.